DAVID T. DIBIASE (Bar No. 56883)
   dtd@amclaw.com
DAVID J. BILLINGS (Bar No. 175383)
   djb@amclaw.com
ANDERSON, McPHARLIN & CONNERS LLP
Thirty-First Floor
444 South Flower Street
Los Angeles, California  90071-2901
TELEPHONE: (213) 688-0080 ♦ FACSIMILE: (213) 622-7594

**Attorneys for Defendants GULF UNDERWRITERS INSURANCE COMPANY, THE TRAVELERS INDEMNITY COMPANY, on its behalf and as successor in interest by merger to GULF INSURANCE COMPANY, and THE TRAVELERS COMPANIES, INC., erroneously named as defendant "THE TRAVELER'S COMPANY INC."**

# UNITED STATES DISTRICT COURT

# NORTHERN DISTRICT OF CALIFORNIA, SAN JOSE DIVISION

| | |
|---|---|
| ELWYN PATOC; ERIC PATOC; ELVY PATOC; EDWARD PATOC,<br><br>Plaintiffs,<br><br>vs.<br><br>LEXINGTON INSURANCE COMPANY; GULF UNDERWRITERS INSURANCE COMPANY; GULF INSURANCE COMPANY; THE TRAVELER'S COMPANY, INC.; THE TRAVELER'S INDEMNITY COMPANY; and DOES 1 – 100,<br><br>Defendants. | Case No. C08 01893 RMW<br><br>**REQUEST FOR JUDICIAL NOTICE IN SUPPORT OF GULF UNDERWRITERS INSURANCE COMPANY'S MOTION TO DISMISS**<br><br>*(Filed concurrently with Motion to Dismiss and [Proposed] Order)*<br><br>Action filed:  April 9, 2008<br><br>**Date:    May 23, 2008**<br>**Time:    9:00 a.m.**<br>**Place:   Courtroom 6** |

**TO:  THE COURT AND ALL INTERESTED PARTIES HEREIN AND THEIR ATTORNEYS OF RECORD:**

NOTICE IS HEREBY GIVEN that defendants Gulf Underwriters Insurance Company ("Gulf Underwriters"), The Travelers Indemnity Company, on behalf of itself and as successor in interest by merger to Gulf Insurance Company ("Travelers"), and The Travelers Companies, Inc. ("The Travelers Companies"), erroneously named herein as The Traveler's Company, Inc., in conjunction with its

ANDERSON, McPHARLIN & CONNERS LLP
LAWYERS
444 SOUTH FLOWER STREET, THIRTY-FIRST FLOOR
LOS ANGELES, CALIFORNIA 90071-2901
TEL (213) 688-0080 • FAX (213) 622-7594

1   Motion to Dismiss, scheduled at the above-referenced time and place, will and

2   hereby does request, pursuant to Federal Rule of Evidence 201, that the Court take

3   judicial notice of the following:

4           1.      Gulf Insurance Company issued a Commercial Auto Policy to Pro

5   Transportation, Policy No. BA0340375-00, bearing a liability limit of $500,000 for

6   any one accident ("the Primary Policy").  Attached hereto as **Exhibit 1** is a true and

7   correct copy of the Primary Policy.

8           2.      Gulf Underwriters Insurance Company issued an Excess Liability

9   Policy, Policy No. GU0340523, bearing a liability limit of $500,000 for each

10  accident (the 1st Excess Policy").  Attached hereto as **Exhibit 2** is a true and correct

11  copy of the 1st Excess Policy.

12          3.      On August 17, 2005, Mercedes Patoc filed suit against Pro

13  Transportation Services, Inc. and Delia Rodriguez in the Superior Court of

14  California, County of Monterey, Case No. M75716 ("the First Lawsuit").  Attached

15  hereto as **Exhibit 3** is a true and correct copy of the complaint in the First Lawsuit.

16          4.      On June 30, 2006, the heirs of Mercedes Patoc filed suit against Pro

17  Transportation Services, Inc., Delia Rodriguez and MV Transportation, Inc. in the

18  Superior Court of California, County of Monterey, Case No. M79820 ("the Second

19  Lawsuit").  Attached hereto as **Exhibit 4** is a true and correct copy of the complaint

20  in the Second Lawsuit.

21  DATED: April 15, 2008                    ANDERSON, McPHARLIN & CONNERS LLP

22

23                                  By:  /s/ David J. Billings
                                        David T. DiBiase
24                                      David J. Billings
                                    Attorneys for Defendants GULF UNDERWRITERS
25                                  INSURANCE COMPANY, THE TRAVELERS
                                    INDEMNITY COMPANY, on its behalf and as
26                                  successor in interest by merger to GULF INSURANCE
                                    COMPANY, and THE TRAVELERS COMPANIES,
27                                  INC., erroneously named as defendant "THE
                                    TRAVELER'S COMPANY INC."

28

ANDERSON, McPHARLIN & CONNERS LLP
LAWYERS
444 SOUTH FLOWER STREET, THIRTY-FIRST FLOOR
LOS ANGELES, CALIFORNIA 90071-2901
TEL (213) 688-0080 • FAX (213) 622-7594

**EXHIBIT 1**



## Gulf Insurance Company

(Hartford, CT · A Stock Company)
P.O. Box 131771
Dallas, TX 75313-1771
Tele: 972-650-2800

# COMMON POLICY DECLARATIONS

| | |
|---|---|
| **Policy No.** | BA0340375-00 |
| **Renewal of** | New |

RECEIVED
DEC 2 8 2004

**Named Insured and Address**

Pro Transportation
PO Box 3913
Salinas, CA 93912

**Producer Name and Address**

Norman Spencer McKernan, Inc
1000 River Road, Suite 200
Conshohocken PA 19428

| **Policy Period** | **From** | 10/15/04 | **To** | 10/15/05 | **Producer No.** | 05-3880 |
|---|---|---|---|---|---|---|

12 01 AM Standard Time at described location

**BUSINESS DESCRIPTION:** Medical Transport

**IN RETURN FOR THE PAYMENT OF THE PREMIUM, AND SUBJECT TO ALL TERMS OF THIS POLICY, WE AGREE WITH YOU TO PROVIDE THE INSURANCE AS STATED IN THIS POLICY.**

THIS POLICY CONSISTS OF THE FOLLOWING COVERAGE PARTS FOR *WHICH A PREMIUM IS INDICATED.* THIS PREMIUM MAY BE SUBJECT TO ADJUSTMENT.

| COVERAGE PART DESCRIPTION | | PREMIUM |
|---|---|---|
| Commercial Automobile Coverage Part | $ | 205,685.00 |
| Commercial Crime Coverage Part | $ | |
| Commercial General Liability Coverage Part | $ | |
| Commercial Inland Marine Coverage Part | $ | |
| Commercial Property Coverage Part | $ | |
| Farm Coverage Part | $ | |
| Liquor Liability Coverage Part | $ | |
| Pollution Liability Coverage Part | $ | |
| Professional Liability Coverage Part | $ | |
| Other _____ | $ | |
| Other _____ | $ | |
| **POLICY PREMIUM** | $ | 205,685.00 |
| **DEPOSIT PREMIUM** | $ | |
| Other Charges _____ | | |
| | $ | |
| **TOTAL** | $ | 205,685.00 |

**FORMS AND ENDORSEMENTS** Coverage Parts, Forms and Endorsements made part of this Policy at time of issue are shown on Schedule of Forms and Endorsements.

Countersigned: _____ Date _____ By _____

*Geo McKernan*
Authorized Signature

IL 00001 08

Issue Date 12/03/04

Policy Commission % __11__

1734556 149

Facultative Reinsurance
Yes _____ No _____

3

# GULF INSURANCE COMPANY
## SUPPLEMENTAL DECLARATIONS
## BUSINESS AUTO COVERAGE FORM

**Policy Number:** BA0340375 00

### ITEM ONE

Name Insured    Pro Transportation

Form of Business

[X] Corporation    [ ] Partnership    [ ] Limited Liability Company    [ ] Individual    [ ] Other

### ITEM TWO - SCHEDULE OF COVERAGES AND COVERED AUTOS

This policy provides only those coverages where a charge is shown in the premium column below. Each of these coverages will apply only to those "autos" shown as covered "autos." "Autos" are shown as covered "autos" for a particular coverage by the entry of one or more of the symbols from the Covered "Autos" Section of the Business "Auto" Coverage Form next to the name of the coverage.

| COVERAGES | COVERED AUTOS (Entry of one or more of the symbols from Covered "Autos" Section of the Business "Auto" Coverage Form shows which "autos" are covered "autos") | LIMIT MOST WE WILL PAY FOR ANY ONE ACCIDENT OR LOSS | PREMIUM |
|---|---|---|---|
| LIABILITY | 7 8 9 | $ 500,000 | $ 165,970 |
| PERSONAL INJURY PROTECTION (or equivalent No-fault Coverage) | | SEPARATELY STATED IN EACH PIP ENDORSEMENT MINUS $    DED | $ |
| ADDED PERSONAL INJURY PROTECTION | | SEPARATELY STATED IN EACH ADDED PIP ENDORSEMENT | $ |
| PROPERTY PROTECTION INSURANCE (Michigan Only) | | SEPARATELY STATED IN THE PPI ENDORSEMENT MINUS $    DED FOR EACH ACCIDENT | $ |
| AUTO MEDICAL PAYMENTS | 5 | $ 5,000 | $ 14,175 |
| UNINSURED MOTORISTS | 7 | $ 500,000 | $ 4,375 |
| UNDERINSURED MOTORISTS (When not included in Uninsured Motorists Coverage) | | $ | $ |
| PHYSICAL DAMAGE COMPREHENSIVE COVERAGE | 7 | ACTUAL CASH VALUE OR COST OF REPAIR, WHICHEVER IS LESS, MINUS $3,000   DED. FOR EACH COVERED AUTO. NO DED. APPLIES TO LOSS CAUSE BY FIRE OR LIGHTNING. See ITEM FOUR for hired or borrowed "autos." | $ 9,538 |
| PHYSICAL DAMAGE SPECIFIED CAUSES OF LOSS COVERAGE | | ACTUAL CASH VALUE OR COST OF REPAIR, WHICHEVER IS LESS, MINUS $ 25 DED. FOR EACH COVERED "AUTO" FOR LOSS CAUSED BY MISCHIEF OR VANDALISM. See ITEM FOUR for hired or borrowed "autos." | $ |
| PHYSICAL DAMAGE COLLISION COVERAGE | 7 | ACTUAL CASH VALUE OR COST OF REPAIR, WHICHEVER IS LESS, MINUS $3,000   DED. FOR EACH COVERED AUTO. See ITEM FOUR for hired or borrowed "autos." | $ 11,307 |
| PHYSICAL DAMAGE TOWING AND LABOR (Not available in California) | | $    for each Disablement of a Private Passenger "Auto." | $ |
| | | PREMIUM FOR ENDORSEMENTS | $ 320 |
| | | *ESTIMATED TOTAL PREMIUM | $ 205,685 |

*This policy may be subject to final audit.

### FORMS AND ENDORSEMENTS

Coverage Parts, Forms and Endorsements made part of this Policy at time of issue are shown on Schedule of Forms and Endorsements.

173455 F 149

GA-08003 (05-02)    Copyright, Insurance Services Office, Inc., 2002    Issue Date 12/03/04

4

## ITEM THREE

## SCHEDULE OF COVERED AUTOS YOU OWN - SHEET 1 OF 3

| COVERED AUTO NO. | DESCRIPTION Year Model, Trade name, Body type, Vehicle identification number (VIN) | | PURCHASED Original Cost New ($) | Actual Cost & New ($) Used ($) | TERRITORY Town & State Where the Covered Auto will be principally garaged | CLASSIFICATION Radius Of Operation | Bus For S=Service R=Retail C=Commercial | Size GVW of W or Vehicle Seating Capacity | Age Group |
|---|---|---|---|---|---|---|---|---|---|
| 1 | 1994 Ford E350 Club Wag | Truck | 1FBJS31H5RHA11796 | 18,000 | | CA 53 | | | | 6 |
| 2 | 1993 Ford Aerostar | Truck | 1FMCA11U2PZB11975 | 16,000 | | CA 53 | | | | 6 |
| 3 | 1992 Ford E350 Club Wag | Truck | 1FBJF32N0NHA63476 | 18,000 | | CA 53 | | | | 6 |
| 4 | 1994 Ford Aerostar | Truck | 1FMCA11U9RZA48841 | 12,000 | | CA 53 | | | | 6 |
| 5 | 1993 Ford E350 Club Wag | Truck | 1FBJS31H3PHB44579 | 18,000 | | CA 53 | | | | 6 |
| 6 | 1993 Ford E350 Club Wag | Truck | 1FBJS31G1PHB21664 | 18,000 | | CA 53 | | | | 6 |
| 7 | 1993 Ford E350 Club Wag | Truck | 1FBJS31H5PHB41975 | 18,000 | | CA 53 | | | | 6 |
| 8 | 1994 Ford E350 Club Wag | Truck | 1FBJS31H2RHB25916 | 18,000 | | CA 53 | | | | 6 |
| 9 | 1992 Ford E350 Club Wag | Truck | 1FBJS31H6NHB44298 | 17,000 | | CA 53 | | | | 6 |
| 10 | 1993 Ford E350 Club Wag | Truck | 1FBJS31H1PHA28197 | 20,000 | | CA 53 | | | | 6 |
| 11 | 1992 Ford E350 Club Wag | Truck | 1FBJS31H7NHB09214 | 22,000 | | CA 53 | | | | 6 |
| 12 | 1998 Ford E350 Club Wag | Truck | 1FBSS31L9WHA23212 | 29,179 | | CA 53 | | | | 6 |
| 13 | 1998 Ford E350 Club Wag | Truck | 1FBSS31L8WHC19755 | 33,292 | | CA 53 | | | | 6 |
| 14 | 1998 Ford E350 Club Wag | Truck | 1FMSS31S2WHB93119 | 20,000 | | CA 53 | | | | 6 |
| 15 | 1997 Ford E350 Club Wag | Truck | 1FBJS31X8XHA56404 | 40,000 | | CA 53 | | | | 6 |
| 16 | 2001 Ford E350 Club Wag | Truck | 1FBSS31L8YHA43275 | 50,000 | | CA 53 | | | | 5 |
| 17 | 1993 Ford Aerostar | Truck | 1FMCA11U8PZA99894 | 8,000 | | CA 53 | | | | 6 |
| 18 | 2002 Chevrolet Caravan | Truck | 1GBDB39D02D250741 | 8,000 | | CA 53 | | | | 1 |
| 19 | 1987 Ford E350 Mini Bu | Truck | 1FDKE30L9HBC09074 | 8,000 | | CA 53 | | | | 6 |
| 20 | 1986 Ford E350 Mini Bu | Truck | 1FDKE30L4GHC26429 | 8,000 | | CA 53 | | | | 6 |
| 21 | 1990 Ford E350 Mini Bu | Truck | 1FDJE30G8LHA95662 | 10,000 | | CA 53 | | | | 6 |
| 22 | 1990 Ford E350 Mini Bu | Truck | 1FDKE30G91BA90071 | 11,884 | | CA 53 | | | | 6 |
| 23 | 1993 Ford E350 Areostv | Truck | 1FDJE30G4LHA84693 | 10,000 | | CA 53 | | | | 6 |
| 24 | 1998 Ford E350 Areostv | Truck | 1FDXE40S2WHB47495 | 45,000 | | CA 53 | | | | 6 |
| 25 | 1987 Ford E350 Areostv | Truck | 1FDKE30L2HHA68749 | 0 | | CA 53 | | | | 6 |
| 26 | 2001 Ford E450 Mini Bus | Truck | 1FDXE45S21HA73212 | 62,000 | | CA 53 | | | | 4 |
| 27 | 1995 Ford E350 Areostch | Truck | 1FDJS30G6SHC95929 | 18,262 | | CA 53 | | | | 6 |
| 28 | 2002 Ford E450 Mini Bus | Truck | 1FDXE45S04J2HA68076 | 37,000 | | CA 53 | | | | 3 |
| 29 | 1998 Ford E350 | Truck | 1FDSS30L2WHA99735 | 38,000 | | CA 53 | | | | 6 |
| 30 | 2002 Ford Excursion Lim | Truck | 1FMSU40S22EA14562 | 38,000 | | CA 53 | | | | 3 |
| 31 | 2002 Chevrolet Entovan | Truck | 1GBDX03EX12G41289 | 41,514 | | CA 53 | | | | |
| 32 | 2002 Supreme Candolate | Truck | 1FDWE35L04DB09416 | 45,000 | | CA 53 | | | | 3 |
| 33 | 2002 Ford E350 | Truck | 1FDWE35L04HA20112 | 50,000 | | CA 53 | | | | 3 |
| 34 | 2002 Ford E350 | Truck | 1FDWE35L04HA26383 | 50,000 | | CA 53 | | | | 3 |
| 35 | 1988 Ford Aerostar | Truck | 1FMCA11U6JZA90213 | 50,000 | | CA 53 | | | | 6 |

073455 E 149

Copyright, Insurance Services Office, Inc., 2002

Issue Date  12/03/04

Case 5:08-cv-01803-RMW    Document 15-2    Filed 04/15/2008    Page 5 of 40

## ITEM THREE

## SCHEDULE OF COVERED AUTOS YOU OWN - SHEET 2 OF 3

| COVERED AUTO No. | CLASSIFICATIONS | | | | | COVERAGES - PREMIUMS, LIMITS AND DEDUCTIBLES (absence of a deductible or limit entry in any column below means that the limit or deductible entry in the corresponding ITEM TWO column applies instead) | | | | | | |
|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | Primary Rating Factor | | Secondary and Rating Factor | Code | Except that coverage for such damage does not apply to any person(s) or entities named below at the time of the loss | LIABILITY | | PERSONAL INJURY PROTECTION | | ADDED PIP | PROP PROT (Michigan only) | |
| | Terr | Pri-Use | | | | Limit | Premium | Limit stated in each PIP End minus deductible shown below | Premium | Limit stated in each Added PIP End Premium | Limit stated in each minus deductible shown below | Premium |
| 1 | | | | 012S9 | | 500,000 | 4,242 | | | | | |
| 2 | | | | 012S9 | | 500,000 | 4,242 | | | | | |
| 3 | | | | 012S9 | | 500,000 | 4,242 | | | | | |
| 4 | | | | 012S9 | | 500,000 | 4,242 | | | | | |
| 5 | | | | 012S9 | | 500,000 | 4,242 | | | | | |
| 6 | | | | 012S9 | | 500,000 | 4,242 | | | | | |
| 7 | | | | 012S9 | | 500,000 | 4,242 | | | | | |
| 8 | | | | 012S9 | | 500,000 | 4,242 | | | | | |
| 9 | | | | 012S9 | | 500,000 | 4,242 | | | | | |
| 10 | | | | 012S9 | | 500,000 | 4,242 | | | | | |
| 11 | | | | 012S9 | | 500,000 | 4,242 | | | | | |
| 12 | | | | 012S9 | | 500,000 | 4,242 | | | | | |
| 13 | | | | 012S9 | | 500,000 | 4,242 | | | | | |
| 14 | | | | 012S9 | | 500,000 | 4,242 | | | | | |
| 15 | | | | 012S9 | | 500,000 | 4,242 | | | | | |
| 16 | | | | 012S9 | | 500,000 | 4,242 | | | | | |
| 17 | | | | 012S9 | | 500,000 | 4,242 | | | | | |
| 18 | | | | 012S9 | | 500,000 | 4,242 | | | | | |
| 19 | | | | 012S9 | | 500,000 | 4,242 | | | | | |
| 20 | | | | 012S9 | | 500,000 | 4,242 | | | | | |
| 21 | | | | 012S9 | | 500,000 | 4,242 | | | | | |
| 22 | | | | 012S9 | | 500,000 | 4,242 | | | | | |
| 23 | | | | 012S9 | | 500,000 | 4,242 | | | | | |
| 24 | | | | 012S9 | | 500,000 | 4,242 | | | | | |
| 25 | | | | 012S9 | | 500,000 | 4,242 | | | | | |
| 26 | | | | 012S9 | | 500,000 | 4,242 | | | | | |
| 27 | | | | 012S9 | | 500,000 | 4,242 | | | | | |
| 28 | | | | 012S9 | | 500,000 | 4,242 | | | | | |
| 29 | | | | 012S9 | | 500,000 | 4,242 | | | | | |
| 30 | | | | 012S9 | | 500,000 | 4,242 | | | | | |
| 31 | | | | 012S9 | | 500,000 | 4,242 | | | | | |
| 32 | | | | 012S9 | | 500,000 | 4,242 | | | | | |
| 33 | | | | 012S9 | | 500,000 | 4,242 | | | | | |
| 34 | | | | 012S9 | | 500,000 | 4,242 | | | | | |
| 35 | | | | 012S9 | | 500,000 | 4,242 | | | | | |

Total Premium: 73,455 8 149

Copyright, Insurance Services Office, Inc., 2002

Page 1

Issue Date 12/03/04

6

## ITEM THREE

### SCHEDULE OF COVERED AUTOS YOU OWN - SHEET 3 OF 3

| COVERED AUTO NO. | COVERAGES - PREMIUMS, LIMITS AND DEDUCTIBLES (absence of a deductible or limit entry in any column below means that the limit or deductible entry in the corresponding ITEM TWO column applies instead) | | | | | | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | AUTO MED PAY | | UNINSURED MOTORISTS | | UNDERINSURED MOTORISTS | | COMPREHENSIVE | | SPECIFIED CAUSES OF LOSS | | COLLISION | | TOWING & LABOR |
| | Limit | Premium | Limit | Premium | Limit | Premium | Limit stated in ITEM TWO minus deductible shown below | Premium | Limit stated in ITEM TWO minus deductible shown below | Premium | Limit stated in ITEM TWO minus deductible shown below | Premium | Limit Per Disablement / Premium |
| 1 | 5,000 | 105 | 500,000 | 125 | | | 1,000 | 141 | | | 1,000 | 188 | |
| 2 | 5,000 | 105 | 500,000 | 125 | | | 1,000 | 141 | | | 1,000 | 188 | |
| 3 | 5,000 | 105 | 500,000 | 125 | | | 1,000 | 141 | | | 1,000 | 136 | |
| 4 | 5,000 | 105 | 500,000 | 125 | | | 1,000 | 76 | | | 1,000 | 88 | |
| 5 | 5,000 | 105 | 500,000 | 125 | | | 1,000 | 141 | | | 1,000 | 188 | |
| 6 | 5,000 | 105 | 500,000 | 125 | | | 1,000 | 141 | | | 1,000 | 188 | |
| 7 | 5,000 | 105 | 500,000 | 125 | | | 1,000 | 211 | | | 1,000 | 188 | |
| 8 | 5,000 | 105 | 500,000 | 125 | | | 1,000 | 113 | | | 1,000 | 188 | |
| 9 | 5,000 | 105 | 500,000 | 125 | | | 1,000 | 141 | | | 1,000 | 188 | |
| 10 | 5,000 | 105 | 500,000 | 125 | | | 1,000 | 141 | | | 1,000 | 156 | |
| 11 | 5,000 | 105 | 500,000 | 125 | | | 1,000 | 190 | | | 1,000 | 241 | |
| 12 | 5,000 | 105 | 500,000 | 125 | | | 1,000 | 313 | | | 1,000 | 416 | |
| 13 | 5,000 | 105 | 500,000 | 125 | | | 1,000 | 113 | | | 1,000 | 336 | |
| 14 | 5,000 | 105 | 500,000 | 125 | | | 1,000 | 141 | | | 1,000 | 188 | |
| 15 | 5,000 | 105 | 500,000 | 125 | | | 1,000 | 113 | | | 1,000 | 336 | |
| 16 | 5,000 | 105 | 500,000 | 125 | | | 1,000 | 85 | | | 1,000 | 626 | |
| 17 | 5,000 | 105 | 500,000 | 125 | | | 1,000 | 1 | | | 1,000 | | |
| 18 | 5,000 | 105 | 500,000 | 125 | | | 1,000 | 408 | | | 1,000 | 494 | |
| 19 | 5,000 | 105 | 500,000 | 125 | | | 1,000 | 4 | | | 1,000 | 1 | |
| 20 | 5,000 | 105 | 500,000 | 125 | | | 1,000 | 4 | | | 1,000 | 1 | |
| 21 | 5,000 | 105 | 500,000 | 125 | | | 1,000 | 25 | | | 1,000 | 85 | |
| 22 | 5,000 | 105 | 500,000 | 125 | | | 1,000 | 26 | | | 1,000 | 88 | |
| 23 | 5,000 | 105 | 500,000 | 125 | | | 1,000 | 25 | | | 1,000 | 68 | |
| 24 | 5,000 | 105 | 500,000 | 125 | | | 1,000 | 551 | | | 1,000 | 679 | |
| 25 | 5,000 | 105 | 500,000 | 125 | | | | | | | | | |
| 26 | 5,000 | 105 | 500,000 | 125 | | | 1,000 | 63 | | | 1,000 | 722 | |
| 27 | 5,000 | 105 | 500,000 | 125 | | | 1,000 | 141 | | | 1,000 | 188 | |
| 28 | 5,000 | 105 | 500,000 | 125 | | | 1,000 | 408 | | | 1,000 | 494 | |
| 29 | 5,000 | 105 | 500,000 | 125 | | | 1,000 | 313 | | | 1,000 | 336 | |
| 30 | 5,000 | 105 | 500,000 | 125 | | | 1,000 | 308 | | | 1,000 | 363 | |
| 31 | 5,000 | 105 | 500,000 | 125 | | | 1,000 | 308 | | | 1,000 | 373 | |
| 32 | 5,000 | 105 | 500,000 | 125 | | | 1,000 | 726 | | | 1,000 | 876 | |
| 33 | 5,000 | 105 | 500,000 | 125 | | | 1,000 | 726 | | | 1,000 | 876 | |
| 34 | 5,000 | 105 | 500,000 | 125 | | | 1,000 | 726 | | | 1,000 | 876 | |
| 35 | 5,000 | 105 | 500,000 | 125 | | | 1,000 | 551 | | | 1,000 | 626 | |

| Total Prem. | | 4,137 | | 073455 149 | | | | | | | | 11,692 | |

CA Quotes (01/02)      Copyright, Insurance Services Office, Inc. 2002      Form Date 12/03/04

Page 1

7

## ITEM FOUR

### SCHEDULE OF HIRED OR BORROWED COVERED AUTO COVERAGE AND PREMIUMS.

| STATE | LIABILITY COVERAGE - RATING BASIS, COST OF HIRE | | | |
|---|---|---|---|---|
| | ESTIMATED COST OF HIRE FOR EACH STATE | RATE PER EACH $100 COST OF HIRE | FACTOR (If liab. Cov. is primary) | PREMIUM |
| All States | 1000 | | | 251 |
| | | | TOTAL PREMIUM | 251 |

Cost of hire means the total amount you incur for the hire of "autos" you don't own (not including "autos" you borrow or rent from your partners or "employees" or their family members). Cost of hire does not include charges for services performed by motor carriers of property or passengers.

| PHYSICAL DAMAGE COVERAGE | | | | | |
|---|---|---|---|---|---|
| COVERAGES | LIMIT OF INSURANCE THE MOST WE WILL PAY DEDUCTIBLE | | ESTIMATED ANNUAL COST OF HIRE | RATE PER EACH $100 ANNUAL COST OF HIRE | PREMIUM |
| COMPREHENSIVE | ACTUAL CASH VALUE OR COST OF REPAIR, WHICHEVER IS LESS, MINUS $ DED. FOR EACH COVERED AUTO, BUT NO DEDUCTIBLE APPLIES TO LOSS CAUSED BY FIRE OR LIGHTNING | | | | |
| SPECIFIED CAUSES OF LOSS | ACTUAL CASH VALUE OR COST OF REPAIR, WHICHEVER IS LESS, MINUS $ DED FOR EACH COVERED AUTO FOR LOSS CAUSED BY MISCHIEF OR VANDALISM | | | | |
| COLLISION | ACTUAL CASH VALUE OR COST OF REPAIR, WHICHEVER IS LESS MINUS $ DED FOR EACH COVERED AUTO | | | | |
| | | | | TOTAL PREMIUM | |

## ITEM FIVE

### SCHEDULE FOR NON-OWNERSHIP LIABILITY

| NAMES INSURED'S BUSINESS | RATING BASIS | NUMBER | PREMIUM | |
|---|---|---|---|---|
| Other than A Social Service Agency | Number of Employees | 0-25 | $ | 69 |
| | Number of Partners | | $ | |
| Social Service Agency | Number of Employees | | $ | |
| | Number of Volunteers | | $ | |
| | | TOTAL | $ | 69 |

0734558 149

8

## ITEM SIX - SCHEDULE FOR GROSS RECEIPTS OR MILEAGE BASIS - LIABILITY COVERAGE - PUBLIC AUTO OR LEASING RENTAL CONCERNS

| ESTIMATED YEARLY<br>( ) "Gross Receipts"<br>( ) Mileage | ( ) Per $100 Of "Gross Receipts"<br>( ) Per Mile<br>LIABILITY COVERAGE    AUTO MEDICAL PAYMENTS | | LIABILITY COVERAGE | AUTO MEDICAL PAYMENTS |
|---|---|---|---|---|
| | $ | $ | $ | $ |
| | $ | $ | $ | $ |
| | $ | $ | $ | $ |
| | $ | $ | $ | $ |
| | | TOTAL PREMIUMS | $ | $ |
| | | MINIMUM PREMIUMS | $ | $ |

When used as a premium basis

FOR PUBLIC "AUTOS"

"Gross Receipts" means the total amount to which you are entitled for transporting passengers, mail or merchandise during the policy period regardless of whether you or any other carrier originate the transportation.  "Gross Receipts" does not include:

A    Amounts you pay to railroads, steamship lines, airlines and other motor carriers operating under their own ICC or PUC permits.

B    Advertising revenue

C    Taxes which you collect as a separate item and remit directly to a governmental division.

D    C.O.D. collections for cost of mail or merchandise including collection fees.

Mileage means the total live and dead mileage of all revenue producing units operated during the policy period.

FOR RENTAL OR LEASING CONCERNS

"Gross receipts" means the total amount to which you are entitled for the leasing or rental of "autos" during the policy period and includes taxes except those taxes which you collect as a separate item and remit directly to a governmental division.

Mileage means the total of all live and dead mileage developed by all the "autos" you leased or rented to others during the policy period

3734556 149

CA 00 01 10 01    Copyright, Insurance Services Office, Inc., 2002    Issue Date  12/03/04

9

# BUSINESS AUTO COVERAGE FORM

Various provisions in this policy restrict coverage. Read the entire policy carefully to determine rights, duties and what is and is not covered.

Throughout this policy the words "you" and "your" refer to the Named Insured shown in the Declarations The words "we", "us" and "our" refer to the Company providing this insurance.

Other words and phrases that appear in quotation marks have special meaning Refer to Section V – Definitions.

## SECTION I – COVERED AUTOS

Item Two of the Declarations shows the "autos" that are covered "autos" for each of your coverages. The following numerical symbols describe the "autos" that may be covered "autos". The symbols entered next to a coverage on the Declarations designate the only "autos" that are covered "autos".

**A. Description Of Covered Auto Designation Symbols**

| Symbol | | Description Of Covered Auto Designation Symbols |
|---|---|---|
| 1 | Any "Auto" | |
| 2 | Owned "Autos" Only | Only those "autos" you own (and for Liability Coverage any "trailers" you don't own while attached to power units you own). This includes those "autos" you acquire ownership of after the policy begins. |
| 3 | Owned Private Passenger "Autos" Only | Only the private passenger "autos" you own. This includes those private passenger "autos" you acquire ownership of after the policy begins. |
| 4 | Owned "Autos" Other Than Private Passenger "Autos" Only | Only those "autos" you own that are not of the private passenger type (and for Liability Coverage any "trailers" you don't own while attached to power units you own). This includes those "autos" not of the private passenger type you acquire ownership of after the policy begins. |
| 5 | Owned "Autos" Subject To No-Fault | Only those "autos" you own that are required to have No-Fault benefits in the state where they are licensed or principally garaged. This includes those "autos" you acquire ownership of after the policy begins provided they are required to have No-Fault benefits in the state where they are licensed or principally garaged. |
| 6 | Owned "Autos" Subject To A Compulsory Uninsured Motorists Law | Only those "autos" you own that because of the law in the state where they are licensed or principally garaged are required to have and cannot reject Uninsured Motorists Coverage. This includes those "autos" you acquire ownership of after the policy begins provided they are subject to the same state uninsured motorists requirement. |
| 7 | Specifically Described "Autos" | Only those "autos" described in Item Three of the Declarations for which a premium charge is shown (and for Liability Coverage any "trailers" you don't own while attached to any power unit described in Item Three). |
| 8 | Hired "Autos" Only | Only those "autos" you lease, hire, rent or borrow. This does not include any "auto" you lease, hire, rent, or borrow from any of your "employees", partners (if you are a partnership), members (if you are a limited liability company) or members of their households |
| 9 | Nonowned "Autos" Only | Only those "autos" you do not own, lease, hire, rent or borrow that are used in connection with your business. This includes "autos" owned by your "employees", partners (if you are a partnership), members (if you are a limited liability company), or members of their households but only while used in your business or your personal affairs. |

© ISO Properties, Inc., 2000

## B. Owned Autos You Acquire After The Policy Begins

1. If Symbols 1, 2, 3, 4, 5 or 6 are entered next to a coverage in Item Two of the Declarations, then you have coverage for "autos" that you acquire of the type described for the remainder of the policy period.

2. But, if Symbol 7 is entered next to a coverage in Item Two of the Declarations, an "auto" you acquire will be a covered "auto" for that coverage only if:

    a. We already cover all "autos" that you own for that coverage or it replaces an "auto" you previously owned that had that coverage; and

    b. You tell us within 30 days after you acquire it that you want us to cover it for that coverage.

## C. Certain Trailers, Mobile Equipment And Temporary Substitute Autos

If Liability Coverage is provided by this Coverage Form, the following types of vehicles are also covered "autos" for Liability Coverage:

1. "Trailers" with a load capacity of 2,000 pounds or less designed primarily for travel on public roads.

2. "Mobile equipment" while being carried or towed by a covered "auto".

3. Any "auto" you do not own while used with the permission of its owner as a temporary substitute for a covered "auto" you own that is out of service because of its:

    a. Breakdown;

    b. Repair;

    c. Servicing;

    d. "Loss"; or

    e. Destruction.

## SECTION II – LIABILITY COVERAGE

## A. Coverage

We will pay all sums an "insured" legally must pay as damages because of "bodily injury" or "property damage" to which this insurance applies, caused by an "accident" and resulting from the ownership, maintenance or use of a covered "auto".

We will also pay all sums an "insured" legally must pay as a "covered pollution cost or expense" to which this insurance applies, caused by an "accident" and resulting from the ownership, maintenance or use of covered "autos". However, we will only pay for the "covered pollution cost or expense" if there is either "bodily injury" or "property damage" to which this insurance applies that is caused by the same "accident".

We have the right and duty to defend any "insured" against a "suit" asking for such damages or a "covered pollution cost or expense". However, we have no duty to defend any "insured" against a "suit" seeking damages for "bodily injury" or "property damage" or a "covered pollution cost or expense" to which this insurance does not apply. We may investigate and settle any claim or "suit" as we consider appropriate. Our duty to defend or settle ends when the Liability Coverage Limit of Insurance has been exhausted by payment of judgments or settlements.

1. Who Is An Insured

    The following are "insureds":

    a. You for any covered "auto".

    b. Anyone else while using with your permission a covered "auto" you own, hire or borrow except:

        (1) The owner or anyone else from whom you hire or borrow a covered "auto". This exception does not apply if the covered "auto" is a "trailer" connected to a covered "auto" you own.

        (2) Your "employee" if the covered "auto" is owned by that "employee" or a member of his or her household.

        (3) Someone using a covered "auto" while he or she is working in a business of selling, servicing, repairing, parking or storing "autos" unless that business is yours.

        (4) Anyone other than your "employees", partners (if you are a partnership), members (if you are a limited liability company), or a lessee or borrower or any of their "employees", while moving property to or from a covered "auto".

        (5) A partner (if you are a partnership), or a member (if you are a limited liability company) for a covered "auto" owned by him or her or a member of his or her household.

© ISO Properties, Inc., 2000

c. Anyone liable for the conduct of an "insured" described above but only to the extent of that liability

## 2. Coverage Extensions

### a. Supplementary Payments

In addition to the Limit of Insurance, we will pay for the "insured":

(1) All expenses we incur.

(2) Up to $2,000 for cost of bail bonds (including bonds for related traffic law violations) required because of an "accident" we cover. We do not have to furnish these bonds.

(3) The cost of bonds to release attachments in any "suit" against the "insured" we defend, but only for bond amounts within our Limit of Insurance.

(4) All reasonable expenses incurred by the "insured" at our request, including actual loss of earnings up to $250 a day because of time off from work.

(5) All costs taxed against the "insured" in any "suit" against the "insured" we defend.

(6) All interest on the full amount of any judgment that accrues after entry of the judgment in any "suit" against the "insured" we defend, but our duty to pay interest ends when we have paid, offered to pay or deposited in court the part of the judgment that is within our Limit of Insurance.

### b. Out-Of-State Coverage Extensions

While a covered "auto" is away from the state where it is licensed we will:

(1) Increase the Limit of Insurance for Liability Coverage to meet the limits specified by a compulsory or financial responsibility law of the jurisdiction where the covered "auto" is being used. This extension does not apply to the limit or limits specified by any law governing motor carriers of passengers or property.

(2) Provide the minimum amounts and types of other coverages, such as no-fault, required of out-of-state vehicles by the jurisdiction where the covered "auto" is being used.

We will not pay anyone more than once for the same elements of loss because of these extensions.

## B. Exclusions

This insurance does not apply to any of the following:

### 1. Expected Or Intended Injury

"Bodily injury" or "property damage" expected or intended from the standpoint of the "insured".

### 2. Contractual

Liability assumed under any contract or agreement.

But this exclusion does not apply to liability for damages:

a. Assumed in a contract or agreement that is an "insured contract" provided the "bodily injury" or "property damage" occurs subsequent to the execution of the contract or agreement; or

b. That the "insured" would have in the absence of the contract or agreement.

### 3. Workers' Compensation

Any obligation for which the "insured" or the "insured's" insurer may be held liable under any workers' compensation, disability benefits or unemployment compensation law or any similar law.

### 4. Employee Indemnification And Employer's Liability

"Bodily injury" to:

a. An "employee" of the "insured" arising out of and in the course of:

(1) Employment by the "insured"; or

(2) Performing the duties related to the conduct of the "insured's" business; or

b. The spouse, child, parent, brother or sister of that "employee" as a consequence of Paragraph a. above.

This exclusion applies:

(1) Whether the "insured" may be liable as an employer or in any other capacity; and

(2) To any obligation to share damages with or repay someone else who must pay damages because of the injury.

But this exclusion does not apply to "bodily injury" to domestic "employees" not entitled to workers' compensation benefits or to liability assumed by the "insured" under an "insured contract". For the purposes of the Coverage Form, a domestic "employee" is a person engaged in household or domestic work performed principally in connection with a residence premises.

1734558 149

© ISO Properties, Inc., 2000

12

## 5. Fellow Employee

"Bodily injury" to any fellow "employee" of the "insured" arising out of and in the course of the fellow "employee's" employment or while performing duties related to the conduct of your business.

## 6. Care, Custody Or Control

"Property damage" to or "covered pollution cost or expense" involving property owned or transported by the "insured" or in the "insured's" care, custody or control. But this exclusion does not apply to liability assumed under a sidetrack agreement.

## 7. Handling Of Property

"Bodily injury" or "property damage" resulting from the handling of property

**a.** Before it is moved from the place where it is accepted by the "insured" for movement into or onto the covered "auto"; or

**b.** After it is moved from the covered "auto" to the place where it is finally delivered by the "insured".

## 8. Movement Of Property By Mechanical Device

"Bodily injury" or "property damage" resulting from the movement of property by a mechanical device (other than a hand truck) unless the device is attached to the covered "auto".

## 9. Operations

"Bodily injury" or "property damage" arising out of the operation of any equipment listed in Paragraphs **6.b.** and **6.c.** of the definition of "mobile equipment".

## 10. Completed Operations

"Bodily injury" or "property damage" arising out of your work after that work has been completed or abandoned.

In this exclusion, your work means:

**a.** Work or operations performed by you or on your behalf, and

**b.** Materials, parts or equipment furnished in connection with such work or operations.

Your work includes warranties or representations made at any time with respect to the fitness, quality, durability or performance of any of the items included in Paragraphs **a.** or **b.** above.

Your work will be deemed completed at the earliest of the following times:

(1) When all of the work called for in your contract has been completed.

(2) When all of the work to be done at the site has been completed if your contract calls for work at more than one site.

(3) When that part of the work done at a job site has been put to its intended use by any person or organization other than another contractor or subcontractor working on the same project.

Work that may need service, maintenance, correction, repair or replacement, but which is otherwise complete; will be treated as completed.

## 11. Pollution

"Bodily injury" or "property damage" arising out of the actual, alleged or threatened discharge, dispersal, seepage, migration, release or escape of "pollutants".

**a.** That are, or that are contained in any property that is:

(1) Being transported or towed by, handled, or handled for movement into, onto or from, the covered "auto";

(2) Otherwise in the course of transit by or on behalf of the "insured"; or

(3) Being stored, disposed of, treated or processed in or upon the covered "auto";

**b.** Before the "pollutants" or any property in which the "pollutants" are contained are moved from the place where they are accepted by the "insured" for movement into or onto the covered "auto"; or

**c.** After the "pollutants" or any property in which the "pollutants" are contained are moved from the covered "auto" to the place where they are finally delivered, disposed of or abandoned by the "insured".

Paragraph **a.** above does not apply to fuels, lubricants, fluids, exhaust gases or other similar "pollutants" that are needed for or result from the normal electrical, hydraulic or mechanical functioning of the covered "auto" or its parts, if:

(1) The "pollutants" escape, seep, migrate, or are discharged, dispersed or released directly from an "auto" part designed by its manufacturer to hold, store, receive or dispose of such "pollutants"; and

(2) The "bodily injury", "property damage" or "covered pollution cost or expense" does not arise out of the operation of any equipment listed in Paragraphs **6.b.** and **6.c.** of the definition of "mobile equipment".

0734558 149

© ISO Properties, Inc., 2000

CA 00 01 10 01

13

Paragraphs b. and c. above of this exclusion do not apply to "accidents" that occur away from premises owned by or rented to an "insured" with respect to "pollutants" not in or upon a covered "auto" if:

(1) The "pollutants" or any property in which the "pollutants" are contained are upset, overturned or damaged as a result of the maintenance or use of a covered "auto", and

(2) The discharge, dispersal, seepage, migration, release or escape of the "pollutants" is caused directly by such upset, overturn or damage.

### 12. War

"Bodily injury" or "property damage" due to war, whether or not declared, or any act or condition incident to war. War includes civil war, insurrection, rebellion or revolution. This exclusion applies only to liability assumed under a contract or agreement.

### 13. Racing

Covered "autos" while used in any professional or organized racing or demolition contest or stunting activity, or while practicing for such contest, or activity. This insurance also does not apply while that covered "auto" is being prepared for such a contest or activity.

## C. Limit Of Insurance

Regardless of the number of covered "autos", "insureds", premiums paid, claims made or vehicles involved in the "accident", the most we will pay for the total of all damages and "covered pollution cost or expense" combined, resulting from any one "accident" is the Limit of Insurance for Liability Coverage shown in the Declarations.

All "bodily injury", "property damage" and "covered pollution cost or expense" resulting from continuous or repeated exposure to substantially the same conditions will be considered as resulting from one "accident".

No one will be entitled to receive duplicate payments for the same elements of "loss" under this Coverage Form and any Medical Payments Coverage Endorsement, Uninsured Motorists Coverage Endorsement or Underinsured Motorists Coverage Endorsement attached to this Coverage Part.

## SECTION III – PHYSICAL DAMAGE COVERAGE

## A. Coverage

1. We will pay for "loss" to a covered "auto" or its equipment under:

   ### a. Comprehensive Coverage

   From any cause except:

   (1) The covered "auto's" collision with another object; or

   (2) The covered "auto's" overturn.

   ### b. Specified Causes Of Loss Coverage

   Caused by:

   (1) Fire, lightning or explosion;

   (2) Theft;

   (3) Windstorm, hail or earthquake;

   (4) Flood;

   (5) Mischief or vandalism; or

   (6) The sinking, burning, collision or derailment of any conveyance transporting the covered "auto".

   ### c. Collision Coverage

   Caused by:

   (1) The covered "auto's" collision with another object; or

   (2) The covered "auto's" overturn.

2. **Towing**

   We will pay up to the limit shown in the Declarations for towing and labor costs incurred each time a covered "auto" of the private passenger type is disabled. However, the labor must be performed at the place of disablement.

3. **Glass Breakage – Hitting A Bird Or Animal – Falling Objects Or Missiles**

   If you carry Comprehensive Coverage for the damaged covered "auto", we will pay for the following under Comprehensive Coverage:

   a. Glass breakage;

   b. "Loss" caused by hitting a bird or animal; and

   c. "Loss" caused by falling objects or missiles.

   However, you have the option of having glass breakage caused by a covered "auto's" collision or overturn considered a "loss" under Collision Coverage.

14

### 4. Coverage Extensions

#### a. Transportation Expenses

We will pay up to $20 per day to a maximum of $600 for temporary transportation expense incurred by you because of the total theft of a covered "auto" of the private passenger type. We will pay only for those covered "autos" for which you carry either Comprehensive or Specified Causes of Loss Coverage. We will pay for temporary transportation expenses incurred during the period beginning 48 hours after the theft and ending, regardless of the policy's expiration, when the covered "auto" is returned to use or we pay for its "loss".

#### b. Loss Of Use Expenses

For Hired Auto Physical Damage, we will pay expenses for which an "insured" becomes legally responsible to pay for loss of use of a vehicle rented or hired without a driver, under a written rental contract or agreement. We will pay for loss of use expenses if caused by

(1) Other than collision only if the Declarations indicate that Comprehensive Coverage is provided for any covered "auto";

(2) Specified Causes Of Loss only if the Declarations indicate that Specified Causes Of Loss Coverage is provided for any covered "auto"; or

(3) Collision only if the Declarations indicate that Collision Coverage is provided for any covered "auto".

However, the most we will pay for any expenses for loss of use is $20 per day, to a maximum of $600.

## B. Exclusions

1. We will not pay for "loss" caused by or resulting from any of the following. Such "loss" is excluded regardless of any other cause or event that contributes concurrently or in any sequence to the "loss".

#### a. Nuclear Hazard

(1) The explosion of any weapon employing atomic fission or fusion, or

(2) Nuclear reaction or radiation, or radioactive contamination, however caused.

#### b. War Or Military Action

(1) War, including undeclared or civil war;

(2) Warlike action by a military force, including action in hindering or defending against an actual or expected attack, by any government, sovereign or other authority using military personnel or other agents; or

(3) Insurrection, rebellion, revolution, usurped power or action taken by governmental authority in hindering or defending against any of these.

2. We will not pay for "loss" to any covered "auto" while used in any professional or organized racing or demolition contest or stunting activity, or while practicing for such contest or activity. We will also not pay for "loss" to any covered "auto" while that covered "auto" is being prepared for such a contest or activity.

3. We will not pay for "loss" caused by or resulting from any of the following unless caused by other "loss" that is covered by this insurance:

a. Wear and tear, freezing, mechanical or electrical breakdown.

b. Blowouts, punctures or other road damage to tires.

4. We will not pay for "loss" to any of the following:

a. Tapes, records, discs or other similar audio, visual or data electronic devices designed for use with audio, visual or data electronic equipment.

b. Any device designed or used to detect speed measuring equipment such as radar or laser detectors and any jamming apparatus intended to elude or disrupt speed measurement equipment.

c. Any electronic equipment, without regard to whether this equipment is permanently installed, that receives or transmits audio, visual or data signals and that is not designed solely for the reproduction of sound.

d. Any accessories used with the electronic equipment described in Paragraph c. above.

 © ISO Properties, Inc., 2000 CA 00 01 10 01

15

Exclusions **4.c.** and **4.d.** do not apply to:

**a.** Equipment designed solely for the reproduction of sound and accessories used with such equipment, provided such equipment is permanently installed in the covered "auto" at the time of the "loss" or such equipment is removable from a housing unit which is permanently installed in the covered "auto" at the time of the "loss", and such equipment is designed to be solely operated by use of the power from the "auto's" electrical system, in or upon the covered "auto"; or

**b.** Any other electronic equipment that is:

   **(1)** Necessary for the normal operation of the covered "auto" or the monitoring of the covered "auto's" operating system; or

   **(2)** An integral part of the same unit housing any sound reproducing equipment described in **a.** above and permanently installed in the opening of the dash or console of the covered "auto" normally used by the manufacturer for installation of a radio.

**5.** We will not pay for "loss" to a covered "auto" due to "diminution in value".

**C. Limit Of Insurance**

**1.** The most we will pay for "loss" in any one "accident" is the lesser of:

   **a.** The actual cash value of the damaged or stolen property as of the time of the "loss"; or

   **b.** The cost of repairing or replacing the damaged or stolen property with other property of like kind and quality.

**2.** An adjustment for depreciation and physical condition will be made in determining actual cash value in the event of a total "loss".

**3.** If a repair or replacement results in better than like kind or quality, we will not pay for the amount of the betterment.

**D. Deductible**

For each covered "auto", our obligation to pay for, repair, return or replace damaged or stolen property will be reduced by the applicable deductible shown in the Declarations. Any Comprehensive Coverage deductible shown in the Declarations does not apply to "loss" caused by fire or lightning.

## SECTION IV – BUSINESS AUTO CONDITIONS

The following conditions apply in addition to the Common Policy Conditions:

**A. Loss Conditions**

**1. Appraisal For Physical Damage Loss**

If you and we disagree on the amount of "loss", either may demand an appraisal of the "loss". In this event, each party will select a competent appraiser. The two appraisers will select a competent and impartial umpire. The appraisers will state separately the actual cash value and amount of "loss". If they fail to agree, they will submit their differences to the umpire. A decision agreed to by any two will be binding. Each party will:

   **a.** Pay its chosen appraiser, and

   **b.** Bear the other expenses of the appraisal and umpire equally.

If we submit to an appraisal, we will still retain our right to deny the claim.

**2. Duties In The Event Of Accident, Claim, Suit Or Loss**

We have no duty to provide coverage under this policy unless there has been full compliance with the following duties:

   **a.** In the event of "accident", claim, "suit" or "loss", you must give us or our authorized representative prompt notice of the "accident" or "loss". Include:

      **(1)** How, when and where the "accident" or "loss" occurred;

      **(2)** The "insured's" name and address; and

      **(3)** To the extent possible, the names and addresses of any injured persons and witnesses.

   **b.** Additionally, you and any other involved "insured" must:

      **(1)** Assume no obligation, make no payment or incur no expense without our consent, except at the "insured's" own cost.

      **(2)** Immediately send us copies of any request, demand, order, notice, summons or legal paper received concerning the claim or "suit".

      **(3)** Cooperate with us in the investigation or settlement of the claim or defense against the "suit".

      **(4)** Authorize us to obtain medical records or other pertinent information.

0734558 149

16

**(5)** Submit to examination, at our expense, by physicians of our choice, as often as we reasonably require.

**c.** If there is "loss" to a covered "auto" or its equipment you must also do the following:

**(1)** Promptly notify the police if the covered "auto" or any of its equipment is stolen.

**(2)** Take all reasonable steps to protect the covered "auto" from further damage. Also keep a record of your expenses for consideration in the settlement of the claim.

**(3)** Permit us to inspect the covered "auto" and records proving the "loss" before its repair or disposition.

**(4)** Agree to examinations under oath at our request and give us a signed statement of your answers.

**3. Legal Action Against Us**

No one may bring a legal action against us under this Coverage Form until:

**a.** There has been full compliance with all the terms of this Coverage Form; and

**b.** Under Liability Coverage, we agree in writing that the "insured" has an obligation to pay or until the amount of that obligation has finally been determined by judgment after trial. No one has the right under this policy to bring us into an action to determine the "insured's" liability.

**4. Loss Payment – Physical Damage Coverages**

At our option we may:

**a.** Pay for, repair or replace damaged or stolen property;

**b.** Return the stolen property, at our expense. We will pay for any damage that results to the "auto" from the theft; or

**c.** Take all or any part of the damaged or stolen property at an agreed or appraised value.

If we pay for the "loss", our payment will include the applicable sales tax for the damaged or stolen property.

**5. Transfer Of Rights Of Recovery Against Others To Us**

If any person or organization to or for whom we make payment under this Coverage Form has rights to recover damages from another, those rights are transferred to us. That person or organization must do everything necessary to secure our rights and must do nothing after "accident" or "loss" to impair them.

**B. General Conditions**

**1. Bankruptcy**

Bankruptcy or insolvency of the "insured" or the "insured's" estate will not relieve us of any obligations under this Coverage Form.

**2. Concealment, Misrepresentation Or Fraud**

This Coverage Form is void in any case of fraud by you at any time as it relates to this Coverage Form. It is also void if you or any other "insured", at any time, intentionally conceal or misrepresent a material fact concerning:

**a.** This Coverage Form;

**b.** The covered "auto";

**c.** Your interest in the covered "auto"; or

**d.** A claim under this Coverage Form.

**3. Liberalization**

If we revise this Coverage Form to provide more coverage without additional premium charge, your policy will automatically provide the additional coverage as of the day the revision is effective in your state.

**4. No Benefit To Bailee – Physical Damage Coverages**

We will not recognize any assignment or grant any coverage for the benefit of any person or organization holding, storing or transporting property for a fee regardless of any other provision of this Coverage Form.

**5. Other Insurance**

**a.** For any covered "auto" you own, this Coverage Form provides primary insurance. For any covered "auto" you don't own, the insurance provided by this Coverage Form is excess over any other collectible insurance. However, while a covered "auto" which is a "trailer" is connected to another vehicle, the Liability Coverage this Coverage Form provides for the "trailer" is:

**(1)** Excess while it is connected to a motor vehicle you do not own.

**(2)** Primary while it is connected to a covered "auto" you own.

**b.** For Hired Auto Physical Damage Coverage, any covered "auto" you lease, hire, rent or borrow is deemed to be a covered "auto" you own. However, any "auto" that is leased, hired, rented or borrowed with a driver is not a covered "auto".

**c.** Regardless of the provisions of Paragraph **a.** above, this Coverage Form's Liability Coverage is primary for any liability assumed under an "insured contract".

0734558 149

d. When this Coverage Form and any other Coverage Form or policy covers on the same basis, either excess or primary, we will pay only our share. Our share is the proportion that the Limit of Insurance of our Coverage Form bears to the total of the limits of all the Coverage Forms and policies covering on the same basis.

6. **Premium Audit**

a. The estimated premium for this Coverage Form is based on the exposures you told us you would have when this policy began. We will compute the final premium due when we determine your actual exposures. The estimated total premium will be credited against the final premium due and the first Named Insured will be billed for the balance, if any. The due date for the final premium or retrospective premium is the date shown as the due date on the bill. If the estimated total premium exceeds the final premium due, the first Named Insured will get a refund.

b. If this policy is issued for more than one year, the premium for this Coverage Form will be computed annually based on our rates or premiums in effect at the beginning of each year of the policy.

7. **Policy Period, Coverage Territory**

Under this Coverage Form, we cover "accidents" and "losses" occurring:

a. During the policy period shown in the Declarations; and

b. Within the coverage territory.

The coverage territory is:

a. The United States of America;

b. The territories and possessions of the United States of America;

c. Puerto Rico;

d. Canada; and

e. Anywhere in the world if:

(1) A covered "auto" of the private passenger type is leased, hired, rented or borrowed without a driver for a period of 30 d .ys or loss; and

(2) The "insured's" responsibility to pay damages is determined in a "suit" on the merits, in the United States of America, the territories and possessions of the United States of America, Puerto Rico, or Canada or in a settlement we agree to

We also cover "loss" to, or "accidents" involving, a covered "auto" while being transported between any of these places.

8. **Two Or More Coverage Forms Or Policies Issued By Us**

If this Coverage Form and any other Coverage Form or policy issued to you by us or any company affiliated with us apply to the same "accident", the aggregate maximum Limit of Insurance under all the Coverage Forms or policies shall not exceed the highest applicable Limit of Insurance under any one Coverage Form or policy. This condition does not apply to any Coverage Form or policy issued by us or an affiliated company specifically to apply as excess insurance over this Coverage Form.

## SECTION V – DEFINITIONS

A. "Accident" includes continuous or repeated exposure to the same conditions resulting in "bodily injury" or "property damage".

B. "Auto" means a land motor vehicle, "trailer" or semitrailer designed for travel on public roads but does not include "mobile equipment".

C. "Bodily injury" means bodily injury, sickness or disease sustained by a person including death resulting from any of these.

D. "Covered pollution cost or expense" means any cost or expense arising out of:

1. Any request, demand, order or statutory or regulatory requirement; or

2. Any claim or "suit" by or on behalf of a governmental authority demanding

that the "insured" or others test for, monitor, clean up, remove, contain, treat, detoxify or neutralize, or in any way respond to, or assess the effects of "pollutants".

"Covered pollution cost or expense" does not include any cost or expense arising out of the actual, alleged or threatened discharge, dispersal, seepage, migration, release or escape of "pollutants":

a. That are, or that are contained in any property that is:

(1) Being transported or towed by, handled, or handled for movement into, onto or from the covered "auto";

(2) Otherwise in the course of transit by or on behalf of the "insured";

(3) Being stored, disposed of, treated or processed in or upon the covered "auto";

073455 6  149

**b.** Before the "pollutants" or any property in which the "pollutants" are contained are moved from the place where they are accepted by the "insured" for movement into or onto the covered "auto"; or

**c.** After the "pollutants" or any property in which the "pollutants" are contained are moved from the covered "auto" to the place where they are finally delivered, disposed of or abandoned by the "insured".

Paragraph **a.** above does not apply to fuels, lubricants, fluids, exhaust gases or other similar "pollutants" that are needed for or result from the normal electrical, hydraulic or mechanical functioning of the covered "auto" or its parts, if:

**(1)** The "pollutants" escape, seep, migrate, or are discharged, dispersed or released directly from an "auto" part designed by its manufacturer to hold, store, receive or dispose of such "pollutants"; and

**(2)** The "bodily injury", "property damage" or "covered pollution cost or expense" does not arise out of the operation of any equipment listed in Paragraphs **6.b.** or **6.c.** of the definition of "mobile equipment".

Paragraphs **b.** and **c.** above do not apply to "accidents" that occur away from premises owned by or rented to an "insured" with respect to "pollutants" not in or upon a covered "auto" if:

**(1)** The "pollutants" or any property in which the "pollutants" are contained are upset, overturned or damaged as a result of the maintenance or use of a covered "auto"; and

**(2)** The discharge, dispersal, seepage, migration, release or escape of the "pollutants" is caused directly by such upset, overturn or damage.

**E.** "Diminution in value" means the actual or perceived loss in market value or resale value which results from a direct and accidental "loss".

**F.** "Employee" includes a "leased worker". "Employee" does not include a "temporary worker".

**G.** "Insured" means any person or organization qualifying as an insured in the Who Is An Insured provision of the applicable coverage. Except with respect to the Limit of Insurance, the coverage afforded applies separately to each insured who is seeking coverage or against whom a claim or "suit" is brought.

**H.** "Insured contract" means:

**1.** A lease of premises;

**2.** A sidetrack agreement;

**3.** Any easement or license agreement, except in connection with construction or demolition operations on or within 50 feet of a railroad;

**4.** An obligation, as required by ordinance, to indemnify a municipality, except in connection with work for a municipality;

**5.** That part of any other contract or agreement pertaining to your business (including an indemnification of a municipality in connection with work performed within a municipality) under which you assume the tort liability of another to pay for "bodily injury" or "property damage" to a third party or organization. Tort liability means a liability that would be imposed by law in the absence of any contract or agreement;

**6.** That part of any contract or agreement entered into, as part of your business, pertaining to the rental or lease, by you or any of your "employees", of any "auto". However, such contract or agreement shall not be considered an "insured contract" to the extent that it obligates you or any of your "employees" to pay for "property damage" to any "auto" rented or leased by you or any of your "employees".

An "insured contract" does not include that part of any contract or agreement:

**a.** That indemnifies a railroad for "bodily injury" or "property damage" arising out of construction or demolition operations, within 50 feet of any railroad property and affecting any railroad bridge or trestle, tracks, roadbeds, tunnel, underpass or crossing; or

**b.** That pertains to the loan, lease or rental of an "auto" to you or any of your "employees", if the "auto" is loaned, leased or rented with a driver; or

**c.** That holds a person or organization engaged in the business of transporting property by "auto" for hire harmless for your use of a covered "auto" over a route or territory that person or organization is authorized to serve by public authority.

**I.** "Leased worker" means a person leased to you by a labor leasing firm under an agreement between you and the labor leasing firm, to perform duties related to the conduct of your business. "Leased worker" does not include a "temporary worker".

**J.** "Loss" means direct and accidental loss or damage.

073455 ₴ 149

© ISO Properties, Inc., 2000
CA 00 01 10 01    □

*19*

**K.** "Mobile equipment" means any of the following types of land vehicles, including any attached machinery or equipment:

1. Bulldozers, farm machinery, forklifts and other vehicles designed for use principally off public roads;

2. Vehicles maintained for use solely on or next to premises you own or rent;

3. Vehicles that travel on crawler treads;

4. Vehicles, whether self-propelled or not, maintained primarily to provide mobility to permanently mounted:

   a. Power cranes, shovels, loaders, diggers or drills; or

   b. Road construction or resurfacing equipment such as graders, scrapers or rollers.

5. Vehicles not described in Paragraphs 1., 2., 3., or 4. above that are not self-propelled and are maintained primarily to provide mobility to permanently attached equipment of the following types:

   a. Air compressors, pumps and generators, including spraying, welding, building cleaning, geophysical exploration, lighting and well servicing equipment; or

   b. Cherry pickers and similar devices used to raise or lower workers.

6. Vehicles not described in Paragraphs 1., 2., 3. or 4. above maintained primarily for purposes other than the transportation of persons or cargo. However, self-propelled vehicles with the following types of permanently attached equipment are not "mobile equipment" but will be considered "autos":

   a. Equipment designed primarily for:

      (1) Snow removal;

      (2) Road maintenance, but not construction or resurfacing; or

      (3) Street cleaning;

   b. Cherry pickers and similar devices mounted on automobile or truck chassis and used to raise or lower workers; and

   c. Air compressors, pumps and generators, including spraying, welding, building cleaning, geophysical exploration, lighting or well servicing equipment.

**L.** "Pollutants" means any solid, liquid, gaseous or thermal irritant or contaminant, including smoke, vapor, soot, fumes, acids, alkalis, chemicals and waste. Waste includes materials to be recycled, reconditioned or reclaimed.

**M.** "Property damage" means damage to or loss of use of tangible property.

**N.** "Suit" means a civil proceeding in which:

1. Damages because of "bodily injury" or "property damage"; or

2. A "covered pollution cost or expense",

to which this insurance applies, are alleged.

"Suit" includes:

   a. An arbitration proceeding in which such damages or "covered pollution costs or expenses" are claimed and to which the "insured" must submit or does submit with our consent; or

   b. Any other alternative dispute resolution proceeding in which such damages or "covered pollution costs or expenses" are claimed and to which the insured submits with our consent.

**O.** "Temporary worker" means a person who is furnished to you to substitute for a permanent "employee" on leave or to meet seasonal or short-term workload conditions.

**P.** "Trailer" includes semitrailer.

20

COMMERCIAL AUTO
CA 01 43 02 97

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# CALIFORNIA CHANGES

For a covered "auto" licensed or principally garaged in or "garage operations" conducted in California this endorsement modifies insurance provided under the following:

BUSINESS AUTO COVERAGE FORM
BUSINESS AUTO PHYSICAL DAMAGE COVERAGE FORM
GARAGE COVERAGE FORM
MOTOR CARRIER COVERAGE FORM
TRUCKERS COVERAGE FORM

With respect to coverage provided by this endorsement, the provisions of the Coverage Form apply unless modified by the endorsement.

**A. The Other Insurance** Condition is changed by adding the following:

d. When this Coverage Form and any other Coverage Form or policy providing liability coverage apply to an "auto" and:

1. One provides coverage to a Named Insured engaged in the business of selling, repairing, servicing, delivering, testing, road-testing, parking or storing "autos", and

2. The other provides coverage to a person not engaged in that business, and

3. At the time of an "accident", a person described in **2.** is operating an "auto" owned by the business described in **1.**, then that person's liability coverage is primary and the Coverage Form issued to a business described in **1.** is excess over any coverage available to that person.

e. When this Coverage Form and any other Coverage Form or policy providing liability coverage apply to an "auto" and:

1. One provides coverage to a Named Insured engaged in the business of selling, repairing, servicing, delivering, testing, road-testing, parking or storing "autos", and

2. The other provides coverage to a person not engaged in that business, and

3. At the time of an "accident" an "insured" under the Coverage Form described in **1.** is operating an "auto" owned by a person described in **2.**, then the Coverage Form issued to the business described in **1.** is primary and the Liability Coverage issued to a person described in **2.** is excess over any coverage available to the business.

0734558 149

CA 01 43 02 97          Copyright, Insurance Services Office, Inc., 1996          Page 1 of 1     □

21

POLICY NUMBER: BA0340375-00

COMMERCIAL AUTO
CA 21 54 02 04

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# CALIFORNIA UNINSURED MOTORISTS COVERAGE – BODILY INJURY

For a covered "auto" licensed or principally garaged in or "garage operations" conducted in California this endorsement modifies insurance provided under the following:

BUSINESS AUTO COVERAGE FORM
GARAGE COVERAGE FORM
MOTOR CARRIER COVERAGE FORM
TRUCKERS COVERAGE FORM

With respect to coverage provided by this endorsement, the provisions of the Coverage Form apply unless modified by the endorsement.

This endorsement changes the policy effective on the inception date of the policy unless another date is indicated below.

| | |
|---|---|
| Endorsement Effective:  10/15/04 - 10/15/05 | Countersigned By: |
| Named Insured:  Pro Transportation | (Authorized Representative) |

### SCHEDULE

| Limit Of Insurance | |
|---|---|
| $    $500,000 | Each "Accident" |

Information required to complete this Schedule, if not shown above, will be shown in the Declarations.

**A. Coverage**

1. We will pay all sums the "insured" is legally entitled to recover as compensatory damages from the owner or driver of an "uninsured motor vehicle". The damages must result from "bodily injury" sustained by the "insured" caused by an "accident". The owner's or driver's liability for these damages must result from the ownership, maintenance or use of the "uninsured motor vehicle".

2. We will pay only after the limits of liability under any liability bonds or policies have been exhausted by payment of judgments or settlements.

3. Any judgment for damages arising out of a "suit" brought without our written consent is not binding on us

**B. Who Is An Insured**

If the Named Insured is designated in the Declarations as:

1. An individual, then the following are "insureds":

   a. The Named Insured and any "family members".

   b. Anyone else "occupying" a covered "auto" or a temporary substitute for a covered "auto". The covered "auto" must be out of service because of its breakdown, repair, servicing, "loss" or destruction.

   c. Anyone for damages he or she is entitled to recover because of "bodily injury" sustained by another "insured".

0734558 149

CA 21 54 02 04

© ISO Properties, Inc., 2003

Page 1 of 4

22

2. A partnership, limited liability company, corporation or any other form of organization, then the following are "insureds":

   a. Anyone "occupying" a covered "auto" or a temporary substitute for a covered "auto". The covered "auto" must be out of service because of its breakdown, repair, servicing, "loss" or destruction.

   b. Anyone for damages he or she is entitled to recover because of "bodily injury" sustained by another "insured".

## C. Exclusions

This insurance does not apply to any of the following:

1. Punitive or exemplary damages.

2. Any claim settled without our consent. However, this exclusion does not apply to a settlement made with the insurer of a vehicle described in Paragraph b. of the definition of "uninsured motor vehicle".

3. The direct or indirect benefit of any insurer or self-insurer under any workers' compensation, disability benefits or similar law or to the direct benefit of the United States, a state or its political subdivisions.

4. "Bodily injury" sustained by:

   a. An individual Named Insured while "occupying" or when struck by any vehicle owned by that Named Insured that is not a covered "auto" for Uninsured Motorists Coverage under this Coverage Form;

   b. Any "family member" while "occupying" or when struck by any vehicle owned by that "family member" that is not a covered "auto" for Uninsured Motorists Coverage under this Coverage Form; or

   c. Any "family member" while "occupying" or when struck by any vehicle owned by the Named Insured that is insured for Uninsured Motorists Coverage on a primary basis under any other Coverage Form or policy.

   However, Exclusion 4. shall not apply to "bodily injury" sustained by an individual Named Insured or "family member" when struck by a vehicle owned by that "insured" and operated or caused to be operated by a person without that "insured's" consent in connection with criminal activity that has been documented in a police report and to which that "insured" is not a party to

5. "Bodily injury" sustained by an individual Named Insured or any "family member" while "occupying" any vehicle leased by that Named Insured or any "family member" under a written contract for a period of 6 months or more that is not a covered "auto".

6. Anyone using a vehicle without a reasonable belief that the person is entitled to do so.

7. "Bodily injury" sustained by an "insured" while "occupying" any vehicle that is rented or leased to that "insured" for use as a public or livery conveyance. However, this exclusion does not apply if the "insured" is in the business of providing public or livery conveyance.

## D. Limit Of Insurance

1. Regardless of the number of covered "autos", "insureds", premiums paid, claims made or vehicles involved in the "accident", the most we will pay for all damages resulting from any one "accident" is the Limit of Insurance for Uninsured Motorists Coverage shown in the Schedule or Declarations.

2. For a vehicle described in Paragraph b. of the definition of "uninsured motor vehicle", our Limit of Insurance shall be reduced by all sums paid because of "bodily injury" by or for anyone who is legally responsible, including all sums paid or payable under this policy's Liability Coverage.

3. No one will be entitled to receive duplicate payments for the same elements of "loss" under this Coverage and any Liability Coverage form or Medical Payments Coverage endorsement attached to this Coverage Part.

   We will not make a duplicate payment under this Coverage for any element of "loss" for which payment has been made by or for anyone who is legally responsible.

   We will not pay for any element of "loss" if a person is entitled to receive payment for the same element of "loss" under any workers' compensation, disability benefits or similar law.

## E. Changes In Conditions

The Conditions are changed for California Uninsured Motorists Coverage – Bodily Injury as follows:

1. Duties In The Event Of Accident, Claim, Suit Or Loss is changed by adding the following:

   a. Promptly notify the police if a hit-and-run driver is involved; and

173455 8 149

© ISO Properties, Inc., 2003
CA 21 54 02 04

23

b. Send us copies of the legal papers if a "suit" is brought. In addition, a person seeking coverage under Paragraph b. of the definition of "uninsured motor vehicle" must:

(1) Provide us with a copy of the complaint by personal service or certified mail if the "insured" brings an action against the owner or operator of such "uninsured motor vehicle";

(2) Within a reasonable time, make all pleadings and depositions available for copying by us or furnish us copies at our expense; and

(3) Provide us with proof that the limits of insurance under any applicable liability bonds or policies have been exhausted by payment of judgments or settlements.

2. **Legal Action Against Us** is replaced by the following:

No legal action may be brought against us under this Coverage Form until there has been full compliance with all the terms of this Coverage Form and with respect to Paragraphs **a.**, **c.** and **d.** of the definition of "uninsured motor vehicle" unless within two years from the date of the "accident":

a. Agreement as to the amount due under this Insurance has been concluded;

b. The "insured" has formally instituted arbitration proceedings against us. In the event that the "insured" decides to arbitrate, the "insured" must formally begin arbitration proceedings by notifying us in writing, sent by certified mail, return receipt requested; or

c. "Suit" for "bodily injury" has been filed against the uninsured motorist in a court of competent jurisdiction.

Written notice of the "suit" must be given to us within a reasonable time after the "insured" knew, or should have known, that the other motorist is uninsured. In no event will such notice be required before two years from the date of the accident. Failure of the "insured" or his or her representative to give us such notice of the "suit" will relieve us of our obligations under this Coverage Form only if the failure to give notice prejudices our rights.

3. **Transfer Of Rights Of Recovery Against Others To Us** is replaced by the following:

a. With respect to Paragraphs **a.**, **c.** and **d.** of the definition of "uninsured motor vehicle", if we make any payment, we are entitled to recover what we paid from other parties. Any person to or for whom we make payment must transfer to us his or her rights of recovery against any other party. This person must do everything necessary to secure these rights and must do nothing that would jeopardize them.

b. With respect to Paragraph b. of the definition of "uninsured motor vehicle", if we make any payment and the "insured" recovers from another party, the "insured" shall hold the proceeds in trust for us and pay us back the amount we have paid.

4. **Other Insurance** in the Business Auto and Garage Coverage Forms and **Other Insurance – Primary And Excess Insurance Provisions** in the Truckers and Motor Carrier Coverage Forms are replaced by the following:

If there is other applicable insurance available under one or more policies or provisions of coverage:

a. The maximum recovery under all Coverage Forms or policies combined may equal but not exceed the highest applicable limit for any one vehicle under any Coverage Form or policy providing coverage on either a primary or excess basis.

b. Any insurance we provide with respect to a vehicle the Named Insured does not own shall be excess over any other collectible uninsured motorists insurance providing coverage on a primary basis.

c. If the coverage under this Coverage Form is provided:

(1) On a primary basis, we will pay only our share of the "loss" that must be paid under insurance providing coverage on a primary basis. Our share is the proportion that our limit of liability bears to the total of all applicable limits of liability for coverage on a primary basis.

(2) On an excess basis we will pay only our share of the "loss" that must be paid under insurance providing coverage on an excess basis. Our share is the proportion that our limit of liability bears to the total of all applicable limits of liability for coverage on an excess basis.

**5.** The following Condition is added:

**ARBITRATION**

**a.** If we and an "insured" disagree whether the "insured" is legally entitled to recover damages from the owner or driver of an "uninsured motor vehicle" or do not agree as to the amount of damages that are recoverable by that "insured", the disagreement will be settled by arbitration. Such arbitration may be initiated by a written demand for arbitration made by either party. The arbitration shall be conducted by a single neutral arbitrator. However, disputes concerning coverage under this endorsement may not be arbitrated. Each party will bear the expenses of the arbitrator equally.

**b.** Unless both parties agree otherwise, arbitration will take place in the county in which the "insured" lives. Local rules of law as to arbitration procedures and evidence will apply. The decision of the arbitrator will be binding.

**F. Additional Definitions**

The following are added to the Definitions Section:

**1.** "Family member" means the individual Named Insured's spouse, whether or not a resident of the individual Named Insured's household, and any other person related to such Named Insured by blood, marriage or adoption who is a resident of such Named Insured's household, including a ward or foster child.

**2.** "Occupying" means in, upon, getting in, on, out or off.

**3.** "Uninsured motor vehicle" means a land motor vehicle or trailer:

**a.** For which no liability bond or policy at the time of an "accident" provides at least the amounts required by the applicable law where a covered "auto" is principally garaged.

**b.** That is an underinsured motor vehicle. An underinsured motor vehicle is a land motor vehicle or "trailer" for which the sum of all liability bonds or policies at the time of an "accident" provides at least the amounts required by the applicable law where a covered "auto" is principally garaged but that sum is less than the Limit of Insurance for this coverage;

**c.** For which an insuring or bonding company denies coverage or refuses to admit coverage except conditionally or with reservation or becomes insolvent; or

**d.** That is a hit-and-run vehicle and neither the driver nor owner can be identified. The vehicle must make physical contact with an "insured", a covered "auto" or a vehicle an "insured" is "occupying".

**e.** That is owned by an individual Named Insured or "family member" and operated or caused to be operated by a person without the owner's consent in connection with criminal activity that has been documented in a police report.

However, "uninsured motor vehicle" does not include any vehicle:

**a.** Owned or operated by a self-insurer under any applicable motor vehicle law except a self-insurer who is or becomes insolvent and cannot provide the amounts required by that motor vehicle law;

**b.** Owned by a governmental unit or agency;

**c.** Designed or modified for use primarily off public roads while not on public roads.

© ISO Properties, Inc., 2003

**CA 21 54 02 04** ☐

25

POLICY NUMBER: BA0340375-00

**COMMERCIAL AUTO**
**CA 21 55 04 00**

### THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

# CALIFORNIA UNINSURED MOTORISTS COVERAGE
# PROPERTY DAMAGE

For a covered "auto" licensed or principally garaged in or "garage operations" conducted in California this endorsement modifies insurance provided under the following:

>   BUSINESS AUTO COVERAGE FORM
>   GARAGE COVERAGE FORM
>   MOTOR CARRIER COVERAGE FORM
>   TRUCKERS COVERAGE FORM

With respect to coverage provided by this endorsement, the provisions of the Coverage Form apply unless modified by the endorsement.

This endorsement changes the policy effective on the inception date of the policy unless another date is indicated below.

| | |
|---|---|
| Endorsement Effective: 10/15/04 - 10/15/05 | Countersigned By: |
| Named Insured: Pro Transportation | (Authorized Representative) |

### SCHEDULE

| "Property Damage" Uninsured Motorists Coverage | |
|---|---|
| Designation Or Description Of Covered "Auto" | Premium |
| | $ |

(If no entry appears above, information required to complete this endorsement will be shown in the Declarations as applicable to this endorsement.)

**A. Coverage**

1. We will pay all sums the "insured" is legally entitled to recover as compensatory damages from the owner or operator of an "uninsured motor vehicle". The damages must result from "property damage" caused by an "accident". The owner's or driver's liability for these damages must result from the ownership, maintenance or use of the "uninsured motor vehicle".

2. Any judgment for damages arising out of a "suit" brought without our written consent is not binding on us.

**B. Exclusions**

This insurance does not apply to any of the following:

1. The direct or indirect benefit of any insurer of property.

1734558 149

  Copyright, Insurance Services Office, Inc., 1999   □

26

2. Property contained in the covered "auto". However, this exclusion does not apply to the replacement of a child passenger restraint system meeting federal motor vehicle safety standards that was in use by a child during an "accident".

3. "Property damage" to any motor vehicle owned by you or any "family member" that is not a covered "auto".

4. "Property damage" to any motor vehicle owned by you to which collision coverage applies under this policy or any other policy.

5. Punitive or exemplary damages.

## C. Limit Of Insurance

1. Regardless of the number of covered "autos", claims made, premiums paid or vehicles involved in the "accident", the most we will pay for all damages resulting from any one "accident" is the lesser of the following:

   a. $3,500; or

   b. The actual cash value of the damaged covered "auto" at the time of the "accident".

2. Any amount payable as damages under this coverage shall be reduced by all sums paid by or for anyone who is legally responsible.

## D. Changes In Conditions

The **Conditions** are changed for California Uninsured Motorists Coverage – Property Damage as follows:

1. **Duties In The Event Of Accident, Claim, Suit Or Loss** is changed by adding the following:

   a. Promptly notify the police if a hit-and-run driver is involved;

   b. Report the "accident" or "loss" to us or to our agent within ten business days; and

   c. Promptly send us copies of the legal papers if a "suit" is brought.

2. **Other Insurance** in the Business Auto and Garage Coverage Forms and **Other Insurance – Primary And Excess Insurance Provisions** in the Truckers and Motor Carrier Coverage Forms is replaced by the following:

   If there is other applicable insurance available under one or more policies or provisions of coverage:

   a. The maximum recovery under all Coverage Forms or policies combined may equal but not exceed the highest applicable limit for any one vehicle under any Coverage Form or policy providing coverage on either a primary or excess basis.

   b. Any insurance we provide with respect to a vehicle you do not own shall be excess over any other collectible uninsured motorists insurance providing coverage on a primary basis.

   c. If the coverage under this Coverage Form is provided:

      (1) On a primary basis, we will pay only our share of the "loss" that must be paid under insurance providing coverage on a primary basis. Our share is the proportion that our limit of liability bears to the total of all applicable limits of liability for coverage on a primary basis.

      (2) On an excess basis we will pay only our share of the "loss" that must be paid under insurance providing coverage on an excess basis. Our share is the proportion that our limit of liability bears to the total of all applicable limits of liability for coverage on an excess basis.

3. The following Condition is added:

   **ARBITRATION**

   a. If we and an "insured" disagree whether the "insured" is legally entitled to recover damages from the owner or operator of an "uninsured motor vehicle" or do not agree as to the amount of damages that are recoverable by that "insured", the disagreement will be settled by arbitration. Such arbitration may be initiated by a written demand for arbitration made by either party within one year. The arbitration shall be conducted by a single neutral arbitrator. However, disputes concerning coverage under this endorsement may not be arbitrated. Each party will bear the expenses of the arbitrator equally.

   b. Unless both parties agree otherwise, arbitration will take place in the county in which the "insured" lives. Local rules of law as to arbitration procedure and evidence will apply. The decision of the arbitrator will be binding.

## E. Additional Definitions

1. The following words and phrases have special meaning for California Uninsured Motorists Coverage Property Damage:

   a. "Auto" means a self-propelled motor vehicle. However, it does not include:

      (1) A vehicle transporting persons for hire, compensation or profit other than van pool vehicle;

0734558 149

   Copyright, Insurance Services Office, Inc., 1999   CA 21 55 04 00   □

27

(2) A vehicle designed, used or maintained primarily for the transportation of property; or

(3) "Mobile equipment".

b. "Property damage" means injury to or destruction of a covered "auto". However, "property damage" does not include loss of use.

2. As used in this endorsement:

"Uninsured motor vehicle" means a land motor vehicle or trailer that is involved in a collision with a covered "auto" and for which:

a. No liability bond or policy at the time of an "accident" provides at least the amount required for "property damage" liability by the California Financial Responsibility Law; or

b. The insuring or bonding company denies coverage or refuses to admit coverage except conditionally or with reservation or becomes insolvent.

The collision must involve direct physical contact between a covered "auto" and the "uninsured motor vehicle" and:

a. The owner or operator of the "uninsured motor vehicle" must be identified; or

b. The "uninsured motor vehicle" must be identified by its license number.

However, "uninsured motor vehicle" does not include any vehicle:

a. Owned or operated by a self-insurer under any applicable motor vehicle law, except a self-insurer who is or becomes insolvent and cannot provide the amounts required by that motor vehicle law;

b. Owned by a governmental unit or agency; or

c. Designed for use mainly off public roads while not on public roads.

0734558 149

28

POLICY NUMBER:  BA0340375-00

**COMMERCIAL AUTO**
**CA 99 16 12 93**

### THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.

# HIRED AUTOS SPECIFIED AS COVERED AUTOS YOU OWN

This endorsement modifies insurance provided under the following:

BUSINESS AUTO COVERAGE FORM
GARAGE COVERAGE FORM
MOTOR CARRIER COVERAGE FORM
TRUCKERS COVERAGE FORM
BUSINESS AUTO PHYSICAL DAMAGE COVERAGE FORM

With respect to coverage provided by this endorsement, the provisions of the Coverage Form apply unless modified by the endorsement.

This endorsement changes the policy effective on the inception date of the policy unless another date is indicated below.

| Endorsement Effective:  10/15/04 - 10/15/05 | |
| Named Insured:  Pro Transportation | Countersigned By |

(Authorized Representative)

### SCHEDULE

**Description of Auto:  see schedule**

(If no entry appears above, information required to complete this endorsement will be shown in the Declarations as applicable to this endorsement.)

**A.** Any "auto" described in the Schedule will be considered a covered "auto" you own and not a covered "auto" you hire, borrow or lease under the coverage for which it is a covered "auto".

**B. CHANGES IN LIABILITY COVERAGE**

The following is added to WHO IS AN INSURED:

While any covered "auto" described in the Schedule is rented or leased to you and is being used by or for you, its owner or anyone else from whom you rent or lease it is an "insured" but only for that covered "auto".

0734558 149

**CA 99 16 12 93**

Copyright, Insurance Services Office, Inc., 1993

Page 1 of 1    □

*29*

IL 00 03 08 02

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

# CALCULATION OF PREMIUM

This endorsement modifies insurance provided under the following:

    BOILER AND MACHINERY COVERAGE PART
    CAPITAL ASSETS PROGRAM (OUTPUT POLICY) COVERAGE PART
    COMMERCIAL AUTOMOBILE COVERAGE PART
    COMMERCIAL CRIME COVERAGE FORM
    COMMERCIAL CRIME POLICY
    COMMERCIAL GENERAL LIABILITY COVERAGE PART
    COMMERCIAL INLAND MARINE COVERAGE PART
    COMMERCIAL PROPERTY COVERAGE PART
    EMPLOYEE THEFT AND FORGERY POLICY
    EMPLOYMENT-RELATED PRACTICES LIABILITY COVERAGE PART
    FARM COVERAGE PART
    GOVERNMENT CRIME AND COVERAGE FORM
    GOVERNMENT CRIME POLICY
    LIQUOR LIABILITY COVERAGE PART
    OWNERS AND CONTRACTORS PROTECTIVE LIABILITY COVERAGE PART
    POLLUTION LIABILITY COVERAGE PART
    PRODUCTS/COMPLETED OPERATIONS LIABILITY COVERAGE PART
    PROFESSIONAL LIABILITY COVERAGE PART
    RAILROAD PROTECTIVE LIABILITY COVERAGE PART

The following is added:

The premium shown in the Declarations was computed based on rates in effect at the time the policy was issued. On each renewal, continuation, or anniversary of the effective date of this policy, we will compute the premium in accordance with our rates and rules then in effect.

0734558 149

IL 00 03 08 02                 © ISO Properties, Inc., 2002                 **Page 1 of 1**    ☐

*3D*

IL 00 17 11 98

# COMMON POLICY CONDITIONS

All Coverage Parts included in this policy are subject to the following conditions.

## A. Cancellation

1. The first Named Insured shown in the Declarations may cancel this policy by mailing or delivering to us advance written notice of cancellation.

2. We may cancel this policy by mailing or delivering to the first Named Insured written notice of cancellation at least:

   a. 10 days before the effective date of cancellation if we cancel for nonpayment of premium; or

   b. 30 days before the effective date of cancellation if we cancel for any other reason.

3. We will mail or deliver our notice to the first Named Insured's last mailing address known to us.

4. Notice of cancellation will state the effective date of cancellation. The policy period will end on that date.

5. If this policy is cancelled, we will send the first Named Insured any premium refund due. If we cancel, the refund will be pro rata. If the first Named Insured cancels, the refund may be less than pro rata. The cancellation will be effective even if we have not made or offered a refund.

6. If notice is mailed, proof of mailing will be sufficient proof of notice.

## B. Changes

This policy contains all the agreements between you and us concerning the insurance afforded. The first Named Insured shown in the Declarations is authorized to make changes in the terms of this policy with our consent. This policy's terms can be amended or waived only by endorsement issued by us and made a part of this policy.

## C. Examination Of Your Books And Records

We may examine and audit your books and records as they relate to this policy at any time during the policy period and up to three years afterward.

## D. Inspections And Surveys

1. We have the right to:

   a. Make inspections and surveys at any time;

   b. Give you reports on the conditions we find; and

   c. Recommend changes.

2. We are not obligated to make any inspections, surveys, reports or recommendations and any such actions we do undertake relate only to insurability and the premiums to be charged. We do not make safety inspections. We do not undertake to perform the duty of any person or organization to provide for the health or safety of workers or the public. And we do not warrant that conditions:

   a. Are safe or healthful; or

   b. Comply with laws, regulations, codes or standards.

3. Paragraphs 1. and 2. of this condition apply not only to us, but also to any rating, advisory, rate service or similar organization which makes insurance inspections, surveys, reports or recommendations.

4. Paragraph 2. of this condition does not apply to any inspections, surveys, reports or recommendations we may make relative to certification, under state or municipal statutes, ordinances or regulations, of boilers, pressure vessels or elevators.

## E. Premiums

The first Named Insured shown in the Declarations:

1. Is responsible for the payment of all premiums; and

2. Will be the payee for any return premiums we pay.

## F. Transfer Of Your Rights And Duties Under This Policy

Your rights and duties under this policy may not be transferred without our written consent except in the case of death of an individual named insured.

If you die, your rights and duties will be transferred to your legal representative but only while acting within the scope of duties as your legal representative. Until your legal representative is appointed, anyone having proper temporary custody of your property will have your rights and duties but only with respect to that property.

1734558 149

31

3/15/07
0734558
149

INTERLINE
IL 00 21 05 04

## THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

# NUCLEAR ENERGY LIABILITY EXCLUSION ENDORSEMENT
### (Broad Form)

This endorsement modifies insurance provided under the following:

COMMERCIAL AUTOMOBILE COVERAGE PART
COMMERCIAL GENERAL LIABILITY COVERAGE PART
FARM COVERAGE PART
LIQUOR LIABILITY COVERAGE PART
OWNERS AND CONTRACTORS PROTECTIVE LIABILITY COVERAGE PART
POLLUTION LIABILITY COVERAGE PART
PRODUCTS/COMPLETED OPERATIONS LIABILITY COVERAGE PART
PROFESSIONAL LIABILITY COVERAGE PART
RAILROAD PROTECTIVE LIABILITY COVERAGE PART

**1.** The Insurance does not apply:

**A.** Under any Liability Coverage, to "bodily injury" or "property damage":

(1) With respect to which an "insured" under the policy is also an insured under a nuclear energy liability policy issued by Nuclear Energy Liability Insurance Association, Mutual Atomic Energy Liability Underwriters, Nuclear Insurance Association of Canada or any of their successors, or would be an insured under any such policy but for its termination upon exhaustion of its limit of liability; or

(2) Resulting from the "hazardous properties" of "nuclear material" and with respect to which (a) any person or organization is required to maintain financial protection pursuant to the Atomic Energy Act of 1954, or any law amendatory thereof, or (b) the "insured" is, or had this policy not been issued would be, entitled to indemnity from the United States of America, or any agency thereof, under any agreement entered into by the United States of America, or any agency thereof, with any person or organization.

**B.** Under any Medical Payments coverage, to expenses incurred with respect to "bodily injury" resulting from the "hazardous properties" of "nuclear material" and arising out of the operation of a "nuclear facility" by any person or organization.

**C.** Under any Liability Coverage, to "bodily injury" or "property damage" resulting from "hazardous properties" of "nuclear material", if:

(1) The "nuclear material" (a) is at any "nuclear facility" owned by, or operated by or on behalf of, an "insured" or (b) has been discharged or dispersed therefrom;

(2) The "nuclear material" is contained in "spent fuel" or "waste" at any time possessed, handled, used, processed, stored, transported or disposed of, by or on behalf of an "insured"; or

(3) The "bodily injury" or "property damage" arises out of the furnishing by an "insured" of services, materials, parts or equipment in connection with the planning, construction, maintenance, operation or use of any "nuclear facility", but if such facility is located within the United States of America, its territories or possessions or Canada, this exclusion (3) applies only to "property damage" to such "nuclear facility" and any property thereat.

1734558 149

IL 00 21 05 04                    © ISO Properties, Inc., 2001                    Page 1 of 2    □

32

Case 1:09-cv-21101-ASG   Document 29-1   Filed 02/10/2010   Page 34 of 78

2. As used in this endorsement:

"Hazardous properties" includes radioactive, toxic or explosive properties;

"Nuclear material" means "source material", "Special nuclear material" or "by-product material";

"Source material", "special nuclear material," and "by-product material" have the meanings given them in the Atomic Energy Act of 1954 or in any law amendatory thereof;

"Spent fuel" means any fuel element or fuel component, solid or liquid, which has been used or exposed to radiation in a "nuclear reactor";

"Waste" means any waste material (a) containing "by-product material" other than the tailings or wastes produced by the extraction or concentration of uranium or thorium from any ore processed primarily for its "source material" content, and (b) resulting from the operation by any person or organization of any "nuclear facility" included under the first two paragraphs of the definition of "nuclear facility".

"Nuclear facility" means:

(a) Any "nuclear reactor";

(b) Any equipment or device designed or used for (1) separating the isotopes of uranium or plutonium, (2) processing or utilizing "spent fuel", or (3) handling, processing or packaging "waste";

(c) Any equipment or device used for the processing, fabricating or alloying of "special nuclear material" if at any time the total amount of such material in the custody of the "insured" at the premises where such equipment or device is located consists of or contains more than 25 grams of plutonium or uranium 233 or any combination thereof, or more than 250 grams of uranium 235;

(d) Any structure, basin, excavation, premises or place prepared or used for the storage or disposal of "waste";

and includes the site on which any of the foregoing is located, all operations conducted on such site and all premises used for such operations;

"Nuclear reactor" means any apparatus designed or used to sustain nuclear fission in a self-supporting chain reaction or to contain a critical mass of fissionable material;

"Property damage" includes all forms of radioactive contamination of property.

9734558 149

© ISO Properties, Inc., 2001

IL 00 21 05 04      □

*33*

IL 02 70 11 04

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# CALIFORNIA CHANGES – CANCELLATION AND NONRENEWAL

This endorsement modifies insurance provided under the following:

BOILER AND MACHINERY COVERAGE PART
CAPITAL ASSETS PROGRAM (OUTPUT POLICY) COVERAGE PART
COMMERCIAL AUTOMOBILE COVERAGE PART
COMMERCIAL GENERAL LIABILITY COVERAGE PART
COMMERCIAL INLAND MARINE COVERAGE PART
COMMERCIAL PROPERTY COVERAGE PART
CRIME AND FIDELITY COVERAGE PART
EMPLOYMENT-RELATED PRACTICES LIABILITY COVERAGE PART
FARM COVERAGE PART
LIQUOR LIABILITY COVERAGE PART
POLLUTION LIABILITY COVERAGE PART
PRODUCTS/COMPLETED OPERATIONS LIABILITY COVERAGE PART
PROFESSIONAL LIABILITY COVERAGE PART

**A.** Paragraphs **2.** and **3.** of the **Cancellation** Common Policy Condition are replaced by the following:

**2. All Policies In Effect For 60 Days Or Less**

If this policy has been in effect for 60 days or less, and is not a renewal of a policy we have previously issued, we may cancel this policy by mailing or delivering to the first Named Insured at the mailing address shown in the policy and to the producer of record, advance written notice of cancellation, stating the reason for cancellation, at least:

**a.** 10 days before the effective date of cancellation if we cancel for:

(1) Nonpayment of premium; or

(2) Discovery of fraud by:

(a) Any insured or his or her representative in obtaining this insurance; or

(b) You or your representative in pursuing a claim under this policy.

**b.** 30 days before the effective date of cancellation if we cancel for any other reason.

**3. All Policies In Effect For More Than 60 Days**

**a.** If this policy has been in effect for more than 60 days, or is a renewal of a policy we issued, we may cancel this policy only upon the occurrence, after the effective date of the policy, of one or more of the following:

(1) Nonpayment of premium, including payment due on a prior policy we issued and due during the current policy term covering the same risks.

(2) Discovery of fraud or material misrepresentation by:

(a) Any insured or his or her representative in obtaining this insurance; or

(b) You or your representative in pursuing a claim under this policy.

(3) A judgment by a court or an administrative tribunal that you have violated a California or Federal law, having as one of its necessary elements an act which materially increases any of the risks insured against.

1734558 149

IL 02 70 11 04

© ISO Properties, Inc., 2004

34

**(4)** Discovery of willful or grossly negligent acts or omissions, or of any violations of state laws or regulations establishing safety standards, by you or your representative, which materially increase any of the risks insured against.

**(5)** Failure by you or your representative to implement reasonable loss control requirements, agreed to by you as a condition of policy issuance, or which were conditions precedent to our use of a particular rate or rating plan, if that failure materially increases any of the risks insured against.

**(6)** A determination by the Commissioner of Insurance that the:

　**(a)** Loss of, or changes in, our reinsurance covering all or part of the risk would threaten our financial integrity or solvency; or

　**(b)** Continuation of the policy coverage would:

　　**(i)** Place us in violation of California law or the laws of the state where we are domiciled; or

　　**(ii)** Threaten our solvency.

**(7)** A change by you or your representative in the activities or property of the commercial or industrial enterprise, which results in a materially added, increased or changed risk, unless the added, increased or changed risk is included in the policy.

**b.** We will mail or deliver advance written notice of cancellation, stating the reason for cancellation, to the first Named Insured, at the mailing address shown in the policy, and to the producer of record, at least:

　**(1)** 10 days before the effective date of cancellation if we cancel for nonpayment of premium or discovery of fraud; or

　**(2)** 70 days before the effective date of cancellation if we cancel for any other reason listed in Paragraph **3.a.**

**B.** The following provision is added to the **Cancellation Common Policy Condition:**

**7. Residential Property**

This provision applies to coverage on real property which is used predominantly for residential purposes and consisting of not more than four dwelling units, and to coverage on tenants' household personal property in a residential unit, if such coverage is written under one of the following:

Commercial Property Coverage Part

Farm Coverage Part – Farm Property – Farm Dwellings, Appurtenant Structures And Household Personal Property Coverage Form

**a.** If such coverage has been in effect for 60 days or less, and is not a renewal of coverage we previously issued, we may cancel this coverage for any reason, except as provided in **b.** and **c.** below.

**b.** We may not cancel this policy solely because the first Named Insured has:

　**(1)** Accepted an offer of earthquake coverage; or

　**(2)** Cancelled or did not renew a policy issued by the California Earthquake Authority (CEA) that included an earthquake policy premium surcharge.

However, we shall cancel this policy if the first Named Insured has accepted a new or renewal policy issued by the CEA that includes an earthquake policy premium surcharge but fails to pay the earthquake policy premium surcharge authorized by the CEA.

**c.** We may not cancel such coverage solely because corrosive soil conditions exist on the premises. This Restriction **(c.)** applies only if coverage is subject to one of the following, which exclude loss or damage caused by or resulting from corrosive soil conditions:

　**(1)** Capital Assets Program Coverage Form (Output Policy);

　**(2)** Commercial Property Coverage Part – Causes Of Loss – Special Form; or

　**(3)** Farm Coverage Part – Causes Of Loss Form – Farm Property, Paragraph **D.** Covered Causes Of Loss – Special.

1734558 149

35

**C.** The following is added and supersedes any provisions to the contrary:

**NONRENEWAL**

**1.** Subject to the provisions of Paragraphs **C.2.** and **C.3.** below, if we elect not to renew this policy, we will mail or deliver written notice stating the reason for nonrenewal to the first Named Insured shown in the Declarations and to the producer of record, at least 60 days, but not more than 120 days, before the expiration or anniversary date.

We will mail or deliver our notice to the first Named Insured, and to the producer of record, at the mailing address shown in the policy.

**2. Residential Property**

This provision applies to coverage on real property used predominantly for residential purposes and consisting of not more than four dwelling units, and to coverage on tenants' household property contained in a residential unit, if such coverage is written under one of the following:

Capital Assets Program (Output Policy) Coverage Part

Commercial Property Coverage Part

Farm Coverage Part – Farm Property – Farm Dwellings, Appurtenant Structures And Household Personal Property Coverage Form

  **a.** We may elect not to renew such coverage for any reason, except as provided in **b.**, **c.** and **d.** below.

  **b.** We will not refuse to renew such coverage solely because the first Named Insured has accepted an offer of earthquake coverage.

However, the following applies only to insurers who are associate participating insurers as established by Cal. Ins. Code Section 10089.16. We may elect not to renew such coverage after the first Named Insured has accepted an offer of earthquake coverage, if one or more of the following reasons applies:

    **(1)** he nonrenewal is based on sound underwriting principles that relate to the coverages provided by this policy and that are consistent with the approved rating plan and related documents filed with the Department of Insurance as required by existing law;

    **(2)** The Commissioner of Insurance finds that the exposure to potential losses will threaten our solvency or place us in a hazardous condition. A hazardous condition includes, but is not limited to, a condition in which we make claims payments for losses resulting from an earthquake that occurred within the preceding two years and that required a reduction in policyholder surplus of at least 25% for payment of those claims; or

    **(3)** We have:

      **(a)** Lost or experienced a substantial reduction in the availability or scope of reinsurance coverage; or

      **(b)** Experienced a substantial increase in the premium charged for reinsurance coverage of our residential property insurance policies; and

the Commissioner has approved a plan for the nonrenewals that is fair and equitable, and that is responsive to the changes in our reinsurance position.

  **c.** We will not refuse to renew such coverage solely because the first Named Insured has cancelled or did not renew a policy, issued by the California Earthquake Authority that included an earthquake policy premium surcharge.

  **d.** We will not refuse to renew such coverage solely because corrosive soil conditions exist on the premises. This Restriction **(d.)** applies only if coverage is subject to one of the following, which exclude loss or damage caused by or resulting from corrosive soil conditions:

    **(1)** Capital Assets Program Coverage Form (Output Policy);

    **(2)** Commercial Property Coverage Part – Causes Of Loss – Special Form; or

    **(3)** Farm Coverage Part – Causes Of Loss Form – Farm Property, Paragraph **D.** Covered Causes Of Loss – Special.

**3.** We are not required to send notice of nonrenewal in the following situations:

  **a.** If the transfer or renewal of a policy, without any changes in terms, conditions, or rates, is between us and a member of our insurance group.

1734558 149

*36*

b. If the policy has been extended for 90 days or less, provided that notice has been given in accordance with Paragraph **C.1.**

c. If you have obtained replacement coverage, or if the first Named Insured has agreed, in writing, within 60 days of the termination of the policy, to obtain that coverage.

d. If the policy is for a period of no more than 60 days and you are notified at the time of issuance that it will not be renewed.

e. If the first Named Insured requests a change in the terms or conditions or risks covered by the policy within 60 days of the end of the policy period.

f. If we have made a written offer to the first Named Insured, in accordance with the timeframes shown in Paragraph **C.1.**, to renew the policy under changed terms or conditions or at an increased premium rate, when the increase exceeds 25%.

1734558 149

© ISO Properties, Inc., 2004

IL 02 70 11 04      □

37

COMMERCIAL AUTO
AMB 21 (02/03)

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

## PROFESSIONAL SERVICES NOT COVERED
## PATIENT HANDLING EXCEPTION

This endorsement modifies insurance provided under the following:

BUSINESS AUTO COVERAGE FORM

With respect to coverage provided by this endorsement, the provisions of the Coverage Form apply unless modified by the endorsement.

LIABILITY COVERAGE is changed by adding the following exclusions:

This insurance does not apply to:

1. "Bodily injury" resulting from the providing or the failure to provide any medical or other professional services.

2. "Bodily injury" resulting from food or drink furnished with these services.

3. "Bodily injury" or "property damage" resulting from the handling of corpses.

However, exclusions **1, 2,** and **3** above do not apply to the "loading or unloading" of patients.

"Loading or unloading" means the handling of patients:

1. After removal from the place where they are accepted for movement into or onto a covered "auto"; or

2. While in or on a covered "auto" or while being removed from a covered "auto" to the place where they are finally delivered.

But, "loading or unloading" does not include "bodily injury" resulting from the providing or the failure to provide any medical treatment by your employees or other medical personnel.

073455 8  149
Includes copyrighted material of Insurance Services Office, Inc.,
with its permission

38

COMMERCIAL AUTO
CA 23 61 12 02

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# EXCLUSION OF CERTIFIED ACTS OF TERRORISM AND OTHER ACTS OF TERRORISM

This endorsement modifies insurance provided under the following:

BUSINESS AUTO COVERAGE FORM
BUSINESS AUTO PHYSICAL DAMAGE COVERAGE FORM
GARAGE COVERAGE FORM
MOTOR CARRIER COVERAGE FORM
SINGLE INTEREST AUTOMOBILE PHYSICAL DAMAGE INSURANCE POLICY
TRUCKERS COVERAGE FORM

With respect to coverage provided by this endorsement, the provisions of the Coverage Form apply unless modified by the endorsement.

**A.** Except with respect to Physical Damage Coverage, Trailer Interchange Coverage, Garagekeepers Coverage, Garagekeepers Coverage – Customers' Sound Receiving Equipment or the Single Interest Automobile Physical Damage Insurance Policy, the following exclusion is added:

This insurance does not apply to:

**TERRORISM**

Any "bodily injury", "property damage", "personal injury", "personal and advertising injury" or "covered pollution cost or expense", as may be defined in any applicable Coverage Form or endorsement, arising directly or indirectly out of a "certified act of terrorism" or an "other act of terrorism". However, with respect to an "other act of terrorism", this exclusion applies only when one or more of the following are attributed to such act:

1. The total of insured damage to all types of property exceeds $25,000,000. In determining whether the $25,000,000 threshold is exceeded, we will include all insured damage sustained by property of all persons and entities affected by the terrorism and business interruption losses sustained by owners or occupants of the damaged property. For the purpose of this provision, insured damage means damage that is covered by any insurance plus damage that would be covered by any insurance but for the application of any terrorism exclusions; or

2. Fifty or more persons sustain death or serious physical injury. For the purposes of this provision, serious physical injury means:

   a. Physical injury that involves a substantial risk of death; or

   b. Protracted and obvious physical disfigurement; or

   c. Protracted loss of or impairment of the function of a bodily member or organ; or

3. The terrorism involves the use, release or escape of nuclear materials, or directly or indirectly results in nuclear reaction or radiation or radioactive contamination; or

4. The terrorism is carried out by means of the dispersal or application of pathogenic or poisonous biological or chemical materials; or

5. Pathogenic or poisonous biological or chemical materials are released, and it appears that one purpose of the terrorism was to release such materials.

With respect to this exclusion, Paragraphs 1. and 2. describe the thresholds used to measure the magnitude of an incident of an "other act of terrorism" and the circumstances in which the threshold will apply for the purpose of determining whether this exclusion will apply to that incident.

0734558 149

© ISO Properties, Inc., 2002

39

**B.** With respect to Physical Damage Coverage, Trailer Interchange Coverage, Garagekeepers Coverage, Garagekeepers Coverage – Customers' Sound Receiving Equipment or the Single Interest Automobile Physical Damage Insurance Policy, the following exclusion is added:

This insurance does not apply to: .

**TERRORISM**

Any "loss", loss of use, or rental reimbursement after "loss", arising directly or indirectly out of a "certified act of terrorism" or an "other act of terrorism". However, with respect to an "other act of terrorism", this exclusion applies only when one or more of the following are attributed to such act:

1. The total of insured damage to all types of property exceeds $25,000,000. In determining whether the $25,000,000 threshold is exceeded, we will include all insured damage sustained by property of all persons and entities affected by the terrorism and business interruption losses sustained by owners or occupants of the damaged property. For the purpose of this provision, insured damage means damage that is covered by any insurance plus damage that would be covered by any insurance but for the application of any terrorism exclusions ; or

2. The terrorism is carried out by means of the dispersal or application of pathogenic or poisonous biological or chemical materials; or

3. Pathogenic or poisonous biological or chemical materials are released, and it appears that one purpose of the terrorism was to release such materials.

With respect to this exclusion, Paragraph 1. describes the threshold used to measure the magnitude of an incident of an "other act of terrorism" and the circumstance in which the threshold will apply for the purpose of determining whether this exclusion will apply to that incident.

**C.** The following definitions are added:

1. "Certified act of terrorism" means an act that is certified by the Secretary of the Treasury, in concurrence with the Secretary of State and the Attorney General of the United States, to be an act of terrorism pursuant to the federal Terrorism Risk Insurance Act of 2002. The federal Terrorism Risk Insurance Act of 2002 sets forth the following criteria for a "certified act of terrorism":

   a. The act resulted in aggregate losses in excess of $5 million; and

   b. The act is a violent act or an act that is dangerous to human life, property or infrastructure and is committed by an individual or individuals acting on behalf of any foreign person or foreign interest, as part of an effort to coerce the civilian population of the United States or to influence the policy or affect the conduct of the United States Government by coercion.

2. "Other act of terrorism" means a violent act or an act that is dangerous to human life, property or infrastructure that is committed by an individual or individuals and that appears to be part of an effort to coerce a civilian population or to influence the policy or affect the conduct of any government by coercion, and the act is not certified as a terrorist act pursuant to the federal Terrorism Risk Insurance Act of 2002. Multiple incidents of an "other act of terrorism" which occur within a seventy-two hour period and appear to be carried out in concert or to have a related purpose or common leadership shall be considered to be one incident.

**D.** In the event of any incident of a "certified act of terrorism" or an "other act of terrorism" that is not subject to this exclusion, coverage does not apply to any "bodily injury", "property damage", "personal injury", "personal and advertising injury", "loss", loss of use, rental reimbursement after "loss" or "covered pollution cost or expense" that is otherwise excluded under this Coverage Form or any applicable endorsement.

© ISO Properties, Inc., 2002

CA 23 61 12 02    □

40

**Gulf Insurance Company**

Effective 10/15/04

| POLICY NUMBER | POLICY PERIOD |
|---|---|
| BA0340375-00 | 10/15/04 to 10/15/05 |

**INSURED NAME AND ADDRESS**

Pro Transportation
PO Box 3913
Salinas CA 93912

**AGENCY NAME AND ADDRESS**

Norman Spencer McKernan, Inc
1000 River Road Suite 200
Conshohocken PA 19428

### Schedule of Forms and Endorsements

| | | |
|---|---|---|
| IL 00001 0802 | | Common Policy Declarations (Auto - GULF) |
| CA 00001 0802 | | Business Auto Cov. Part Dec.(GULF) - Item 1 & 2 |
| CA 00001 0802 | | Business Auto Cov. Part Dec.(GULF) - Item 3 Sheet 1 |
| CA 00001 0802 | | Business Auto Cov. Part Dec.(GULF) - Item 3 Sheet 2 |
| CA 00001 0802 | | Business Auto Cov. Part Dec.(GULF) - Item 3 Sheet 3 |
| CA 00001 0802 | | Business Auto Cov. Part Dec.(GULF) - Item 4 & 5 |
| CA 00001 0802 | | Business Auto Cov. Part Dec.(GULF) - Item 6 |
| AMB21 | 02/01/03 | Professional Services Not Covered - Patient Handling Ex |
| CA0001 | 10/01/01 | Business Auto Coverage Form |
| CA0143 | 02/01/97 | CA Changes |
| CA2154 | 02/01/04 | CA Uninsured Motorists Coverage Bodily Injury |
| CA2155 | 04/01/00 | CA Uninsured Motorists Coverage Property Damage |
| CA9916 | 12/01/93 | Hired Autos Specified As Covered Autos You Ow |
| IL0003 | 08/01/02 | Calculation Of Premium |
| IL0017 | 11/01/98 | Common Policy Condition |
| IL0021 | 05/01/04 | Nuclear Energy Liability Exclusion Endorsement |
| IL0270 | 11/01/04 | Calfifornia Changes - Cancellation |
| CA2361 | 12/02 | Terrorism Exclusion |
| 85489 | 12/01 | Policy Jacket/Signature Page |

THIS ENDORSEMENT CHANGES THE POLICY TO WHICH IT IS ATTACHED AND IS EFFECTIVE ON THE DATE ISSUED UNLESS OTHERWISE STATED.

(THE INFORMATION BELOW IS REQUIRED ONLY WHEN THIS ENDORSEMENT IS ISSUED SUBSEQUENT TO PREPARATION OF THE POLICY.)

Premium $ ___ 0734556 149 ___

Countersigned by Authorized Representative _____ Date _____

IL-FORM9

printed 12/06/04 18:54:33

41

**EXHIBIT 2**





DEC 2 8 2004

# GULF UNDERWRITERS INSURANCE COMPANY
### 1 Tower Square
### Hartford, CT 06183
### (Herein, the "Company")

Policy Number:  GU034052̶4̶  23

Renewal of Number:  N̶E̶W̶  034 -04 -62

| | |
|---|---|
| **Insured:** | Pro Transportation Services, Inc. |
| **Address:** | P.O. Box 3913 |
| | Salinas, CA  93912 |

## DECLARATIONS  -  EXCESS LIABILITY POLICY

### SECTION I  -  EXCESS INSURANCE

| | | |
|---|---|---|
| (A) | **Policy Period:** | From:  10/15/2004        To:  10/15/2005 |
| | | 12:01 a.m. Standard Time at the Address of the Insured stated herein. |
| (B) | **Coverage:** | Excess Business Automobile Liability |
| (C) | **Limits of Liability:** | $500,000 each Accident |
| (D) | **Premium:** | Subtotal        **$93,670.00** |
| | | Terrorism        Rejected |
| | | Total Premium   **$93,670.00** |

**Minimum Premium:**                              **$23,417.50**

**Rating Base:**          Per Unit   **Rate: $2,676.28**

See attached Composite Rate Endorsement

Premium Adjustment as Changes Occur

### SECTION II  -  UNDERLYING INSURANCE

| | | |
|---|---|---|
| (A) | **Underlying Carrier:** | Gulf Insurance Company |
| | **Coverage:** | Business Automobile Liability |
| | **Policy No.:** | BA0340375 |
| | **Policy Limit:** | $500,000 each Accident |
| | **Policy Period:** | From:  10/15/2004        To:  10/15/2005 |

(B)     **Total Limits of all underlying insurance including the underlying policy/policies in excess of which this policy applies:**
$500,000  each Accident

**Endorsements Made Part of This Policy:**  CIRI 47000(01/93), CIRI 47001(11/97), CU49153(01/92), CU49262(03/98), CU49263(03/98), CU49190(01/92), AL6631, CU49287(04/03), IL0017(11/98), IL0021(07/02), 85489(12/01), TRIP00015(11/02), SS-5A(09/03), IL0270 (11/04)

**NAMED & ADDRESS OF AGENT OR BROKER**
Norman Spencer McKernan, Inc.        05-3880
1000 River Road, Suite 200
Conshohocken, PA  19428

Form CIRI 47001 (11/97)

Policy Commission %

Facultative Reinsurance

original          Yes_____   No____

42



## EXCESS INSURANCE POLICY

In consideration of the payment of premium and in reliance upon the statements in the Declarations and subject to all the terms of the policy, the Company named in the Declarations (a capital stock company, herein called the Company) agrees with the Insured, also named in the Declarations, to provide coverage as follows:

### INSURING AGREEMENT

To indemnify the Insured for that amount of loss which exceeds the amount of loss payable by underlying policies described in the Declarations, but the Company's obligation hereunder shall not exceed the Limits of Liability stated in Section I (C) of the Declarations.

### CONDITIONS

**A.  Application of Underlying Insurance.**  Except as otherwise stated herein, and except with respect to (1) any obligation to investigate or defend any claim or suit, or (2) any obligation to renew, the insurance afforded by this policy shall apply in like manner as the underlying insurance described in Section II. (A) of the Declarations.

**B.  Maintenance of Underlying Insurance.**  It is warranted by the Insured that the underlying policies listed in Section II of the Declarations, or renewals or replacements thereof not more restricted, shall be maintained in force as valid and collectible during the currency of this policy, except for any reduction of the aggregate limits contained therein solely by payment of claims in respect of occurrences happening during this policy period.  In the event of failure by the Insured to so maintain such policies in force or to meet all conditions and warranties subsequent to loss under such policies, the insurance afforded by this policy shall apply in the same manner it would have applied had such policies been so maintained in force.  Notice of exhaustion of underlying insurance shall be given the Company within thirty (30) days of such exhaustion.

**C.  Loss Payable.**  Liability of the Company with respect to any one occurrence shall not attach unless and until the Insured, or the Insured's underlying insurer, has paid the amount of underlying insurance stated in Section II (B) of the Declarations.

43

The Insured shall make a definite claim for loss, for which the Company may be liable within twelve (12) months after the Insured has paid any amount of excess loss, as stated in Section I of the Declarations; or after the Insured's liability shall have been made certain by final judgment after actual trial; or by written agreement of the Insured, the claimant, and the Company. Any subsequent payments made by the Insured on account of the same occurrence shall be payable by the Company within thirty (30) days after additional claim is made by the Insured, and after the Insured has shown proof in conformity with this policy.

**D. Premium Computation.** The premium for this policy shall be based upon the rating basis set forth in the Declarations and shall be computed by applying the rate set forth in the Declarations to each unit of exposure generated by the Insured during the Policy Period. Upon expiration of this policy or its termination during the Policy Period, the earned premium shall be computed as thus defined. If the computed earned premium is more than the advance premium paid, the Insured shall immediately pay the excess to the Company; if less, the Company shall return the difference to the Insured; but the Company shall receive and retain the annual minimum premium for each twelve (12) months of the Policy Period.

**E. Assistance and Cooperation.** The Company shall not be called upon to assume charge of the settlement or defense of any claim made or proceeding instituted against the Insured; but the Company shall have the rights and opportunity to associate with the Insured in the defense and control of any claim or proceeding reasonably likely to involve the Company. In such event the Insured and the Company shall cooperate fully.

**F. Expenses.** Expenses incurred with the consent of the Company in the investigation or defense of claims, including court costs and interest, shall be borne by the Company in the proportion that the Company's share of loss bears to the total amount of such loss. Salaries and expenses of the Insured's or the Company's employees or officials shall not be considered as part of the above expenses. Expenses thus paid by the Company shall be paid in addition to the Limits of Liability stated in Section I (C) of the Declarations.

Notwithstanding the foregoing, no further expenses shall be paid by the Company after the Limits of Liability as stated in Item 1 (C) of the Declarations have been exhausted by payment of losses.

**G. Notice of Occurrence.** Upon the happening of an occurrence reasonably likely to involve the Company hereunder, written notice shall be given as soon as practicable to the Company or any of its authorized agents. Such notice shall contain particulars sufficient to identify the Insured and the fullest information obtainable at the time. The Insured shall give like notice of any claim made on account of such occurrence.

44

If legal proceedings are begun, the Insured, when requested by the Company, shall forward to it each and every demand, notice, summons, or other process, or a copy thereof, received by the Insured or the Insured's representatives, together with copies of reports or investigations made by the Insured with respect to such claim proceedings.

**H. Appeals.** In the event the Insured or the Insured's underlying insurer elects not to appeal a judgment which exceeds the underlying insurance, the Company may elect to do so at its own expense, and shall be liable for the taxable costs, disbursements and interest incidental thereto, but in no event shall the liability of the Company for excess loss exceed the amount set forth in Section I (C) of the Declarations.

**I. Subrogation.** In the event of payment under this policy, the Company will participate with the Insured in the exercise of all the Insured's rights of recovery against any person or organization liable therefor. Recoveries shall be applied first to reimburse any interest (including the Insured) that may have paid any amount, with respect to liability in excess of the limit of the Company's liability hereunder, then to reimburse the Company up to the amount paid hereunder, and lastly to reimburse such interests (including the Insured), to whom this insurance is excess as are entitled to claim the residue, if any. Such expenses incurred in the exercise of rights of recovery shall be apportioned among all interests in the ratio of their respective losses for which recovery is sought.

**J. Cancellation.** This policy may be cancelled by the Insured by surrender thereof to the Company or any of its authorized agents, or by mailing to the Company written notice stating when thereafter such cancellation shall be effective. This policy may be cancelled by the Company by mailing to the Insured at the address shown in this policy written notice stating when, not less than thirty (30) days thereafter, such cancellation shall be effective. The mailing of notice as aforesaid shall be sufficient notice and the effective date of cancellation stated in the notice shall become the end of the policy period. Delivery of such written notice either by the Insured or by the Company shall be equivalent to mailing.

Premium adjustment shall be made by the Company either at the time cancellation is effected or as soon as practicable thereafter. The check of the Company or its representative, mailed or delivered, shall be sufficient tender of any refund due to the Insured. If this policy insures more than one Insured, cancellation may be effected by the first of such Insureds for the account of all Insureds; and notice of cancellation by the Company to such first Insured shall be notice to all Insureds. Payment of any unearned premium to such first Insured shall be for the account of all interests therein.

45

**K. Other Insurance.** If other valid and collectible insurance is available to the Insured which covers a loss also covered by this policy, other than insurance that is specifically purchased as being in excess of this policy, this policy shall operate in excess of, and not contribute with, such other insurance.

**L. Bankruptcy or Insolvency of Underlying Insurer.** The insolvency, bankruptcy, receivership, or any refusal or inability to pay of the Insured and/or any insurer shall not operate to:

(a)   deplete or reduce the underlying insurance described in Section II of the Declarations;

(b)   increase the Company's liability under this policy;

(c)   increase the Company's share of liability under this policy.

In no event shall the Company assume responsibility and/or obligations of the Insured and/or any insurer and/or any other Company.

IN WITNESS WHEREOF, the Company has caused this policy to be signed by its President and Secretary but this policy shall not be valid unless completed by the attachment hereto of a Declarations page countersigned by a duly authorized representative of the Company.

46

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

**PUNITIVE DAMAGE EXCLUSION**

This policy does not apply to any fines, penalties, punitive or exemplary damages awarded against any Insured, except that if a suit shall have been brought against the Insured with respect to a claim for acts or alleged acts falling within the coverage hereof, seeking both compensatory and punitive or exemplary damages, then the Company will afford a defense to such action without liability, however, for such punitive or exemplary damages.

**ALL OTHER TERMS AND CONDITIONS REMAIN UNCHANGED.**

CU 49153 (4/92)

47

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

### BROAD AS UNDERLYING PROVISION

It is hereby understood and agreed that this policy applies to loss covered under the underlying insurance described in Section IIA of the Declarations, and which is in excess of the total of all of the limits shown in Section IIB of the Declarations.  This policy is amended to follow the terms and conditions of the policy in Section IIA with respect to such loss.  The foregoing shall not, however, apply to the limits of liability, the premium, the maintenance of underlying insurance provision, the other insurance provision, any obligation to renew, and any endorsements specifically attached to this policy.

### DEFENSE PROVISION

We will have the right, but not the duty, to participate in the defense of claims or suits against you seeking damages to which this insurance may apply; however, we may, at our discretion, investigate and settle any claim or suit.  We will have the right and duty to defend such claims or suits when the total limit of insurance as outlined in Section IIB of the Declarations has been exhausted by payment of judgments, settlements and any cost or expense subject to such limit.  Our right and duty to defend ends when the applicable limit shown on the Declarations page has been used up by our payment of judgments or settlements.

### ALL OTHER TERMS AND CONDITIONS REMAIN UNCHANGED

CU49262 (3/98)

*48*

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

### AMENDMENT TO INSURING AGREEMENT

It is agreed that the **INSURING AGREEMENT** of policy form CIRI 47000 (1/93) attached to this policy is amended to read as follows:

### INSURING AGREEMENT

To pay on behalf of the Insured that amount of loss which exceeds the amount of loss payable by underlying policies described in the Declarations, but the Company's obligation hereunder shall not exceed the Limits of Liability stated in Section I (C) of the Declarations.

### ALL OTHER TERMS AND CONDITIONS REMAIN UNCHANGED

CU49263 (3/98)

49

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

**UNINSURED OR UNDERINSURED MOTORIST EXCLUSION**

This policy does not apply to sums which the Insured shall be legally entitled to recover as damages from the owner or operator of an uninsured auto or underinsured auto because of injuries sustained by the Insured, caused by an accident and arising out of the ownership, maintenance or use of such auto.

**ALL OTHER TERMS AND CONDITIONS REMAIN UNCHANGED.**

CU 49190 (1/92)

50

AL 6631

This endorsement forms a part of Policy No. GU0340524

Issued to:        **Insured - Pro Transportation Services, Inc.**

by Company:    **Gulf Underwriters**

### Composite Rate Endorsement

It is agreed that premium for the policy to which this endorsement is attached shall be computed upon a composite basis in accordance with the Company's rules, rates, rating plans, minimum premium and other terms of the policy.

Premium Adjustments for additions and deletions which take place during the policy term will be done on a pro rata basis.

When used as a Premium Basis:

| Type of Unit | Number of Units | Liability Rate Per Unit | Est. Annual Premium |
|---|---|---|---|
| All Types | 35 | $2,676.28 | $ 93,670 |

Nothing contained herein shall be held to waive, vary, alter or extend any condition or provision of the policy other than as stated above.

This endorsement is attached to the policy indicated above and is effective on the date stated herein at 12:01 a.m. standard time at the address of the Insured as described in the declarations.

All other terms and conditions of this policy remain unchanged.

*51*

**THIS ENDORSEMENT CHANGES THE POLICY.
PLEASE READ IT CAREFULLY.**

### MINIMUM EARNED PREMIUM

In consideration of the premium charged, it is mutually agreed and declared that the minimum earned premium for this policy is $23,417.50, and that such minimum earned premium is not subject to short rate or pro rate adjustment in the event of cancellation by the insured.

It is further agreed that cancellation for non-payment of premium after the effective date of this policy shall be deemed a request by the Insured for cancellation of this policy, thereby activating the foregoing minimum earned premium provision.

CU 49287 (04-03)

52

IL 00 17 11 98

# COMMON POLICY CONDITIONS

All Coverage Parts included in this policy are subject to the following conditions.

## A. Cancellation

1. The first Named Insured shown in the Declarations may cancel this policy by mailing or delivering to us advance written notice of cancellation.

2. We may cancel this policy by mailing or delivering to the first Named Insured written notice of cancellation at least:

   a. 10 days before the effective date of cancellation if we cancel for nonpayment of premium; or

   b. 30 days before the effective date of cancellation if we cancel for any other reason.

3. We will mail or deliver our notice to the first Named Insured's last mailing address known to us.

4. Notice of cancellation will state the effective date of cancellation. The policy period will end on that date.

5. If this policy is cancelled, we will send the first Named Insured any premium refund due. If we cancel, the refund will be pro rata. If the first Named Insured cancels, the refund may be less than pro rata. The cancellation will be effective even if we have not made or offered a refund.

6. If notice is mailed, proof of mailing will be sufficient proof of notice.

## B. Changes

This policy contains all the agreements between you and us concerning the insurance afforded. The first Named Insured shown in the Declarations is authorized to make changes in the terms of this policy with our consent. This policy's terms can be amended or waived only by endorsement issued by us and made a part of this policy.

## C. Examination Of Your Books And Records

We may examine and audit your books and records as they relate to this policy at any time during the policy period and up to three years afterward.

## D. Inspections And Surveys

1. We have the right to:

   a. Make inspections and surveys at any time;

   b. Give you reports on the conditions we find; and

   c. Recommend changes.

2. We are not obligated to make any inspections, surveys, reports or recommendations and any such actions we do undertake relate only to insurability and the premiums to be charged. We do not make safety inspections. We do not undertake to perform the duty of any person or organization to provide for the health or safety of workers or the public. And we do not warrant that conditions:

   a. Are safe or healthful; or

   b. Comply with laws, regulations, codes or standards.

3. Paragraphs 1. and 2. of this condition apply not only to us, but also to any rating, advisory, rate service or similar organization which makes insurance inspections, surveys, reports or recommendations.

4. Paragraph 2. of this condition does not apply to any inspections, surveys, reports or recommendations we may make relative to certification, under state or municipal statutes, ordinances or regulations, of boilers, pressure vessels or elevators.

## E. Premiums

The first Named Insured shown in the Declarations:

1. Is responsible for the payment of all premiums; and

2. Will be the payee for any return premiums we pay.

## F. Transfer Of Your Rights And Duties Under This Policy

Your rights and duties under this policy may not be transferred without our written consent except in the case of death of an individual named insured.

If you die, your rights and duties will be transferred to your legal representative but only while acting within the scope of duties as your legal representative. Until your legal representative is appointed, anyone having proper temporary custody of your property will have your rights and duties but only with respect to that property.

Copyright, Insurance Services Office, Inc., 1998

53

INTERLINE
IL 00 21 05 04

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# NUCLEAR ENERGY LIABILITY EXCLUSION ENDORSEMENT
### (Broad Form)

This endorsement modifies insurance provided under the following:

COMMERCIAL AUTOMOBILE COVERAGE PART
COMMERCIAL GENERAL LIABILITY COVERAGE PART
FARM COVERAGE PART
LIQUOR LIABILITY COVERAGE PART
OWNERS AND CONTRACTORS PROTECTIVE LIABILITY COVERAGE PART
POLLUTION LIABILITY COVERAGE PART
PRODUCTS/COMPLETED OPERATIONS LIABILITY COVERAGE PART
PROFESSIONAL LIABILITY COVERAGE PART
RAILROAD PROTECTIVE LIABILITY COVERAGE PART

1. The insurance does not apply:

   A. Under any Liability Coverage, to "bodily injury" or "property damage":

      (1) With respect to which an "insured" under the policy is also an insured under a nuclear energy liability policy issued by Nuclear Energy Liability Insurance Association, Mutual Atomic Energy Liability Underwriters, Nuclear Insurance Association of Canada or any of their successors, or would be an insured under any such policy but for its termination upon exhaustion of its limit of liability; or

      (2) Resulting from the "hazardous properties" of "nuclear material" and with respect to which (a) any person or organization is required to maintain financial protection pursuant to the Atomic Energy Act of 1954, or any law amendatory thereof, or (b) the "insured" is, or had this policy not been issued would be, entitled to indemnity from the United States of America, or any agency thereof, under any agreement entered into by the United States of America, or any agency thereof, with any person or organization.

   B. Under any Medical Payments coverage, to expenses incurred with respect to "bodily injury" resulting from the "hazardous properties" of "nuclear material" and arising out of the operation of a "nuclear facility" by any person or organization.

   C. Under any Liability Coverage, to "bodily injury" or "property damage" resulting from "hazardous properties" of "nuclear material", if:

      (1) The "nuclear material" (a) is at any "nuclear facility" owned by, or operated by or on behalf of, an "insured" or (b) has been discharged or dispersed therefrom;

      (2) The "nuclear material" is contained in "spent fuel" or "waste" at any time possessed, handled, used, processed, stored, transported or disposed of, by or on behalf of an "insured"; or

      (3) The "bodily injury" or "property damage" arises out of the furnishing by an "insured" of services, materials, parts or equipment in connection with the planning, construction, maintenance, operation or use of any "nuclear facility", but if such facility is located within the United States of America, its territories or possessions or Canada, this exclusion (3) applies only to "property damage" to such "nuclear facility" and any property thereat.

54

2. As used in this endorsement:

"Hazardous properties" includes radioactive, toxic or explosive properties;

"Nuclear material" means "source material", "Special nuclear material" or "by-product material";

"Source material", "special nuclear material," and "by-product material" have the meanings given them in the Atomic Energy Act of 1954 or in any law amendatory thereof;

"Spent fuel" means any fuel element or fuel component, solid or liquid, which has been used or exposed to radiation in a "nuclear reactor";

"Waste" means any waste material (a) containing "by-product material" other than the tailings or wastes produced by the extraction or concentration of uranium or thorium from any ore processed primarily for its "source material" content, and (b) resulting from the operation by any person or organization of any "nuclear facility" included under the first two paragraphs of the definition of "nuclear facility".

"Nuclear facility" means:

(a) Any "nuclear reactor";

(b) Any equipment or device designed or used for (1) separating the isotopes of uranium or plutonium, (2) processing or utilizing "spent fuel", or (3) handling, processing or packaging "waste";

(c) Any equipment or device used for the processing, fabricating or alloying of "special nuclear material" if at any time the total amount of such material in the custody of the "insured" at the premises where such equipment or device is located consists of or contains more than 25 grams of plutonium or uranium 233 or any combination thereof, or more than 250 grams of uranium 235;

(d) Any structure, basin, excavation, premises or place prepared or used for the storage or disposal of "waste";

and includes the site on which any of the foregoing is located, all operations conducted on such site and all premises used for such operations;

"Nuclear reactor" means any apparatus designed or used to sustain nuclear fission in a self-supporting chain reaction or to contain a critical mass of fissionable material;

"Property damage" includes all forms of radioactive contamination of property.

© ISO Properties, Inc., 2001

IL 00 21 05 04    □

55

Endorsement No.
This endorsement, effective 12:01 a.m.
forms a part of policy number issued to
by :

## THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY

# EXCLUSION OF CERTIFIED ACTS OF TERRORISM AND OTHER ACTS OF TERRORISM

This endorsement modifies insurance provided under the following:

**A.** The following exclusion is added:

This insurance does not apply to:

**TERRORISM**

Injury or damage arising directly or indirectly, out of a "certified act of terrorism" or an "other act of terrorism". However, with respect to an "other act of terrorism", this exclusion applies only when one or more of the following are attributed to such act:

1. The total of insured damage to all types of property exceeds $25,000,000. In determining whether the $25,000,000 threshold is exceeded, we will include all insured damage sustained by property of all persons and entities affected by the terrorism and business interruption losses sustained by owners or occupants of the damaged property. For the purpose of this provision, insured damage means damage that is covered by any insurance plus damage that would be covered by any insurance but for the application of any terrorism exclusions; or

2. Fifty or more persons sustain death or serious physical injury.  For the purposes of this provision, serious physical injury means:

   **a.** Physical injury that involves a substantial risk of death; or

   **b.** Protracted and obvious physical disfigurement; or

   **c.** Protracted loss of or impairment of the function of a bodily member or organ; or

3. The terrorism involves the use, release or escape of nuclear materials, or directly or indirectly results in nuclear reaction or radiation or radioactive contamination; or

4. The terrorism is carried out by means of the dispersal or application of pathogenic or poisonous biological or chemical materials; or

5. Pathogenic or poisonous biological or chemical materials are released, and it appears that one purpose of the terrorism was to release such materials.

With respect to this exclusion, Paragraphs 1. and 2. describe the thresholds used to measure the magnitude of an incident of an "other act of terrorism" and the circumstances in which the threshold will apply for the purpose of determining whether this exclusion will apply to that incident.

**B.** The following definitions are added:

1. "Certified act of terrorism" means an act that is certified by the Secretary of the Treasury, in concurrence with the Secretary of State and the Attorney General of the United States, to be an act of terrorism pursuant to the federal Terrorism Risk Insurance Act of 2002. The federal Terrorism Risk Insurance Act of 2002 sets forth the following criteria for a "certified act of terrorism":

a. The act resulted in aggregate losses in excess of $5 million; and

b. The act is a violent act or an act that is dangerous to human life, property or infrastructure and is committed by an individual or individuals acting on behalf of any foreign person or foreign interest, as part of an effort to coerce the civilian population of the United States or to influence the policy or affect the conduct of the United States Government by coercion.

2. "Other act of terrorism" means a violent act or an act that is dangerous to human life, property or infrastructure that is committed by an individual or individuals and that appears to be part of an effort to coerce a civilian population or to influence the policy or affect the conduct of any government by coercion, and the act is not certified as a terrorist act pursuant to the federal Terrorism Risk Insurance Act of 2002. Multiple incidents of an "other act of terrorism" which occur within a seventy-two hour period and appear to be carried out in concert or to have a related purpose or common leadership shall be considered to be one incident.

C. In the event of any incident of a "certified act of terrorism" or an "other act of terrorism" that is not subject to this exclusion, coverage does not apply to any loss or damage that is otherwise excluded under this policy.

## ALL OTHER TERMS AND CONDITIONS SHALL REMAIN UNCHANGED.

_____

Authorized Representative

# ENDORSEMENT

This endorsement forms a part of the policy to which it is attached. Please read it carefully.

<div style="border:1px solid;">

## SERVICE OF SUIT CLAUSE
## CALIFORNIA

</div>

The Gulf Underwriters Insurance Company hereby appoints C.T. Corporation System, 818 West Seventh Street, Los Angeles, California, 90017, as the true and lawful attorney of Gulf Insurance Company in and for the State of California, upon whom all lawful process may be served in any action, suit or proceeding instituted in the said State by or on behalf of any insured or beneficiary against the Gulf Underwriters Insurance Company, arising out of the insurance policy to which this provision is attached, provided a copy of any process, suit, complaint or summons is sent by certified or registered mail to General Counsel at Gulf Insurance Company, One State Street Plaza, 9th Floor, New York, New York 10004.

SS-5A (09-03)

IL 02 70 11 04

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# CALIFORNIA CHANGES – CANCELLATION AND NONRENEWAL

This endorsement modifies insurance provided under the following:

BOILER AND MACHINERY COVERAGE PART
CAPITAL ASSETS PROGRAM (OUTPUT POLICY) COVERAGE PART
COMMERCIAL AUTOMOBILE COVERAGE PART
COMMERCIAL GENERAL LIABILITY COVERAGE PART
COMMERCIAL INLAND MARINE COVERAGE PART
COMMERCIAL PROPERTY COVERAGE PART
CRIME AND FIDELITY COVERAGE PART
EMPLOYMENT-RELATED PRACTICES LIABILITY COVERAGE PART
FARM COVERAGE PART
LIQUOR LIABILITY COVERAGE PART
POLLUTION LIABILITY COVERAGE PART
PRODUCTS/COMPLETED OPERATIONS LIABILITY COVERAGE PART
PROFESSIONAL LIABILITY COVERAGE PART

**A.** Paragraphs **2.** and **3.** of the **Cancellation** Common Policy Condition are replaced by the following:

**2. All Policies In Effect For 60 Days Or Less**

If this policy has been in effect for 60 days or less, and is not a renewal of a policy we have previously issued, we may cancel this policy by mailing or delivering to the first Named Insured at the mailing address shown in the policy and to the producer of record, advance written notice of cancellation, stating the reason for cancellation, at least:

**a.** 10 days before the effective date of cancellation if we cancel for:

**(1)** Nonpayment of premium; or

**(2)** Discovery of fraud by:

**(a)** Any insured or his or her representative in obtaining this insurance; or

**(b)** You or your representative in pursuing a claim under this policy.

**b.** 30 days before the effective date of cancellation if we cancel for any other reason.

**3. All Policies In Effect For More Than 60 Days**

**a.** If this policy has been in effect for more than 60 days, or is a renewal of a policy we issued, we may cancel this policy only upon the occurrence, after the effective date of the policy, of one or more of the following:

**(1)** Nonpayment of premium, including payment due on a prior policy we issued and due during the current policy term covering the same risks.

**(2)** Discovery of fraud or material misrepresentation by:

**(a)** Any insured or his or her representative in obtaining this insurance; or

**(b)** You or your representative in pursuing a claim under this policy.

**(3)** A judgment by a court or an administrative tribunal that you have violated a California or Federal law, having as one of its necessary elements an act which materially increases any of the risks insured against.

*59*

**(4)** Discovery of willful or grossly negligent acts or omissions, or of any violations of state laws or regulations establishing safety standards, by you or your representative, which materially increase any of the risks insured against.

**(5)** Failure by you or your representative to implement reasonable loss control requirements, agreed to by you as a condition of policy issuance, or which were conditions precedent to our use of a particular rate or rating plan, if that failure materially increases any of the risks insured against.

**(6)** A determination by the Commissioner of Insurance that the:

   **(a)** Loss of, or changes in, our reinsurance covering all or part of the risk would threaten our financial integrity or solvency; or

   **(b)** Continuation of the policy coverage would:

      **(i)** Place us in violation of California law or the laws of the state where we are domiciled; or

      **(ii)** Threaten our solvency.

**(7)** A change by you or your representative in the activities or property of the commercial or industrial enterprise, which results in a materially added, increased or changed risk, unless the added, increased or changed risk is included in the policy.

**b.** We will mail or deliver advance written notice of cancellation, stating the reason for cancellation, to the first Named Insured, at the mailing address shown in the policy, and to the producer of record, at least:

   **(1)** 10 days before the effective date of cancellation if we cancel for nonpayment of premium or discovery of fraud; or

   **(2)** 30 days before the effective date of cancellation if we cancel for any other reason listed in Paragraph **3.a.**

**B.** The following provision is added to the **Cancellation** Common Policy Condition:

**7. Residential Property**

This provision applies to coverage on real property which is used predominantly for residential purposes and consisting of not more than four dwelling units, and to coverage on tenants' household personal property in a residential unit, if such coverage is written under one of the following:

Commercial Property Coverage Part

Farm Coverage Part – Farm Property – Farm Dwellings, Appurtenant Structures And Household Personal Property Coverage Form

**a.** If such coverage has been in effect for 60 days or less, and is not a renewal of coverage we previously issued, we may cancel this coverage for any reason, except as provided in **b.** and **c.** below.

**b.** We may not cancel this policy solely because the first Named Insured has:

   **(1)** Accepted an offer of earthquake coverage; or

   **(2)** Cancelled or did not renew a policy issued by the California Earthquake Authority (CEA) that included an earthquake policy premium surcharge.

However, we shall cancel this policy if the first Named Insured has accepted a new or renewal policy issued by the CEA that includes an earthquake policy premium surcharge but fails to pay the earthquake policy premium surcharge authorized by the CEA.

**c.** We may not cancel such coverage solely because corrosive soil conditions exist on the premises. This Restriction **(c.)** applies only if coverage is subject to one of the following, which exclude loss or damage caused by or resulting from corrosive soil conditions:

   **(1)** Capital Assets Program Coverage Form (Output Policy);

   **(2)** Commercial Property Coverage Part – Causes Of Loss – Special Form; or

   **(3)** Farm Coverage Part – Causes Of Loss Form – Farm Property, Paragraph **D.** Covered Causes Of Loss – Special.

    © ISO Properties, Inc., 2004    IL 02 70 11 04    □

60

**C.** The following is added and supersedes any provisions to the contrary:

**NONRENEWAL**

1. Subject to the provisions of Paragraphs **C.2.** and **C.3.** below, if we elect not to renew this policy, we will mail or deliver written notice stating the reason for nonrenewal to the first Named Insured shown in the Declarations and to the producer of record, at least 60 days, but not more than 120 days, before the expiration or anniversary date.

   We will mail or deliver our notice to the first Named Insured, and to the producer of record, at the mailing address shown in the policy.

2. **Residential Property**

   This provision applies to coverage on real property used predominantly for residential purposes and consisting of not more than four dwelling units, and to coverage on tenants' household property contained in a residential unit, if such coverage is written under one of the following:

   Capital Assets Program (Output Policy) Coverage Part

   Commercial Property Coverage Part

   Farm Coverage Part – Farm Property – Farm Dwellings, Appurtenant Structures And Household Personal Property Coverage Form

   **a.** We may elect not to renew such coverage for any reason, except as provided in **b., c.** and **d.** below:

   **b.** We will not refuse to renew such coverage solely because the first Named Insured has accepted an offer of earthquake insurance.

   However, the following applies only to insurers who are associate participating insurers as established by Cal. Ins. Code Section 10089.16. We may elect not to renew such coverage after the first Named Insured has accepted an offer of earthquake coverage, if one or more of the following reasons applies:

   (1) The nonrenewal is based on sound underwriting principles that relate to the coverages provided by this policy and that are consistent with the approved rating plan and related documents filed with the Department of Insurance as required by existing law;

   (2) The Commissioner of Insurance finds that the exposure to potential losses will threaten our solvency or place us in a hazardous condition. A hazardous condition includes, but is not limited to, a condition in which we make claims payments for losses resulting from an earthquake that occurred within the preceding two years and that required a reduction in policyholder surplus of at least 25% for payment of those claims; or

   (3) We have:

      (a) Lost or experienced a substantial reduction in the availability or scope of reinsurance coverage; or

      (b) Experienced a substantial increase in the premium charged for reinsurance coverage of our residential property insurance policies; and

      the Commissioner has approved a plan for the nonrenewals that is fair and equitable, and that is responsive to the changes in our reinsurance position.

   **c.** We will not refuse to renew such coverage solely because the first Named Insured has cancelled or did not renew a policy, issued by the California Earthquake Authority that included an earthquake policy premium surcharge.

   **d.** We will not refuse to renew such coverage solely because corrosive soil conditions exist on the premises. This Restriction **(d.)** applies only if coverage is subject to one of the following, which exclude loss or damage caused by or resulting from corrosive soil conditions:

      (1) Capital Assets Program Coverage Form (Output Policy);

      (2) Commercial Property Coverage Part – Causes Of Loss – Special Form; or

      (3) Farm Coverage Part – Causes Of Loss Form – Farm Property, Paragraph **D.** Covered Causes Of Loss – Special.

3. We are not required to send notice of nonrenewal in the following situations:

   **a.** If the transfer or renewal of a policy, without any changes in terms, conditions, or rates, is between us and a member of our insurance group.

    © ISO Properties, Inc., 2004

**b.** If the policy has been extended for 90 days or less, provided that notice has been given in accordance with Paragraph **C.1.**

**c.** If you have obtained replacement coverage, or if the first Named Insured has agreed, in writing, within 60 days of the termination of the policy, to obtain that coverage.

**d.** If the policy is for a period of no more than 60 days and you are notified at the time of issuance that it will not be renewed.

**e.** If the first Named Insured requests a change in the terms or conditions or risks covered by the policy within 60 days of the end of the policy period.

**f.** If we have made a written offer to the first Named Insured, in accordance with the timeframes shown in Paragraph **C.1.**, to renew the policy under changed terms or conditions or at an increased premium rate, when the increase exceeds 25%.

© ISO Properties, Inc., 2004

IL 02 70 11 04     ☐

62

**EXHIBIT 3**

982.1(1)

| ATTORNEY OR PARTY WITHOUT ATTORNEY *(Name, state bar number, and address):* | FOR COURT USE ONLY |
|---|---|
| Patrick M. Feavel SBN: 108287 <br> The Dunnion Law Firm <br> 2711 Garden Road <br> Monterey, CA 93940 | |

TELEPHONE NO: (831)373-8035    FAX NO. *(Optional)*: (831)375-4124

E-MAIL ADDRESS *(Optional)*:

ATTORNEY FOR *(Name)*: **Mercedes Ramos Patoc**

NAME OF COURT: Superior Court of Monterey County

STREET ADDRESS: 1200 Aguajito Road

MAILING ADDRESS: Monterey, CA 93940

CITY AND ZIP CODE:

BRANCH NAME:

PLAINTIFF: Mercedes Ramos Patoc

DEFENDANT: Pro Transportation Services, Inc; Delia Rodriguez

[x] DOES 1 TO 20, Inclusive.

**COMPLAINT — Personal Injury, Property Damage, Wrongful Death**
[ ] AMENDED *(Number)*:

**Type** *(check all that apply)*:
[x] MOTOR VEHICLE        [ ] OTHER *(specify)*:
   [ ] Property Damage        [ ] Wrongful Death
   [x] Personal Injury        [ ] Other Damages *(specify)*:

**Jurisdiction** *(check all that apply)*:
[ ] ACTION IS A LIMITED CIVIL CASE
   Amount demanded    [ ] does not exceed $10,000
        [ ] exceeds $10,000, but does not exceed $25,000
[x] ACTION IS AN UNLIMITED CIVIL CASE (exceeds $25,000)
[ ] ACTION IS RECLASSIFIED by this amended complaint
   [ ] from limited to unlimited
   [ ] from unlimited to limited

**FILED**

AUG 17 2005

LISA M. GALDOS
CLERK OF THE SUPERIOR COURT
_____ DEPUTY

CASE NUMBER:

**M75716**

1. PLAINTIFF *(name)*: Mercedes Ramos Patoc

alleges causes of action against DEFENDANT *(name)*: Pro Transportation Services, Inc; et al.

2. This pleading, including attachments and exhibits, consists of the following number of pages: 5

3. Each plaintiff named above is a competent adult
  a. [x] except plaintiff *(name)*: Mercedes Ramos Patoc
    (1) [ ] a corporation qualified to do business in California
    (2) [ ] an unincorporated entity *(describe)*:
    (3) [ ] a public entity *(describe)*:
    (4) [ ] a minor    [x] an adult
      (a) [x] for whom a guardian or conservator of the estate or a guardian ad litem has been appointed
      (b) [ ] other *(specify)*:
    (5) [ ] other *(specify)*:

  b. [ ] except plaintiff *(name)*:
    (1) [ ] a corporation qualified to do business in California
    (2) [ ] an unincorporated entity *(describe)*:
    (3) [ ] a public entity *(describe)*:
    (4) [ ] a minor    [ ] an adult
      (a) [ ] for whom a guardian or conservator of the estate or a guardian ad litem has been appointed
      (b) [ ] other *(specify)*:
    (5) [ ] other *(specify)*:

[ ] Information about additional plaintiffs who are not competent adults is shown in Complaint — Attachment 3.

Form Approved for Optional Use
Judicial Council of California
982.1(1) [Rev. July 1, 2002]

**COMPLAINT — Personal Injury, Property
Damage, Wrongful Death**

Legal
Solutions
☞ Plus

Code of Civil Procedure, § 425.12

63

| SHORT TITLE: Patoc v. Pro Transportation Services, Inc; et al. | CASE NUMBER: |
|---|---|

4. ☐ Plaintiff *(name):*

    is doing business under the fictitious name *(specify):*

    and has complied with the fictitious business name laws.

5. Each defendant named above is a natural person

  a. ☒ except defendant *(name):* Pro Transportation Services, Inc.

    (1) ☒ a business organization, form unknown
    (2) ☐ a corporation
    (3) ☐ an unincorporated entity *(describe):*

    (4) ☐ a public entity *(describe):*

    (5) ☐ other *(specify):*

  c. ☐ except defendant *(name):*

    (1) ☐ a business organization, form unknown
    (2) ☐ a corporation
    (3) ☐ an unincorporated entity *(describe):*

    (4) ☐ a public entity *(describe):*

    (5) ☐ other *(specify):*

  b. ☐ except defendant *(name):*

    (1) ☐ a business organization, form unknown
    (2) ☐ a corporation
    (3) ☐ an unincorporated entity *(describe):*

    (4) ☐ a public entity *(describe):*

    (5) ☐ other *(specify):*

  d. ☐ except defendant *(name):*

    (1) ☐ a business organization, form unknown
    (2) ☐ a corporation
    (3) ☐ an unincorporated entity *(describe):*

    (4) ☐ a public entity *(describe):*

    (5) ☐ other *(specify):*

☐ Information about additional defendants who are not natural persons is contained in Complaint — Attachment 5.

6. The true names and capacities of defendants sued as Does are unknown to plaintiff.

7. ☐ Defendants who are joined pursuant to Code of Civil Procedure section 382 are *(names):*

8. This court is the proper court because
  a. ☐ at least one defendant now resides in its jurisdictional area.
  b. ☐ the principal place of business of a defendant corporation or unincorporated association is in its jurisdictional area.
  c. ☒ injury to person or damage to personal property occurred in its jurisdictional area.
  d. ☐ other *(specify):*

9. ☒ Plaintiff is required to comply with a claims statute, and
  a. ☒ plaintiff has complied with applicable claims statutes, or
  b. ☐ plaintiff is excused from complying because *(specify):*

**COMPLAINT — Personal Injury, Property Damage, Wrongful Death**

64

| SHORT TITLE: Patoc v. Pro Transportation Services, Inc; et al. | CASE NUMBER: |
|---|---|

10. The following causes of action are attached and the statements above apply to each (each *complaint must have one or more causes of action attached*):
   a. [x] Motor Vehicle
   b. [x] General Negligence
   c. [ ] Intentional Tort
   d. [ ] Products Liability
   e. [ ] Premises Liability
   f. [ ] Other *(specify):*

11. Plaintiff has suffered
   a. [ ] wage loss
   b. [ ] loss of use of property
   c. [x] hospital and medical expenses
   d. [x] general damage
   e. [ ] property damage
   f. [ ] loss of earning capacity
   g. [ ] other damage *(specify):*

12. [ ]    The damages claimed for wrongful death and the relationships of plaintiff to the deceased are
   a. [ ] listed in Complaint — Attachment 12.
   b. [ ] as follows:

13. The relief sought in this complaint is within the jurisdiction of this court.

14. PLAINTIFF PRAYS for judgment for costs of suit; for such relief as is fair, just, and equitable; and for
   a. (1) [x] compensatory damages
      (2) [ ] punitive damages
   b. The amount of damages is *(you must check (1) in cases for personal injury or wrongful death)*:
      (1) [x] according to proof
      (2) [ ] in the amount of: $

15. [ ]    The paragraphs of this complaint alleged on information and belief are as follows *(specify paragraph numbers):*

Date: July 28, 2005

Patrick M. Peavel SBN: 108287
(TYPE OR PRINT NAME)

(SIGNATURE OF PLAINTIFF OR ATTORNEY)

**COMPLAINT — Personal Injury, Property Damage, Wrongful Death**

Page 3 of 3

65

| SHORT TITLE: Bidegain v. Dupree, et al. | CASE NUMBER: |
|---|---|

First _____    **CAUSE OF ACTION - General Negligence**    Page _4_____
(number)

ATTACHMENT TO    ☒ Complaint    ☐ Cross-Complaint

*(Use a separate cause of action form for each cause of action.)*

GN-1. Plaintiff *(name):*  **Mercedes Ramos Patoc**

alleges that defendant *(name):*  **Pro Transportation Services, Inc; Delia Rodriguez**

☒ Does _1_____ to _20, Inclusive._

was the legal (proximate) cause of damages to plaintiff. By the following acts or omissions to act, defendant negligently caused the damage to plaintiff
on *(date):* **March 16, 2005**
at *(place):* **In a Pro Transportation Services; Inc. Bus, City of Salinas, County of Monterey, State of California**
*(description of reasons for liability):*

On March 16, 2005, Plaintiff was returning from her regularly scheduled
dialysis appointment in the care of Pro Transportation Services, Inc.
Plaintiff, in a small wheel chair, was placed in Pro Transporation Services
Inc's van by the driver, Delia Rodriguez. As the van was moving away from a
stop at John Street in the city of Salinas, California, the wheel chair
suddenly tipped fully back, causing Ms. Patoc to land with great force on the
back of her head. For reasons unknown, the driver righted the chair and took
Ms. Patoc to her home where she was dropped off with her daughter in law's
brother. Apparently, the driver failed to contact any medical personnel with
regard to this incident and further failed to inform anyone of Plaintiff's
fall. It was not until Elwyn Patoc saw his mother several hours later that
anyone was alerted to the problem. The Patoc family immediately contacted Pro
Transporation Services, Inc. and complained of the care given to Plaintiff. At
the same time she was rushed to Salinas Valley Memorial Medical Center
Emergency room. There she was found to have suffered a subdural hematoma and
was taken to surgery. Unfortunately, while the surgery saved her life it was
too late to prevent Plaintiff from suffering brain damage. She became
comatose.

Defendants, and each of them, directly and/or vicariously, negligently,
recklessly and wilfully operated and/or maintained their motor vehicle so as to
cause the subject fall, thereby causing serious personal injury and damages to
plaintiff.

Form Approved by the
Judicial Council of California
Effective January 1, 1982
Rule 982.1(3)
Optional Form

**CAUSE OF ACTION - General Negligence**

Legal
Solutions
Plus    CCP 425.12

66

| SHORT TITLE: Patoc v. Pro Transporation Services, Inc; et al. | CASE NUMBER: |
|---|---|

<u>Second</u>            **CAUSE OF ACTION - Motor Vehicle**         Page <u>5</u>
<br>*(number)*

ATTACHMENT TO [x] Complaint [ ] Cross-Complaint

*(Use a separate cause of action form for each cause of action.)*

Plaintiff *(name)*: Mercedes Ramos Patoc

MV-1. Plaintiff alleges the acts of defendants were negligent; the acts were the legal (proximate) cause of injuries and damages to plaintiff; the acts occurred
on *(date)*: March 16, 2005
at *(place)*: City of Salinas, County of Monterey, State of California

MV-2. **DEFENDANTS**

a. [x] The defendants who operated a motor vehicle are *(names)*: Delia Rodriguez, and

     [x] Does 1_____ to 20, Inclusive
b. [x] The defendants who employed the persons who operated a motor vehicle in the course of their employment
are *(names)*: Pro Transportation Services, Inc., and

     [x] Does 1_____ to 20, Inclusive
c. [x] The defendants who owned the motor vehicle which was operated with their permission are *(names)*:
Pro Transportation Services, Inc., and

     [x] Does 1_____ to 20, Inclusive
d. [x] The defendants who entrusted the motor vehicle are *(names)*: Pro Transportation Services,
Inc,

     [x] Does 1_____ to 20, Inclusive
e. [x] The defendants who were the agents and employees of the other defendants and acted within the scope
of the agency were *(names)*: Delia Rodriguez, and

     [x] Does 1_____ to 20, Inclusive
f. [x] The defendants who are liable to plaintiffs for other reasons and the reasons for the liability are
[ ] listed in Attachment MV-2f [x] as follows:
Pro Transportation Services, Inc, Delia Rodriguez, and

     [x] Does 1    to 20, Inclusive

Form Approved by the
Judicial Council of California
Effective January 1, 1982
Rule 982.1(2)
Optional Form         **CAUSE OF ACTION - Motor Vehicle**         Legal
Solutions
& Plus     CCP 425.12

67

**EXHIBIT 4**

1  STEPHEN C. BALL, Esq. - State Bar No. 119463
JOHN A. ROBERTS, Esq. - State Bar No. 185314
2  BALL, GHALEB & HULBERT
20 N. Raymond Avenue, Suite 350
3  Pasadena, California 91103
Telephone: (626) 793-2117
4  Facsimile: (626) 793-3198

5  Attorneys for Plaintiffs

**FILED**

**JUN 3 0 2006**

LISA M. GALDOS
CLERK OF THE SUPERIOR COURT
APRILL CAMPBELL__DEPUTY

6

7

8

9                   SUPERIOR COURT FOR THE STATE OF CALIFORNIA

10                          FOR THE COUNTY OF MONTERY

11
ELWYN PATOC, ERIC PATOC, ELVY)          CASE NO.: **M 7 9 8 2 0**
12  PATOC, EDWARD PATOC           )
                                  )     COMPLAINT FOR DAMAGES
13           Plaintiffs           )
                                  )     1.  WRONGFUL DEATH
14  v.                            )     2.  NEGLIGENT HIRING, TRAINING,
                                  )         MONITORING
15  PRO TRANSPORTATION SERVICES, )     3.  PRODUCTS LIABLITY
INC., MV TRANSPORTATION, INC., )     4.  COMMON CARRIER LIABILITY
16  DELIA RODRIGUEZ, and DOES 1   )
through 50, Inclusive,          )
17                                )
             Defendants.          )
18  _____)

19

20

21        Plaintiffs ELWYN PATOC, ERIC PATOC, ELVY PATOC, EDWARD PATOC

allege:

22

23                          COMMON ALLEGATIONS

24        1.   That the true names and capacities, whether individual, corporate, associate or

25  otherwise of defendants, Does 1 through 50, inclusive, are unknown to plaintiff at this time,

26  who therefore sues said defendants by such fictitious names and will ask leave of court to

27  amend this complaint to show their true names and capacities when ascertained.   Said

28  defendants are sued as principals, and all of the acts performed by them as agents, servants and

_____

                          COMPLAINT FOR WRONGFUL DEATH

68

1   employees were performed within the course and scope of their authority and employment.

2       2.      Plaintiffs are informed and believe, and thereon allege that defendant PRO

3   TRANSPORTATION SERVICES, INC., ("PRO") is, and at all times herein mentioned was, a

4   corporation duly organized and existing under and by virtue of the laws of the State of

5   California, with its principal place of business located at 621 West Market St., Salinas,

6   California.

7       3.      Plaintiffs are informed and believe, and thereon allege that defendant MV

8   TRANSPORTATION SERVICES, INC., ("MV") is and at all times herein mentioned was, a

9   corporation duly organized and existing under and by virtue of the laws of the State of

10  California, with its principal place of business located at 360 Campus Lane, Fairfield,

11  California.  Plaintiffs are informed and believe that MV is the successor in interest to PRO

12  having acquired PRO in May 2005.

13      4.      Plaintiffs are informed and believe, and thereon allege that defendant DELIA

14  RODRIGUEZ ("RODRIGUEZ") is and at all times herein mentioned was an individual

15  residing in Salinas, California.  At all times relevant to the facts stated herein, RODRIGUEZ

16  was an employee of PRO and acting in the course and scope of her employment.

17      5.      That ELWYN PATOC, ERIC PATOC, ELVY PATOC, EDWARD PATOC

18  are heirs-at-law of decedent Mercedes Patoc ("DECEDENT").

19      6.      On March 16, 2005, RODRIGUEZ was the operator of a medical transportation

20  bus owned by PRO.  The bus was used to transport patients to and from medical appointments,

21  including patients in wheelchairs.   The bus was specially equipped so that patients in

22  wheelchairs could be secured while the bus was in motion.

23      7.      On March 16, 2005, DECEDENT was a passenger in the bus and sitting in a

24  wheelchair. While en route from a medical appointment to her home within the city of Salinas,

25  DECEDENT'S wheelchair was unsecured and allowed to fall backwards causing DECEDENT

26  to strike her head with great force.

27      8.      Rather than notify anyone of the fall or seek medical attention for DECEDENT,

28  RODRIGUEZ simply righted the wheelchair and dropped DECEDENT off at her home

69

9.     DECED__NT sustained a traumatic brain inju_) from which she ultimately died on March 20, 2006.

## FIRST CAUSE OF ACTION

**(By all Plaintiffs Against Pro Transportation Services, Inc., MV Transportation, Inc., Delia Rodriguez and Does 1-25, for Wrongful Death)**

10.     Defendants had a duty to safely and properly operate the bus on which decedent was a passenger, including a duty to safely and properly inspect and operate the equipment used to safely secure passengers on the bus. In the event a passenger became unsecured and fell inside the bus, defendants had a duty to seek medical attention, and/or otherwise act reasonably under the circumstances.

11.     Defendants breached this duty by negligently, carelessly, wantonly and

_____ __ _____ controlling, supervising, training, entrusting and owning

70

## SECOND CAUSE OF ACTION

**(By all Plaintiffs Against Pro Transportation Services, Inc., MV Transportation, Inc., and Does 1-25 for Negligent Hiring, Training and Monitoring)**

14.    Plaintiffs reallege each and every allegation contained in paragraphs 1 through 9 of this complaint as though fully set forth below.

15.    Each of the defendants was negligent in the hiring of the operator of the bus and further negligent in the training program for operators of buses transporting patients.

16.    As a result of the negligent training, defendants' employee bus operators, including RODRIGUEZ were not adequately trained to ensure that passengers were properly secured while the buses were in motion. As an additional result of the negligent training, defendants' employee bus operators, including RODRIGUEZ were not adequately trained on what reasonable and prudent steps to take in the event of an incident like the one that occurred on March 16, 2005. The defendants had actual and constructive notice of the inadequate training identified above.

17.    That as a direct and proximate result of the defendants' negligent hiring and training, plaintiffs have sustained the following damages:

a. Loss of the love, companionship, affection, care, comfort, society solace and emotional support of decedent;

b. Loss of the past and future financial support of decedent;

c. Loss of household services of the decedent;

d. Funeral and burial expenses according to proof;

## THIRD CAUSE OF ACTION

**(By all Plaintiffs Against Doe Vehicle Manufacturer(s) And Distributor(s) And Outfitter(s) For Products Liability)**

18.    Plaintiffs reallege each and every allegation contained in paragraphs 1 through 9 of this complaint as though fully set forth below.

19.    DOES 26-50 are the manufacturers, distributors, wholesalers, retailers, and after-

4

COMPLAINT FOR WRONGFUL DEATH

1  market outfitters of the bus on which decedent fell and sustained her life-ending injuries.

2  Plaintiffs are ignorant of the true names and capacities of defendants sued herein as DOES 26-

3  50, inclusive, and therefore sues such defendants by such fictitious names. Plaintiffs will

4  amend this complaint to allege their true names and capacities when ascertained.

5      20.    At all times herein mentioned, defendants DOES 26-50, and each of them,

6  manufactured, compounded, packaged, designed, distributed, tested, constructed, fabricated,

7  analyzed, recommended, merchandised, advertised, promoted, and sold the medical

8  transportation bus product and its component parts, and constituents, including the equipment

9  and mechanism designed to secure passengers in wheelchairs, to distributors, retail outlets, and

10  transportation companies for the ultimate use by the general public.

11      21.    At all times herein mentioned, defendants, and each of them, had a duty to

12  properly manufacture, compound, test, inspect, package, label, distribute and market said

13  product.

14      22.    At all times herein mentioned, defendants, and each of them, knew, or in the

15  exercise of reasonable care should have known, that the medical transport bus and its

16  wheelchair securing equipment was of such a nature that if it was not properly manufactured,

17  compounded, tested, inspected, packaged, labeled, distributed, and marketed for the use and

18  purpose for which it was intended, and it was likely to injure the person by whom it was used.

19      23.    Defendants, and each of them, so negligently and carelessly manufactured,

20  compounded, tested, failed to test, inspected, failed to inspect, packaged, labeled, distributed,

21  recommended, displayed and sold the said product that the same was a defective, and

22  dangerous product, and unsafe for the use and purpose for which it was intended when used

23  and applied as recommended by defendants, and each of them.

24      24.    On or about March 16, 2005, DECEDENT was using said product for the

25  purpose for which it was intended to be used.

26      25.    Because of the aforementioned negligence of the defendants, and each of them,

27  in the manufacture, compounding, testing, inspection, packaging, labeling, distribution,

28  recommendation, display, and sale of said product, said product failed to secure

5

COMPLAINT FOR WRONGFUL DEATH

72

1    DECENDNT'S wheelchair while the bus was in motion causing DECEDENT'S wheelchair

2    to fall backwards and causing DECEDENT'S death, as described above.

3        26.    That as a direct and proximate result of aforementioned negligence of the

4    defendants, and each of them, in the manufacture, compounding, testing, inspection,

5    packaging, labeling, distribution, recommendation, display, and sale of said product, plaintiffs

6    have sustained the following damages:

7            a.  Loss of the love, care, comfort, society and emotional support of decedent;

8            b.  Loss of the past and future financial support of decedent;

9            c.  Loss of household services of the decedent;

10           d.  Funeral and burial expenses according to proof;

11

12                    **FOURTH CAUSE OF ACTION**

13   **(By all Plaintiffs Against Pro Transportation Services, Inc., MV Transportation, Inc.,**

14               **and Does 1-25 for Common Carrier Negligence)**

15       27.    Plaintiffs reallege paragraphs 1 through 17 from as though fully set forth below.

16       28.   On or about March 16, 2005, Defendants Pro Transportation Services, Inc., MV

17   Transportation, Inc., and Does 1-25, were "common carriers" and owed Plaintiff's decedent

18   the utmost care and diligence for her safe carriage in that she was a passenger.

19

20   WHEREFORE, plaintiffs pray for judgment against the defendants, and each of them, as

21   follows:

22       1. General damages according to proof;

23       2. Damages for loss of the love, companionship, affection, care, comfort, society

24   solace and emotional support of decedent according to proof;

25       3. Funeral and burial expenses according to proof;

26       4. Damages for loss of financial support, according to proof;

27       5. For costs of suit herein; and

28

                             6

                  COMPLAINT FOR WRONGFUL DEATH

                                                           73

1

2      6.  For other such relief as this Court may deem just and proper.

3    DATED:  June 15, 2006                    BALL, GHALEB & HULBERT

4

5                                            By _____

6                                               STEPHEN C. BALL
                                                Attorneys for Plaintiffs
7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

                                    7
                        COMPLAINT FOR WRONGFUL DEATH

74