BALL & ROBERTS
20 North Raymond Avenue, Suite 350
Pasadena, California 91103
Stephen C. Ball, Esq. – Bar No. 119463
Email: sball@pasadenalaw.com
John A. Roberts, Esq. – Bar No. 185314
Email: jroberts@pasadenalaw.com
Telephone:    (626) 793-2117
Facsimile:    (626) 793-3198

DENISE JARMAN – Bar No. 88650
102 E Street
Davis, California 95616
Telephone:    (916) 607-5692
Facsimile:    (866) 715-4630
Email: jarmandenny@yahoo.com
Attorneys for Plaintiffs Elwyn Patoc, Eric Patoc, Elvy Patoc, Edward Patoc

UNITED STATE DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA, SAN JOSE DIVISION

| | |
|---|---|
| ELWYN PATOC, ERIC PATOC, ELVY PATOC, EDWARD PATOC<br><br>Plaintiffs,<br><br>v.<br><br>LEXINGTON INSURANCE COMPANY, et al.,<br><br>Defendants. | CASE NO.:  C08 01893 RMW<br><br>**PLAINTIFFS' OPPOSITION TO LEXINGTON INSURANCE COMPANY'S MOTION TO DISMISS**<br><br>Date:   May 23, 2008<br>Time:  9:00 a.m.<br>Place:  Courtroom 6<br>Judge: Ronald M. Whyte |

## I.

## INTRODUCTION

This action is about the damages the children of Mercedes Patoc have suffered as a result of the premature death of their mother. An employee of Pro Transportation failed to properly secure Ms. Patoc's wheelchair to the inside of a medical transport van. During acceleration from a stop sign, Ms. Patoc fell, hitting her head. To compound this injury, Pro Transportation also caused Ms. Patoc to suffer otherwise preventable permanent brain damage

when it failed to secure for her appropriate medical care. Instead, the employee drove Ms. Patoc to her home and dropped her off without notifying anyone of the fall. Later that evening, Ms. Patoc's children found her gravely ill and rushed her to the hospital where she underwent brain surgery for a massive subdural hematoma. Unfortunately, Ms. Patoc sustained irreversible brain damage and survived for a little over a year before ultimately succumbing to her injuries.

Pro Transportation's insurance program consisted of a package of general liability and automobile liability primary and excess coverages. Gulf Insurance Company ("Gulf") insured Pro Transportation on the first layer of primary *automobile liability coverage* with combined single per person/per accident limits of $500,000. Gulf Underwriter's Insurance Company ("Gulf Underwriters") insured Pro Transportation on the first layer of *excess automobile liability coverage* with combined single per person/per accident limits of $500,000.

Lexington Insurance Company ("Lexington") insured Pro Transportation on a second excess layer. This was a "package policy" which was excess over *both* Pro Transportations' general liability policies and its automobile liability policies. *Unlike* the Gulf policies, the Lexington policy did *not* have "combined single limits." Lexington's automobile coverage specified *no* "per accident limits" limiting its liability for loss arising out of a single automobile accident.

While Ms. Patoc survived, her medical expenses became increasingly expensive and Ms. Patoc made a claim against Pro Transportation for her bodily injuries and necessary medical care.[1] Gulf paid $500,000. Gulf Underwriters paid $500,000 and Lexington paid $1,000,000.

---

[1] At p. 2 of its motion, Lexington highlights that Ms. Patoc's son acted on his mother's behalf to obtain the benefits of Lexington's policy for Ms. Patoc's bodily injuries. Lexington apparently attempts to dissuade this court from finding coverage on the basis of some equitable implication in its favor that this is just a claim by Patoc's greedy heirs seeking even more money than what Lexington has already paid. Any such implication is false. What Lexington fails to tell this court is that at the time Patoc's bodily injury claim was made, Ms. Patoc's medical expenses alone approximated what was paid.

Now Lexington tries to bootstrap its payment for the bodily injury claim into an exhaustion argument. It attempts to borrow its general liability "occurrence" limits to argue its policy had a "per accident limit" for a single automobile accident.

This argument is without merit. Under the well-pled complaint rule, the complaint states a claim. The complaint alleges Lexington's policy does *not* contain a "per accident" limit for its liability for a loss arising out of the use of an automobile accident. (Complaint ¶26 at 7:18-20.)

Simultaneously Lexington frivolously urges the underlying policies were *not* exhausted and, therefore, plaintiffs may not reach its policy. But Lexington well-knows it cannot sit by and watch while the primary insurers refuse to defend, fail to attempt to reasonably settle and then set up its excess status as a defense to a settlement made by an insured left to fend for itself.

This court should deny Lexington's motion to dismiss.

## II.

## THE ALLEGATIONS OF THE COMPLAINT

The Gulf policy was an automobile liability policy insuring Pro Transportation for an "accident arising out of the use of an automobile." This policy had combined single limits of $500,000 per accident. (Complaint ¶14 at 4:15-19.) The Gulf Underwriters policy was an automobile liability policy insuring Pro Transportation for an "accident arising out of the use of an automobile." This policy had combined single limits of $500,000 per accident. (Complaint ¶23 at 6:9-14.)

The Lexington policy was a second layer excess package policy over *both* Pro Transportation's general liability policies and its automobile liability policies. (Complaint ¶26 at 7:14-15.) The automobile coverage part of Lexington's policy had no "per accident" limits. (*Id.* at 7:19.) The Lexington policy promised to pay as compensatory damages losses which were in excess of the $1,000,000 arising out of an accident resulting from the use of a covered automobile. (Complaint, ¶27 at 8:12-16.) The Lexington policy further promised to

investigate and defend claims not covered by the underlying limits because of exhaustion. (Complaint, ¶30 at 8:22 – 9:5.)

Mercedes Patoc was injured in an automobile accident. (Complaint ¶35 at 10:3-5.) Mercedes Patoc sued Pro Transportation for the bodily injuries she suffered. (Complaint ¶36 at 10:6-12.) Her bodily injury claim exhausted the combined single limits of the two Gulf policies. (Complaint ¶36 at 10:6-11.)

Thereafter Mercedes Patoc died.. Her heirs sued Pro Transportation for their wrongful death of their mother. (Complaint ¶¶37-38 at 10:13-17.)

Gulf and Gulf Underwriters each refused to defend or indemnify Pro-Transportation. (Complaint ¶41 at 10:28 – 11:4.) These insurers asserted their limits were exhausted. (Complaint ¶36 at 10:8-12.) Pro-Transportation also demanded Lexington defend or settle plaintiffs' claims against it but Lexington refused. Left to fend for itself, Pro-Transportation then settled the plaintiffs' wrongful death claims in exchange for a covenant not to execute. (Complaint ¶42-44 at 11:7-22.) This suit ensued.

### III.
### ANALYSIS

**A. Lexington's Motion to Dismiss for Failure to State a Claim for Breach of Contract Has No Merit.**

It should first be noted that "[t]he motion to dismiss for failure to state a claim is viewed with disfavor and is *rarely granted*." [*Gilligan v. Jamco Develop. Corp.* (9th Cir. 1997) 108 F3d 246, 249 (emphasis added; internal quotes omitted). A 12(b)(6) dismissal is proper only in "extraordinary" cases. [*United States v. Redwood City* (9th Cir. 1981) 640 F2d 963, 966; *Cauchi v. Brown* (ED CA 1999) 51 F.Supp.2d 1014, 1016 (citing text); *United States v. White* (CD CA 1995) 893 F.Supp. 1423, 1428 (quoting text)].

**1. Plaintiffs Plead a Claim for Breach of Contract.**

Lexington objects that plaintiffs did not attach a copy of its policy.[2] But, there is no requirement that a relevant document be attached. A plaintiff may describe the essential terms

---

[2] Plaintiffs have not attached the Lexington policy because plaintiffs are not sure they possess the entire Lexington policy. As the concurrently filed Roberts Declaration and Lexington

4
PLAINTIFFS' OPPOSITION TO LEXINGTON INSURANCE COMPANY'S MOTION TO DISMISS

of the contract in the allegations of the complaint. (See, *Venture Associates Corp. v. Zenith Data Systems Corp.* (7th Cir. 1993) 987 F2d 429, 431.)

To be entitled to damages for breach of contract, a plaintiff must plead and prove (1) a contract, (2) plaintiff's performance or excuse for nonperformance, (3) defendant's breach, and (4) damage to plaintiff. *Walsh v. West Valley Mission Community College Dist.* (1998) 66 Cal.App.4th 1532,

Insurance Code section 381 sets forth the essential terms of an insurance contract. They are the parties to the contract, the risk insured against and, the payment of the premium.

Here, plaintiffs' complaint alleged the essential terms of the Lexington policy. It pleads who the insurers were, who the insured was and that liability for an "accident arising out of the use of an automobile" was the risk insured against. (Complaint ¶14 at 4:15-19; ¶23 at 6:9-14; ¶27 at 8:12-16.) Plaintiffs further alleged Pro Transportation's performance by payment of the premiums. (Complaint ¶14 at 4:19-20; ¶23 at 6:13; ¶27 at 7:27-28.)

Plaintiffs further alleged defendants breached the insurance contracts by failing to pay plaintiffs for the wrongful death of their mother and that they were damaged. (Complaint ¶33 at 9:22-25; ¶¶40-49 at 10:23-12:11.)

Defendant's motion to dismiss for failure to state a claim for breach of contract is without merit.

**2.    Lexington's Assertion that Its Policy Is Exhausted Is Without Merit.**

In reviewing a Rule 12(b)(6) motion, the court must accept as true all material allegations in the complaint, as well as *reasonable inferences* to be drawn from them. [*Pareto v. F.D.I.C.* (9th Cir. 1998) 139 F3d 696, 699; see also *Leatherman v. Tarrant County Narcotics Intelligence & Coordination Unit* (1993) 507 US 163, 164, 113 S.Ct. 1160, 1161. The complaint here alleges that the *automobile coverage part* to Lexington's policy contained *no per accident limits*. (Complaint ¶26 at 7:18-22.)

---

claims' files notes set forth, plaintiffs have been unable to confirm that they have a complete copy of the Lexington policy. Therefore, plaintiffs have alleged the essential terms pro haec verba.

Despite these allegations, Lexington now asserts its policy has "occurrence" limits. Lexington then attempts to boot strap these "occurrence" limits into an exhaustion argument.

As this court is well aware, different types of policies have different "triggers" of coverage.

The word "trigger" is not found in CGL policies; nor is it defined in the Insurance Code. Rather, it is a term of convenience used to describe what operative event must happen to activate the insurer's defense and indemnity obligations. (*Safeco Ins. Co. of America v. Fireman's Fund Ins. Co.* (2007) 148 Cal.App.4th 620, 629; *Montrose Chemical Corp. of Calif. v. Admiral Ins. Co.* (1995) 10 Cal. 4th 645, 655, fn. 1.)

In 1966, the insurance industry changed the trigger of coverage in *general liability* policies. Before 1966, the trigger of coverage of a general liability policy was "an accident." (*American Home Prods. v. Liberty Mut. Ins. Co.* (S.D.N.Y.1983) 565 F.Supp. 1485, 1501, affd. as mod. (2d Cir.1984) 748 F.2d 760.) In 1966, the National Bureau of Casualty Underwriters and the Mutual Insurance Rating Board, the predecessor organizations to the Insurance Services Office (ISO) changed the standard form policy from an "accident-based" to an "occurrence-based" trigger. (*Ibid.*) Based on this change, it follows that an "accident" trigger is *not* the same as the "occurrence" trigger. (See, e.g. *Insurance Co. of No. America v. Sam Harris Const. Co.* (1978) 22 Cal 3d 409, 413 [policy covered "occurrence" *or* "accident."])

In contrast to the "occurrence trigger for general liability coverage, the trigger of coverage for automobile liability insurance is "an accident arising out of the use of an automobile."

Based on the particular applicable trigger, a policy will then set the policy limits – the maximum amount the insurer will pay for the particular risk. Thus in a general liability policy there are "per occurrence". In an automobile liability policy, there are "per person" and "per accident" limits. The per person and per accident limits is based on the statutory scheme providing for financial responsibility for accidents. (See, e.g. Vehicle Code §16056.)

6
PLAINTIFFS' OPPOSITION TO LEXINGTON INSURANCE COMPANY'S MOTION TO DISMISS

Here, Lexington introduce attempts to bootstrap its general liability "occurrence" limits into "per accident" automobile liability limits and then on this basis claim its policy is exhausted. This attempt fails for any of three reasons.

First, the general liability limits of a package policy do not apply to the automobile liability coverage. Instead, as the complaint alleges, the automobile liability coverage contains no "per accident" limits. (Complaint ¶26 at 7:19-22.)

Second, if Lexington intended to apply its "per occurrence" general liability limits to its automobile accident liability coverage part, this limitation had to be clear, plain and conspicuous. (*State Farm Mut. Auto. Ins. Co. v. Jacober* (1973) 10 Cal.3d 193, 201; *Harris v. Glens Falls Ins. Co.* (1972) 6 Cal.3d 699, 701.) It further had to be unambiguous. (*Harris v. Glens Falls Ins. Co., supra*, 6 Cal.3d at 701; *McBride v. Farmers Ins. Group* (1982) 130 Cal.App.3d 258, 260-261; see also *Ponder v. Blue Cross of Southern California* (1983) 145 Cal.App.3d 709, 727.) But no insured would expect a general liability limits to limit and exclude coverage for an automobile accident insured under the automobile accident liability coverage.

Third, as set forth in plaintiffs' opposition to the Gulf motion to dismiss, which plaintiff incorporates here by reference, the underlying complaint alleged two separate "accidents" arising out of two separate breaches of duty. First, plaintiffs' complaint alleged Pro Transportation breached its duty to properly fasten plaintiffs' mother's wheelchair in the vehicle so she would not fall. (Exh. 4, Gulf Request for Judicial Notice at 69:23-26.) Second, Pro Transportation, as a common carrier, failed to call 911 or take appropriate steps to obtain medical care for plaintiffs' mother's head injury. Instead Pro Transportation transported plaintiff home and left her alone to succumb to unconsciousness. (Id. at 69:27-70:2.) Thus, even if an "occurrence" trigger and limit were to apply to Lexington's policy, there were two separate and independent causes of harm.[3]

---

[3] It is anticipated that Lexington will respond that if there were two accidents, then its policy is not exposed because the total underlying payments were only $1,000,000. California follows the cause of harm theory to determine whether there was one or more accidents. This a jury question. (See, *FMC Corp. v. Plaisted and Companies* (1998) 61 Cal. App. 4th 1132, 1161, 1167, citing *Whittaker Corp. v. Allianz Underwriters, Inc.* (1992) 11 Cal. App. 4th 1236,

7
PLAINTIFFS' OPPOSITION TO LEXINGTON INSURANCE COMPANY'S MOTION TO DISMISS

### 3. Lexington's Assertion the Underlying Policies Are Not Exhausted Is Without Merit.

While asserting that its own policy was exhausted, Lexington simultaneously asserts the complaint fails to state a claim on which relief can be granted because plaintiffs failed to plead a requisite element of its cause of action against Lexington because the two underlying Gulf policies were not exhausted.

This position is without merit.

When an excess insurer knows the primary has abandoned its insured, this insurer cannot stand on its "excess" status and require exhaustion and then subsequently argue it is not bound by its insured's settlement. (*Fuller-Austin Insulation Co. v. Highlands Insurance Company* (2006) 135 Cal.App.4th 958; *Diamond Heights Homeowners Assn. v. National American Ins. Co.* (1991) 227 Cal.App.3d 563, 578.)

An excess insurer has a duty of good faith and fair dealing. This duty requires an excess insurer to conduct good faith settlement negotiations sufficient to ascertain the most favorable terms available and make an informed evaluation of any settlement demand. (*Continental Cas. Co. v. U. S. Fid. & Guar. Co.* (N.D., Cal., 1981) 516 F.Supp. 384, 389.)

An excess insurer may not refuse to defend or attempt to effectuate settlement in good faith when it knows the primary is neither defending nor attempting to protect the insured's interests through settlement and then when the insured is left to fend for itself on the best terms it can simultaneously refuse to be bound by the insured's settlement. When the primary breaches its duty to defend, an insurer who stands on its excess position and refuses to perform its good faith obligation to settle may not assert its excess position as a subsequent defense to the insured's settlement. It will be presumptively bound by the insured's stipulated judgment, notwithstanding its excess position. (*Fuller-Austin Insulation Co. v. Highlands Ins. Co., supra*, 135 Cal.App.4th 958, 986-987.)

As the California Court of Appeal stated in *Fuller-Austin*:

1242.) Moreover, if defendants contest the reasonableness of the settlement amount, a jury may determine the value of the heirs claims are in excess of the agreed upon settlement

> [A]n excess insurer, although not contractually obligated to take an active part in the defense of an insured, still owes its insured a duty of good faith when faced with an offer of settlement that exhausts the underlying policy limits. (*Id.* at 986.)

The *Fuller* Court reasoned the excess insurer is not without protection. The excess insurer may voluntarily waive a policy provision indicating that the excess insurer is not to be called upon to assume charge of settlement or defense and can either conduct its own settlement negotiations or take the action to trial, or the excess insurer may challenge an ensuing settlement on the ground of unreasonableness or that it is product of collusion between the primary insurer and the insured. (*Id.* at 988.)

Here, when the Gulf insurers asserted their policies were exhausted and refused to defend or settle, Lexington had a choice. It could stand on its provision that it was excess and refuse to take charge of settlement or defense or be presumptively bound to the insured's settlement, being able to challenge it only on the ground of unreasonableness or collusion.

Having refused to defendant and settle, Lexington is now presumptively bound by Pro Transportation's settlement and it may not stand on its excess position.

Lexington's position that it may stand on the excess provisions of its policy are meritless.

### B.  In the Event The Court Finds the Motion has Merit, Leave to Amend Should be Granted

FRCP 15(a) expressly states leave to amend "shall be freely given when justice so requires." [FRCP 15(a); *Allen v. City of Beverly Hills* (9th Cir. 1990) 911 F2d 367, 373; *Friedlander v. Nims* (11th Cir. 1985) 755 F2d 810, 813]. In this case, should the court hold that plaintiffs' complaint is deficient in any respect, plaintiffs request that leave to amend be granted.

---

amount. (See, *Fuller-Austin Insulation Co. v. Highlands Ins. Co., supra*, 135 Cal. App.4th at 991.)

# IV.
# CONCLUSION

The motion to dismiss for failure to state a claim is viewed with disfavor and is rarely granted." (*Gilligan v. Jamco Develop. Corp.* (9th Cir., 1997) 108 F3d 246, 249.) A 12(b)(6) dismissal is proper only in "extraordinary" cases. (*United States v. Redwood City* (9th Cir. 1981) 640 F2d 963, 966.)

Here, plaintiffs have pleaded all of the essential elements of their breach of contract cause of action.

This court should deny the motion.

DATED: May 1, 2008                                BALL & ROBERTS

By: _____
JOHN A. ROBERTS
Attorneys for Plaintiffs

# PROOF OF SERVICE

*Elwyn Patoc, et al., v. Lexington Insurance Company, et al.,*
**UNITED STATES DISTRICT COURT NOTHERN DISTRIC OF CALIFORNIA
SAN JOSE DIVISION
C08 01893 RMW**

I am employed by BALL & ROBERTS in the County of Los Angeles, State of California. I am over the age of 18 and not a party to the within action; my business address is 20 North Raymond Avenue, Pasadena, California 91103

On May 2, 2008, I served the foregoing document(s) described as PLAINTIFFS' OPPOSITION TO LEXINGTON INSURANCE COMPANY'S MOTION TO DISMISS on the interested parties in this action as stated on the attached service list as follows:

☑ By placing true copies thereof enclosed in sealed envelope(s) addressed as stated on the attached service list.

☐ BY HAND DELIVERY/PERSONAL SERVICE (CCP §§1011,et seq.): I caused said document(s) to be personally delivered by a courier to each addressee.

☑ BY MAIL (CCP §1013(a)&(b)):

I am "readily familiar" with the firm's practice of collection and processing correspondence for mailing. Under that practice such envelope(s) would be deposited with the U.S. postal service on that same day with postage thereon fully prepaid at 20 North Raymond Avenue, Pasadena, California, in the ordinary course of business. I am aware that on motion of the party served, service is presumed invalid if postal cancellation date or postage meter date is more than one day after date of deposit for mailing in affidavit.

☐ BY FEDERAL EXPRESS (CCP §1013(c)&(d) ):

I am "readily familiar" with the firm's practice of collection and processing correspondence for mailing via Federal Express. Under that practice such envelope(s) would be deposited at an authorized Federal Express "drop off" box on that same day with delivery fees fully provided for at 20 North Raymond Avenue, Pasadena, California, in the ordinary course of business.

☐ BY FACSIMILE: by transmitting via facsimile the document(s) listed above to the fax number(s) se forth below, or as stated on the attached service list, on this date before 5:00 p.m.

☑ BY ELECTRONIC SUBMISSION: I caused such document to be submitted electronically to the United State District Court-Northern District to be posted to the website with notice give to tall parties that document was served.

Executed on May 2, 2008 at Pasadena, California.

☐ **(STATE)** I declare under penalty of perjury under the laws of the State of California that the above is true and correct.

☑ **(FEDERAL)** I declare that I am employed in the office of a member of the Bar of this Court at whose direction the service was made. I declare under penalty of perjury under the laws of the United States of America that the above is true and correct.

_____
Maria Blanco

11
PLAINTIFFS' OPPOSITION TO LEXINGTON INSURANCE COMPANY'S MOTION TO DISMISS

## ATTACHED SERVICE LIST

| | |
|---|---|
| Kevin G. McCurdy<br>Elisabeth H. Baum<br>McCurdy & Fuller, LLP<br>4300 Bohannon Drive<br>Suite 240<br>Menlo Park, CA 94025<br>Tel: (650) 618-3500<br>Fax: (650) 618-3599<br>Email: kevin.mccurdy@mccurdylawyers.com<br>Email: elisabeth.baum@mccurdylawyers.com<br>ATTORNEY FOR DEFENDANT<br>LEXINGTON INSURANCE COMPANY | David T. Dibiase<br>David J. Billings<br>Anderson, McPharlin & Conners, LLP<br>Thirty-First Floor<br>444 South Flower Street<br>Los Angeles, CA 90071<br>Tel: (213) 688-0080<br>Fax: (213) 622-7594<br>Email: dtd@amclaw.com<br>Email: djb@amclaw.com<br>ATTORNEY FOR DEFENDANTS<br>GULF UNDERWIRTERS INSURANCE<br>COMPANY and THE TRAVELERS<br>INDEMNITY COMPANY, successor in<br>interest by merger to Gulf Insurance<br>Company |

PLAINTIFFS' OPPOSITION TO LEXINGTON INSURANCE COMPANY'S MOTION TO DISMISS