BALL & ROBERTS
20 North Raymond Avenue, Suite 350
Pasadena, California 91103
Stephen C. Ball, Esq. – Bar No. 119463
Email: sball@pasadenalaw.com
John A. Roberts, Esq. – Bar No. 185314
Email: jroberts@pasadenalaw.com
Telephone:   (626) 793-2117
Facsimile:    (626) 793-3198

DENISE JARMAN – Bar No. 88650
102 E Street
Davis, California 95616
Telephone:   (916) 607-5692
Facsimile:    (866) 715-4630
Email: jarmandenny@yahoo.com
Attorneys for Plaintiffs Elwyn Patoc, Eric Patoc, Elvy Patoc, Edward Patoc

UNITED STATE DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA, SAN JOSE DIVISION

| | |
|---|---|
| ELWYN PATOC, ERIC PATOC, ELVY PATOC, EDWARD PATOC<br><br>Plaintiffs,<br><br>v.<br><br>LEXINGTON INSURANCE COMPANY, et al.,<br><br>Defendants. | CASE NO.: C08 01893 RMW<br><br>**PLAINTIFFS' OPPOSITION TO GULF UNDERWRITERS INSURANCE COMPANY, THE TRAVELERS INDEMNITY COMPANY AND THE TRAVELERS COMPANIES INC.'S MOTION TO DISMISS**<br><br>Date:   May 23, 2008<br>Time:  9:00 a.m.<br>Place:  Courtroom 6<br>Judge: Ronald M. Whyte |

I.

INTRODUCTION

This action is about the damages the children of Mercedes Patoc have suffered as a result of the premature death of their mother. An employee of Pro Transportation failed to properly secure Ms. Patoc's wheelchair to the inside of a medical transport van. During acceleration from a stop sign, Ms. Patoc fell, hitting her head. To compound this injury, Pro Transportation also caused Ms. Patoc to suffer otherwise preventable permanent brain damage when it failed to secure for her appropriate medical care.

Instead, the employee drove Ms. Patoc to her home and dropped her off without notifying anyone of the fall. Later that evening, Ms. Patoc's children found her gravely ill and rushed her to the hospital where she underwent brain surgery for a massive subdural hematoma. Unfortunately, Ms. Patoc sustained irreversible brain damage and survived for a little over a year before ultimately succumbing to her injuries.

Pro Transportation's insurance program consisted of a package of general liability and automobile liability primary and excess coverages. Gulf Insurance Company ("Gulf") insured Pro Transportation on the first layer of primary *automobile liability coverage* with combined single per person/per accident limits of $500,000. Gulf Underwriter's Insurance Company ("Gulf Underwriters") insured Pro Transportation on the first layer of *excess automobile liability coverage* with combined single per person/per accident limits of $500,000.[1]

While Ms. Patoc survived, her medical expenses became increasingly expensive and Ms. Patoc made a claim against Pro Transportation for her bodily injuries and needed medical care. Gulf paid $500,000. Gulf Underwriters paid $500,000.

Now Travelers claims its payment while Ms. Patoc survived exhausted its policy. Nonsense. As Travelers knew well, its policy has *no* aggregate limit for accidents occurring in a single year. And as Travelers admits through its Request for Judicial Notice of the underlying complaint (Exhibit 4), plaintiffs alleged Pro Transportation committed *two* separate acts on which Pro Transportation's liability was based. Under controlling precedent, these two separate causes of Pro Transportation's liability constituted two "accidents", thereby giving rise to liability under *each* of the Traveler's policies for $1,000,000. Worse still for Travelers, it misrepresented these limits to Ms. Patoc during settlement of the first claim.

Equally nonsensical is The Travelers Companies, Inc.'s claim it is not a proper party to this litigation. Attached as Exhibit A to this opposition is a copy of the Travelers Companies Inc.'s 10K/A

---

[1] Through a merger, the Travelers Companies, Inc. ("Traveler's") acquired Gulf Insurance Company and Gulf Underwriter's Insurance Company and the Travelers Companies Inc. adjusts the two Gulf companies' runoff claims through its wholly owned subsidiary the Traveler's Property and Casualty Company. (Decl. Roberts, Exh. A, The Traveler's Companies, Inc. 10K/A Statement before the Securities and Exchange Commission.)

filed before the Securities and Exchange Commission establishing the allegations in paragraph 3 of plaintiffs' complaint that the Travelers Companies Inc. ("Travelers") is indeed the successor corporation to Gulf and Gulf Underwriters.

This court should deny Travelers motion to dismiss.

## II

## THE ALLEGATIONS OF THE COMPLAINT

The Gulf policy was an automobile liability policy insuring Pro Transportation for an "accident arising out of the use of an automobile." This policy had combined single limits of $500,000 per accident. (Complaint ¶14 at 4:15-19.)

The Gulf Underwriters policy was an automobile liability policy insuring Pro Transportation for an "accident arising out of the use of an automobile." This policy had combined single limits of $500,000 per accident. (Complaint ¶23 at 6:9-14.)

The Lexington policy was a second layer excess package policy over *both* Pro Transportation's general liability policies and its automobile liability policies. (Complaint ¶26 at 7:14-15.) The automobile coverage part of Lexington's policy had no "per accident" limits. (*Id.* at 7:19.) The Lexington policy promised to pay as compensatory damages losses which were in excess of the $1,000,000 arising out of an accident resulting from the use of a covered automobile. (Complaint, ¶27 at 8:12-16.) The Lexington policy further promised to investigate and defend claims not covered by the underlying limits because of exhaustion. (Complaint, ¶30 at 8:22 – 9:5.)

Mercedes Patoc was injured in an automobile accident. (Complaint ¶35 at 10:3-5.) Mercedes Patoc sued Pro Transportation for the bodily injuries she suffered. (Complaint ¶36 at 10:6-12.) Gulf and Gulf Underwriters assert payments for the bodily injury claim exhausted the combined single limits of their two policies. (Complaint ¶36 at 10:6-11.)

Thereafter Mercedes Patoc died.. Her heirs sued Pro Transportation for their wrongful death of their mother. (Complaint ¶¶37-38 at 10:13-17.)

Gulf and Gulf Underwriters each refused to defend or indemnify Pro-Transportation. (Complaint ¶41 at 10:28 – 11:4.) These insurers asserted their limits were exhausted. (Complaint ¶36 at 10:8-12.) Pro-Transportation also demanded Lexington defend or settle plaintiffs' claims against it but

Lexington refused. Left to fend for itself, Pro-Transportation then settled the plaintiffs' wrongful death claims in exchange for a covenant not to execute. (Complaint ¶42-44 at 11:7-22.) This suit ensued.

### III.
### ANALYSIS

**A.    Traveler's Claim of Exhaustion Has No Merit.**

The "cause" test, not the number of claimants or injuries, determines an insurer's policy limits. Under this test, the *number of causes* of injury giving rise to liability is determinative. (*H.E. Butt Grocery Co. v. National Union Fire Insurance Company of Pittsburg PA* (5th Cir. 1998) 150 F.3d 526; *Liberty Mut. Ins. Co. v. Rawls* (5th Cir., 1968) 404 F.2d 880, 881; *Barrett v. Iowa National Mutual Insurance Co.* (9th Cir.1959) 264 F.2d 224).

Under this test, the number of claimants or the number of injuries is irrelevant. (*H.E. Butt Grocery Co. v. National Union Fire Insurance Company of Pittsburg PA*, *supra*, 150 F.3d at 530 (hereafter "HEB Grocery.")  As the court held in HEB Grocery , the proper focus is on the events that give rise to the insured's liability, rather than on the number of injurious effects. (*Ibid*.)

In *Flintkote Co. v. General Acc. Assur. Co.* (N.D. Cal., 2006) 410 F.Supp.2d 875, this court had the occasion to apply the "cause" test. The court stated the test that an occurrence or accident means "an event that causes and immediately precedes an injury giving rise to liability under the policy." (Id. at 892.) The common thread running through the California cases is that an "occurrence" or "accident" is associated with the time of injury. (*Ibid*.)

Here, Traveler's motion admits its two policies *each* contained limits of $500,000 "for any one accident." (Motion at 1:9-14, 16-19.) Traveler's motion then describes a *single* accident, "The Accident."  Traveler's describes this accident as Ms. Patoc's unsecured wheelchair fell backwards causing Ms. Patoc to strike her head . (*Id.* at 3:8-4, 4:11-15.)

But what Traveler's fails to describe is that the second lawsuit alleged *two* separate accidents. Instead, Traveler's motion describes *only* the first accident.

The first accident was alleged in the complaint in the wrongful death lawsuit which Traveler's refused to defend. This is the accident that Traveler's describes in its motion:

4

PLAINTIFFS' OPPOSITION TO GULF UNDERWRITERS INSURANCE THE TRAVELERS INDEMNITY COMPANY AND THE TRAVELERS COMPANIES INC.'S
MOTIONS TO DISMISS

> On March 16, 2005, DECEDENT was a passenger in the bus and sitting in a wheelchair. While en route from a medical appointment to her home within the city of Salinas, DECEDENT'S wheelchair. While en route from a medical appointment to her home within the city of Salinas, DECEDENT'S wheelchair was unsecured and allowed to fall backwards causing DECEDENT to strike her head with great force. (Request for Judicial Notice, Exh. 4 at 69:23-26.)

But the wrongful death lawsuit alleged the second accident as well – the failure to obtain medical attention:

> Rather than notify anyone of the fall or seek medical attention for DECEDENT, RODRIGUEZ simply righted the wheelchair and dropped DECEDENT off at her home. (*Id.* at 69:27-28.)

Thus, Pro Transportation's liability arose out of *two separate causes*.

First, under the applicable California law, Pro Transportation had a duty to fasten the wheelchair and to secure Ms. Patoc in the wheelchair. (Title 22 Cal. Code of Reg. §51231.1, subd. (b)(7), (e).) Pro Transportation breached this duty when it failed to fasten the wheelchair and secure Ms. Patoc in the wheelchair to prevent her from falling. This was one cause of Pro Transportation's liability.

Second, Pro Transportation was a passenger stage common carrier. (Pub. Util. Code §§211, subd. (c); 225.) As a common carrier, Pro Transportation had a duty to obtain medical attention for Ms. Patoc after it knew Ms. Patoc had taken a hard blow to her head. (Rest. Torts 2d §314A.) This was a second and separate cause of Pro Transportation's liability.

The failure to secure the wheelchair and the failure to obtain medical aid occurred at two separate times and gave rise to two separate bases of liability. For example, if in the underlying action, Pro Transportation claimed that the failure to fasten the wheelchair did not happen, it would still have had legal liability for its failure to obtain medical aid for a passenger in its care. (*Ibid.*)

But now, Travelers takes the fatuous position the only cause of Pro Transportation's liability was the duty to fasten the wheelchair, not the duty to obtain medical attention for Ms. Patoc and stay with her until attention could be obtained.

These two accidents rendered the two Travelers policies each subject to a total of $1,000,000.

The complaint alleges each policy paid only $500,000.

Traveler's claim of exhaustion is without merit.

### B.  Travelers Is The Proper Defendant.

The complaint names the Travelers Companies, Inc. as the proper defendant in this action. The complaint does not name the Travelers Company, Inc. (Complaint.)

The complaint alleges the Travelers Companies, Inc. is the legal successor company to Gulf Insurance Company ("Gulf") and Gulf Underwriters, Inc. ("Gulf Underwriters.") (Complaint ¶3 at 2:7-18.)

Before March 3, 2006, The St. Paul Companies, Inc. owned and operated Gulf and Gulf Underwriters. (Roberts Decl., Exh. B, 03/03/04 Order of the State of Connecticut Department of Insurance, at p.14-15)

On March 3, 2006, The St. Paul Companies, Inc. acquired the Travelers Property Casualty Corp. The new merged insurance company was named The St. Paul Travelers Companies, Inc. (*Id.* at p. 17)

The insurers presented evidence and made various commitments as a condition of the acquisition. Specifically as respects policyholders, the proposed St. Paul Travelers Companies, Inc. had to establish that the plans and proposals relating to the existing insurance companies (Gulf and Gulf Underwriters) are not unfair and unreasonable to their policyholders." (*Id.* at p. 18)

In 2006, Travelers filed a 10K Statement in front of the Securities and Exchange Commission. (Roberts Decl., Exh. A.) Traveler's officers and directors swore and certified to the truth of the matters contained in this statement. (*Id.* at pp. 8-13)

This statement provides that the name The St. Paul Travelers Companies, Inc. was changed to The Travelers Companies, Inc. – the same party plaintiffs here sue. (*Id.* at 5)

This statement further provides that Travelers special liability group is conducting the Gulf operations and claims because the Travelers put Gulf into runoff in the second quarter of 2004. (*Id.* at p. 6) And in 2005, Gulf no longer was a separate entity because the Traveler's merged this company into Travelers Indemnity Company, the other Travelers defendant plaintiffs have named herein. (*Id.* at p. 7)

6

PLAINTIFFS' OPPOSITION TO GULF UNDERWRITERS INSURANCE THE TRAVELERS INDEMNITY COMPANY AND THE TRAVELERS COMPANIES INC.'S
MOTIONS TO DISMISS

But despite Traveler's representation to regulatory authorities that its acquisition of Gulf and Gulf Underwriters would be fair and reasonable to policyholders, (Roberts Decl., Exh. B at p. 18) now the Traveler's seeks to leave the judgment creditors of its policyholders with only a remedy against the now defunct Gulf companies.

This court should not permit these defendants to tell regulatory authorities it will be fair and reasonable to the policyholders of the formerly merged companies and then when it comes time to pay claims, seek to avoid this liability on the fatuous contention they did not issue the policies.

### C. In the Event The Court Finds the Motion has Merit, Leave to Amend Should be Granted

FRCP 15(a) expressly states leave to amend "shall be freely given when justice so requires." (FRCP 15(a); *Allen v. City of Beverly Hills* (9th Cir. 1990) 911 F.2d 367, 373; *Friedlander v.Nims* (11th Cir. 1985) 755 F.2d 810, 813). In this case, should the court hold that plaintiffs' complaint is deficient in any respect, plaintiffs request that leave to amend be granted.

### IV.
### CONCLUSION

The motion to dismiss for failure to state a claim is viewed with disfavor and is rarely granted." (*Gilligan v. Jamco Develop. Corp.* (9th Cir., 1997) 108 F3d 246, 249.) A 12(b)(6) dismissal is proper only in "extraordinary" cases. (*United States v. Redwood City* (9th Cir. 1981) 640 F2d 963, 966.)

This court should deny the motion.

DATED: May 2, 2008                              BALL & ROBERTS

                                                DENISE JARMAN




                                                By: _____
                                                JOHN A. ROBERTS
                                                Attorneys for Plaintiffs

7

PLAINTIFFS' OPPOSITION TO GULF UNDERWRITERS INSURANCE  THE TRAVELERS INDEMNITY COMPANY AND THE TRAVELERS COMPANIES INC.'S
MOTIONS TO DISMISS

# PROOF OF SERVICE

STATE OF CALIFORNIA, COUNTY OF LOS ANGELES

I am employed by BALL & ROBERTS in the County of Los Angeles, State of California. I am over the age of 18 and not a party to the within action; my business address is 20 North Raymond Avenue, Pasadena, California 91103

On May 2, 2008, I served the foregoing document(s) described as PLAINTIFFS' OPPOSITION TO MOTION TO DISMISS on the interested parties in this action as stated on the attached service list as follows:

☑ By placing true copies thereof enclosed in sealed envelope(s) addressed as stated on the attached service list.

☑ BY MAIL (CCP §1013(a)&(b)):

I am "readily familiar" with the firm's practice of collection and processing correspondence for mailing. Under that practice such envelope(s) would be deposited with the U.S. postal service on that same day with postage thereon fully prepaid at 20 North Raymond Avenue, Pasadena, California, in the ordinary course of business. I am aware that on motion of the party served, service is presumed invalid if postal cancellation date or postage meter date is more than one day after date of deposit for mailing in affidavit.

☑ BY ELECTRONIC SUBMISSION: I caused such documents to be submitted electronically to the United State District Court-Northern District to be posted to the website with notice given to all parties that the document was served.

Executed on May 2, 2008 at Pasadena, California.

☐ (STATE) I declare under penalty of perjury under the laws of the State of California that the above is true and correct.

☑ (FEDERAL) I declare that I am employed in the office of a member of the Bar of this Court at whose direction the service was made. I declare under penalty of perjury under the laws of the United States of America that the above is true and correct.

_Maria Blanco_
Maria Blanco

PLAINTIFFS' OPPOSITION TO GULF UNDERWRITERS INSURANCE THE TRAVELERS INDEMNITY COMPANY AND THE TRAVELERS COMPANIES INC.'S
MOTIONS TO DISMISS

## ATTACHED SERVICE LIST

| | |
|---|---|
| Kevin G. McCurdy<br>Elisabeth H. Baum<br>McCurdy & Fuller, LLP<br>4300 Bohannon Drive<br>Suite 240<br>Menlo Park, CA 94025<br>Tel: (650) 618-3500<br>Fax: (650) 618-3599<br>Email: kevin.mccurdy@mccurdylawyers.com<br>Email: elisabeth.baum@mccurdylawyers.com<br>ATTORNEY FOR DEFENDANT<br>LEXINGTON INSURANCE COMPANY | David T. Dibiase<br>David J. Billings<br>Anderson, McPharlin & Conners, LLP<br>Thirty-First Floor<br>444 South Flower Street<br>Los Angeles, CA 90071<br>Tel: (213) 688-0080<br>Fax: (213) 622-7594<br>Email: dtd@amclaw.com<br>Email: djb@amclaw.com<br>ATTORNEY FOR DEFENDANTS<br>GULF UNDERWIRTERS INSURANCE<br>COMPANY and THE TRAVELERS<br>INDEMNITY COMPANY, successor in<br>interest by merger to Gulf Insurance<br>Company |

PLAINTIFFS' OPPOSITION TO GULF UNDERWRITERS INSURANCE  THE TRAVELERS INDEMNITY COMPANY AND THE TRAVELERS COMPANIES INC.'S MOTIONS TO DISMISS