BALL & ROBERTS
20 North Raymond Avenue, Suite 350
Pasadena, California 91103
Stephen C. Ball, Esq. – Bar No. 119463
Email: sball@pasadenalaw.com
John A. Roberts, Esq. – Bar No. 185314
Email: jroberts@pasadenalaw.com
Telephone:    (626) 793-2117
Facsimile:    (626) 793-3198

DENISE JARMAN – Bar No. 88650
102 E Street
Davis, California 95616
Telephone:    (916) 607-5692
Facsimile:    (866) 715-4630
Email: jarmandenny@yahoo.com
Attorneys for Plaintiffs Elwyn Patoc, Eric Patoc, Elvy Patoc, Edward Patoc

UNITED STATE DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA, SAN JOSE DIVISION

| | |
|---|---|
| ELWYN PATOC, ERIC PATOC, ELVY PATOC, EDWARD PATOC <br><br> Plaintiffs, <br><br> v. <br><br> LEXINGTON INSURANCE COMPANY, et al., <br><br> Defendants. | CASE NO.: C08 01893 RMW <br><br> **DECLARATION OF JOHN A. ROBERTS IN SUPPORT OF PLAINTIFFS' OPPOSITION TO GULF UNDERWRITERS INSURANCE COMPANY, THE TRAVELERS INDEMNITY COMPANY AND THE TRAVELERS COMPANIES INC.'S MOTION TO DISMISS** <br><br> Date:  May 23, 2008 <br> Time:  9:00 a.m. <br> Place:  Courtroom 6 <br> Judge: Ronald M. Whyte |

<u>DECLARATION OF JOHN A. ROBERTS</u>

I, JOHN A. ROBERTS, declare and state as follows:

1.    I am an attorney at law licensed to practice before all of the Courts of the State of California.  I am a partner in the firm of Ball & Roberts, co-attorneys of record for the plaintiffs in this matter. I have personal knowledge of the facts stated herein and could and

1

1   would competently testify thereto.

2       2.      Attached as Exhibit A to this Opposition is a copy of the Travelers Companies

3   Inc.'s 10K/A filed before the Securities and Exchange Commission establishing the allegations

4   in paragraph 3 of plaintiffs' complaint that the Travelers Companies, Inc. is indeed the

5   successor corporation to Gulf Insurance Company and Gulf Underwriters Insurance Company.

6   (Only the relevant pages are attached.  The entire document is 303 pages in length.)

7       3.      Attached as Exhibit B are copies of the relevant pages of the 03/03/04 Order of

8   the State of Connecticut Department of Insurance regarding St. Paul Companies, Inc.

9   acquisition of Travelers Property Casualty, Corp. and its subsidiaries including Gulf Insurance

10  Company and Gulf Underwriters Insurance Company.

15      I declare under penalty of perjury that the foregoing is true and correct.

16  Executed this 2nd day of May, 2008 within the United States.

18      _____
        JOHN A. ROBERTS

DECLARATION OF JOHN A. ROBERTS IN SUPPORT OF
PLAINTIFFS' OPPOSITION TO MOTION TO DISMISS

EXHIBIT "A"



# FORM 10-K/A

## TRAVELERS COMPANIES, INC. - TRV

**Filed: February 28, 2007 (period: December 31, 2006)**

Amendment to a previously filed 10-K

# UNITED STATES SECURITIES AND EXCHANGE COMMISSION
Washington, D.C. 20549

## FORM 10-K/A

☒ ANNUAL REPORT PURSUANT TO SECTION 13 OR 15(d)
OF THE SECURITIES EXCHANGE ACT OF 1934

For the fiscal year ended December 31, 2006

or

☐ TRANSITION REPORT PURSUANT TO SECTION 13 OR 15(d)
OF THE SECURITIES EXCHANGE ACT OF 1934

For the transition period from _____ to _____

Commission file number 001-10898

## The Travelers Companies, Inc.
(Exact name of registrant as specified in its charter)

| Minnesota | 41-0518860 |
|---|---|
| (State or other jurisdiction of incorporation or organization) | (I.R.S. Employer Identification No.) |

385 Washington Street,
St. Paul, MN 55102
(Address of principal executive offices) (Zip Code)

(651) 310-7911
(Registrant's telephone number, including area code)

Securities registered pursuant to Section 12(b) of the Act:

| Title of each class | Name of each exchange on which registered |
|---|---|
| Common stock, without par value | New York Stock Exchange |
| 4.5% Convertible Junior Subordinated Notes due 2032 | New York Stock Exchange |

Securities registered pursuant to Section 12(g) of the Act:   None

Indicate by check mark if the registrant is a well-known seasoned issuer (as defined in Rule 405 of the Securities Act). Yes ☒   No ☐

Indicate by check mark if the registrant is not required to file reports pursuant to Section 13 or Section 15(d) of the Act. Yes ☐   No ☒

Indicate by check mark whether the registrant (1) has filed all reports required to be filed by Section 13 or 15(d) of the Securities Exchange Act of 1934 during the preceding 12 months (or for such shorter period that the registrant was required to file such reports), and (2) has been subject to such filing requirements for the past 90 days. Yes ☒   No ☐

Indicate by check mark if disclosure of delinquent filers pursuant to Item 405 of Regulation S-K is not contained herein, and will not be contained, to the best of registrant's knowledge, in definitive proxy or information statements incorporated by reference in Part III of this Form 10-K or any amendment to this Form 10-K.   ☒

Indicate by check mark whether the registrant is a large accelerated filer, an accelerated filer, or a non-accelerated filer. See definition of "accelerated filer and large accelerated filer" in Rule 12b-2 of the Act (Check one):

Large accelerated filer ☒          Accelerated filer ☐          Non-accelerated filer ☐

Indicate by check mark whether the registrant is a shell company (as defined in Rule 12b-2 of the Act). Yes ☐   No ☒

As of June 30, 2006, the aggregate market value of the registrant's voting and non-voting common equity held by non-affiliates was $30,756,413,821.

As of February 15, 2007, 675,597,123 shares of the registrant's common stock (without par value) were outstanding.

### DOCUMENTS INCORPORATED BY REFERENCE

Portions of the Registrant's Proxy Statement relating to the 2007 Annual Meeting of Shareholders are incorporated by reference into Part III of this report.

Source: TRAVELERS COMPANIES,, 10-K/A, February 28, 2007

PART I

Item 1.    BUSINESS

The Travelers Companies, Inc. (together with its consolidated subsidiaries, the Company) is a holding company principally engaged, through its subsidiaries, in providing a wide range of commercial and personal property and casualty insurance products and services to businesses, government units, associations and individuals. The Company, known as The St. Paul Companies, Inc. (SPC) prior to its merger with Travelers Property Casualty Corp. (TPC) in 2004, is incorporated as a general business corporation under the laws of the state of Minnesota and is one of the oldest insurance organizations in the United States, dating back to 1853. The principal executive offices of the Company are located at 385 Washington Street, St. Paul, Minnesota 55102, and the telephone number is (651) 310-7911. The term "TRV" in this document refers to The Travelers Companies, Inc., the parent holding company excluding subsidiaries.

On April 1, 2004, TPC merged with a subsidiary of SPC, as a result of which TPC became a wholly-owned subsidiary of SPC, and SPC changed its name to The St. Paul Travelers Companies, Inc. For accounting purposes, this transaction was accounted for as a reverse acquisition with TPC treated as the accounting acquirer. Accordingly, this transaction was accounted for as a purchase business combination, using TPC's historical financial information and applying fair value estimates to the acquired assets, liabilities and commitments of SPC as of April 1, 2004. Beginning on April 1, 2004, the results of operations and financial condition of SPC were consolidated with TPC's results of operations and financial condition. Accordingly, all financial information presented herein for the twelve months ended December 31, 2004 reflects the accounts of TPC for the three months ended March 31, 2004 and the consolidated accounts of SPC and TPC for the nine months ended December 31, 2004.

TPC is a Connecticut corporation that was formed in 1979 and, prior to its March 2002 initial public offering of class A common stock, was an indirect wholly-owned subsidiary of Citigroup Inc. (together with its consolidated subsidiaries, Citigroup). TPC was reorganized in connection with its IPO in March 2002. Pursuant to the reorganization, which was completed on March 19, 2002, TPC's consolidated financial statements were adjusted to exclude the accounts of certain formerly wholly-owned TPC subsidiaries, principally The Travelers Insurance Company and its subsidiaries (being the former U.S. life insurance operations of TPC), certain other wholly-owned non-insurance subsidiaries of TPC and substantially all of TPC's assets and certain liabilities not related to the property casualty insurance business.

Effective February 26, 2007, The St. Paul Travelers Companies, Inc. changed its name to The Travelers Companies, Inc. and, on February 27, 2007, its common stock began trading on the New York Stock Exchange under the new symbol "TRV".

For a summary of the Company's revenues, operating income and total assets by reportable business segments, see note 2 of notes to the Company's consolidated financial statements.

## PROPERTY AND CASUALTY INSURANCE OPERATIONS

The property and casualty insurance industry is highly competitive in the areas of price, service, product offerings, agent relationships and method of distribution, i.e. use of independent agents, exclusive agents and/or salaried employees. According to A.M. Best, there are approximately 975 property casualty organizations in the United States, comprising approximately 2,400 property and casualty companies. Of those organizations, the top 150 accounted for approximately 93% of the consolidated industry's total net written premiums in 2005. The Company competes with both foreign and domestic insurers. In addition, several property and casualty insurers writing commercial lines of business, including the Company, offer products for alternative forms of risk protection in addition to traditional insurance products. These products include large deductible programs and various forms of self-insurance that utilize captive insurance companies and risk retention groups. The Company's competitive position in the marketplace is

1

Source: TRAVELERS COMPANIES,, 10-K/A, February 28, 2007

**5**

- *Ocean Marine* serves the marine transportation industry and related services, as well as other businesses involved in international trade. The Company's product offerings fall under six main coverage categories: marine liability, cargo, hull and machinery, protection and indemnity, pleasure craft, and marine property and liability.

- *Excess Casualty* serves small to mid-sized commercial businesses, offering mono-line umbrella and excess coverage where the Company does not write the primary casualty coverage, or where other business units within the Company prefer to outsource the underwriting of umbrella and excess business based on the expertise and/or limit capacity of Excess Casualty.

- *Boiler & Machinery* serves customers ranging from small commercial firms to Fortune 100 companies, offering comprehensive breakdown coverages for equipment, including property and business interruption coverages. Through the BoilerRe unit, Boiler & Machinery also serves other property casualty carriers that do not have in-house expertise with reinsurance, underwriting, engineering, claim handling and risk management services for this type of coverage.

- *Global Accounts* provides insurance to U.S. companies with foreign property and liability exposures ("home-foreign"), and foreign organizations with property and liability exposures located in the United States ("reverse-flow"), as part of a global program.

- *Specialized Distribution.* The following units market and underwrite their products to customers predominantly through licensed wholesale, general and program agents that manage customers' uniqsue insurance requirements.

- *Northland* provides insurance coverage for the commercial transportation industry, and commercial liability and package policies for small, difficult to place specialty classes of commercial business on an admitted or excess and surplus lines basis.

- *National Programs* offers tailored property and casualty programs on an admitted basis for customers with common risk characteristics or coverage requirements. Programs available include those for entertainment, architects and engineers, equipment rental and golf services.

- *Underwriting Facilities* serves small commercial businesses, offering general liability, property and commercial auto physical damage coverages on an admitted or excess and surplus lines basis.

Business Insurance also includes the Special Liability Group (which manages the Company's asbestos and environmental liabilities); the assumed reinsurance, health care, and certain international and other runoff operations; policies written by the Company's Gulf operation (Gulf), which was placed into runoff during the second quarter of 2004; and the Company's Personal Catastrophe Risk operation, which was sold in November 2005. The Personal Catastrophe Risk operation had been included in the Specialty segment prior to the August 2006 segment realignment. These are collectively referred to as Business Insurance Other. The Personal Catastrophe Risk operation accounted for the majority of net written premiums in this category in 2005. In 2004, Gulf and the Personal Catastrophe Risk operation accounted for the majority of written premiums in this category.

4

Source: TRAVELERS COMPANIES,, 10-K/A, February 28, 2007

**6**

| Environmental | 1996 | 1997 | 1998 | 1999 | 2000 | 2001 | 2002 | 2003 | 2004 | 2005 |
|---|---|---|---|---|---|---|---|---|---|---|
| Gross | $ 1,093 | $ 1,014 | $ 891 | $ 752 | $ 677 | $ 619 | $ 465 | $ 406 | $ 125 | $ 108 |
| Net | $ 881 | $ 816 | $ 766 | $ 709 | $ 645 | $ 599 | $ 449 | $ 390 | $ 150 | $ 120 |

(a)  Includes reserves of The Northland Company and its subsidiaries and Commercial Guaranty Lloyds Insurance Company which were acquired from Citigroup on October 1, 2001. Also includes reserves of Commercial Guaranty Casualty Insurance Company, which was contributed to TPC by Citigroup on October 3, 2001. At December 31, 2001, these gross reserves were $867 million, and net reserves were $633 million.

(b)  For years prior to 2004, excludes SPC reserves, which were acquired on April 1, 2004. Accordingly, the reserve development (net reserves for claims and claim adjustment expenses reestimated as of subsequent years less net reserves recorded at the end of the year, as originally estimated) for years prior to 2004 relates only to losses recorded by TPC and does not include reserve development recorded by SPC. For 2004 and subsequent years, includes SPC reserves and subsequent development recorded by SPC. At December 31, 2004, SPC gross reserves were $23,274 million and net reserves were $15,959 million.

## Reserves on Statutory Accounting Basis

At December 31, 2006, 2005 and 2004, claim and claim adjustment expense reserves (net of reinsurance) shown in the preceding table, which are prepared in accordance U.S. generally accepted accounting principles (GAAP), were $104 million, $296 million and $282 million lower, respectively, than those reported in the Company's respective annual reports filed with insurance regulators, which are prepared in accordance with statutory accounting practices. The accounting for retroactive reinsurance is a significant factor in the difference in reserves. Retroactive reinsurance balances result from reinsurance placed to cover losses on insured events occurring prior to the contract inception. For GAAP reporting, retroactive reinsurance balances are included in reinsurance recoverables and result in lower net reserve amounts. Statutory accounting practices require retroactive reinsurance balances to be recorded in other liabilities as contra-liabilities rather than in loss reserves.

## Asbestos and Environmental Claims

Asbestos and environmental claims are segregated from other claims and are handled separately by the Company's Special Liability Group, a separate unit staffed by dedicated legal, claim, finance and engineering professionals. For additional information on asbestos and environmental claims, see "Item 7—Management's Discussion and Analysis of Financial Conditions and Results of Operations."

## INTERCOMPANY REINSURANCE POOLING ARRANGEMENTS

Most of the Company's insurance subsidiaries are members of intercompany property and casualty reinsurance pooling arrangements. Pooling arrangements permit the participating companies to rely on the capacity of the entire pool's capital and surplus rather than just on its own capital and surplus. Under such arrangements, the members share substantially all insurance business that is written, and allocate the combined premiums, losses and expenses. During 2005, the Company combined the previously separate St. Paul Insurance Group and Travelers Property Casualty pools, forming the new Travelers Reinsurance Pool. Travelers Indemnity Company is the lead company of the new pool, which includes 28 companies. The Company also merged Gulf Insurance Company, the lead company of the former Gulf Insurance Group, into Travelers Indemnity Company effective July 1, 2005. As of December 31, 2006, there were two intercompany pooling arrangements: the Travelers Reinsurance Pool and the Northland Pool.

27

Source: TRAVELERS COMPANIES., 10-K/A, February 28, 2007

7

## SIGNATURES

Pursuant to the requirements of Section 13 or 15(d) of the Securities Exchange Act of 1934, The Travelers Companies, Inc. has duly caused this report to be signed on its behalf by the undersigned, thereunto duly authorized.

**THE TRAVELERS COMPANIES, INC.**
**(Registrant)**

Date: February 23, 2007            By            /s/  BRUCE A. BACKBERG
                                                **Bruce A. Backberg**
                                                **Senior Vice President**
                                                **(Authorized Signatory)**

Pursuant to the requirements of the Securities Exchange Act of 1934, this report has been signed below by the following persons on behalf of The Travelers Companies, Inc. and in the capacities and on the dates indicated.

| By | | | Date |
|----|----|----|----|
| By | /S/  JAY S. FISHMAN<br>**Jay S. Fishman** | Director, Chairman, Chief Executive Officer and President (Principal Executive Officer) | February 23, 2007 |
| By | /S/  JAY S. BENET<br>**Jay S. Benet** | Vice Chairman and Chief Financial Officer (Principal Financial Officer) | February 23, 2007 |
| By | /S/  DOUGLAS K. RUSSELL<br>**Douglas K. Russell** | Senior Vice President, Corporate Controller and Treasurer (Principal Accounting Officer) | February 23, 2007 |
| By | *<br>**John H. Dasburg** | Director | February 23, 2007 |
| By | *<br>**Leslie B. Disharoon** | Director | February 23, 2007 |
| By | *<br>**Janet M. Dolan** | Director | February 23, 2007 |
| By | *<br>**Kenneth M. Duberstein** | Director | February 23, 2007 |
| By | *<br>**Lawrence G. Graev** | Director | February 23, 2007 |
| By | *<br>**Thomas R. Hodgson** | Director | February 23, 2007 |
| By | *<br>**Robert I. Lipp** | Director | February 23, 2007 |

252

Source: TRAVELERS COMPANIES,, 10-K/A, February 28, 2007

| By | _____*_____ | Director | February 23, 2007 |
| | **Blythe J. McGarvie** | | |
| By | _____*_____ | Director | February 23, 2007 |
| | **Glen D. Nelson, M.D.** | | |
| By | _____*_____ | Director | February 23, 2007 |
| | **Laurie J. Thomsen** | | |
| *By | /S/  BRUCE A. BACKBERG | | February 23, 2007 |
| | **Bruce A. Backberg,** | | |
| | **Attorney-in-fact** | | |

253

Source: TRAVELERS COMPANIES,, 10-K/A, February 28, 2007

9

Exhibit 31.1

# CERTIFICATION

I, Jay S. Fishman, Chairman and Chief Executive Officer, certify that:

1.  I have reviewed this Annual Report on Form 10-K for the year ended December 31, 2006 of The Travelers Companies, Inc. (the Company);

2.  Based on my knowledge, this report does not contain any untrue statement of a material fact or omit to state a material fact necessary to make the statements made, in light of the circumstances under which such statements were made, not misleading with respect to the period covered by this report;

3.  Based on my knowledge, the financial statements, and other financial information included in this report, fairly present in all material respects the financial condition, results of operations and cash flows of the Company as of, and for, the periods presented in this report;

4.  The Company's other certifying officer and I are responsible for establishing and maintaining disclosure controls and procedures (as defined in Exchange Act Rules 13a-15(e) and 15d-15(e)) and internal control over financial reporting (as defined in Exchange Act Rules 13a-15(f) and 15d-15(f)) for the Company and have:

    a)  designed such disclosure controls and procedures, or caused such disclosure controls and procedures to be designed under our supervision, to ensure that material information relating to the Company, including its consolidated subsidiaries, is made known to us by others within those entities, particularly during the period in which this report is being prepared;

    b)  designed such internal control over financial reporting, or caused such internal control over financial reporting to be designed under our supervision, to provide reasonable assurance regarding the reliability of financial reporting and the preparation of financial statements for external purposes in accordance with generally accepted accounting principles;

    c)  evaluated the effectiveness of the Company's disclosure controls and procedures and presented in this report our conclusions about the effectiveness of the disclosure controls and procedures, as of the end of the period covered by this report based on such evaluation; and

    d)  disclosed in this report any change in the Company's internal control over financial reporting that occurred during the Company's most recent fiscal quarter (the Company's fourth fiscal quarter in the case of an annual report) that has materially affected, or is reasonably likely to materially affect, the Company's internal control over financial reporting; and

5.  The Company's other certifying officer and I have disclosed, based on our most recent evaluation of internal control over financial reporting, to the Company's auditors and the audit committee of the Company's board of directors:

    a)  all significant deficiencies and material weaknesses in the design or operation of internal control over financial reporting which are reasonably likely to adversely affect the Company's ability to record, process, summarize and report financial information; and

    b)  any fraud, whether or not material, that involves management or other employees who have a significant role in the Company's internal control over financial reporting.

Date:  February 23, 2007              By:      /s/   JAY S. FISHMAN

                                                          **Jay S. Fishman**
                                           **Chairman and Chief Executive**
                                                 **Officer**

1

**Exhibit 31.2**

### CERTIFICATION

I, Jay S. Benet, Vice Chairman and Chief Financial Officer, certify that:

1. I have reviewed this Annual Report on Form 10-K for the year ended December 31, 2006 of The Travelers Companies, Inc. (the Company);

2. Based on my knowledge, this report does not contain any untrue statement of a material fact or omit to state a material fact necessary to make the statements made, in light of the circumstances under which such statements were made, not misleading with respect to the period covered by this report;

3. Based on my knowledge, the financial statements, and other financial information included in this report, fairly present in all material respects the financial condition, results of operations and cash flows of the Company as of, and for, the periods presented in this report;

4. The Company's other certifying officer and I are responsible for establishing and maintaining disclosure controls and procedures (as defined in Exchange Act Rules 13a-15(e) and 15d-15(e)) and internal control over financial reporting (as defined in Exchange Act Rules 13a-15(f) and 15d-15(f)) for the Company and have:

    a) designed such disclosure controls and procedures, or caused such disclosure controls and procedures to be designed under our supervision, to ensure that material information relating to the Company, including its consolidated subsidiaries, is made known to us by others within those entities, particularly during the period in which this report is being prepared;

    b) designed such internal control over financial reporting, or caused such internal control over financial reporting to be designed under our supervision, to provide reasonable assurance regarding the reliability of financial reporting and the preparation of financial statements for external purposes in accordance with generally accepted accounting principles;

    c) evaluated the effectiveness of the Company's disclosure controls and procedures and presented in this report our conclusions about the effectiveness of the disclosure controls and procedures, as of the end of the period covered by this report based on such evaluation; and

    d) disclosed in this report any change in the Company's internal control over financial reporting that occurred during the Company's most recent fiscal quarter (the Company's fourth fiscal quarter in the case of an annual report) that has materially affected, or is reasonably likely to materially affect, the Company's internal control over financial reporting; and

5. The Company's other certifying officer and I have disclosed, based on our most recent evaluation of internal control over financial reporting, to the Company's auditors and the audit committee of the Company's board of directors:

    a) all significant deficiencies and material weaknesses in the design or operation of internal control over financial reporting which are reasonably likely to adversely affect the Company's ability to record, process, summarize and report financial information; and

    b) any fraud, whether or not material, that involves management or other employees who have a significant role in the Company's internal control over financial reporting.

Date: February 23, 2007                    By:        /s/   JAY S. BENET
                                                    _____
                                                         **Jay S. Benet**
                                                **Vice Chairman and Chief Financial**
                                                           **Officer**

1

Exhibit 32.1

**THE TRAVELERS COMPANIES, INC.**
**CERTIFICATION OF CHIEF EXECUTIVE OFFICER**
**PURSUANT TO 18 U.S.C. SECTION 1350, AS ADOPTED**
**PURSUANT TO SECTION 906 OF THE SARBANES-OXLEY ACT OF 2002**

Pursuant to Rule 13a-14(b) of the Securities Exchange Act of 1934 (the "Exchange Act") and 18 U.S.C. Section 1350, the undersigned officer of The Travelers Companies, Inc. (the "Company"), hereby certifies that the Company's Annual Report on Form 10-K for the year ended December 31, 2006 (the "Report") fully complies with the requirements of Section 13(a) or 15(d) of the Exchange Act and that the information contained in the Report fairly presents, in all material respects, the financial condition and results of operations of the Company.

Date:  February 23, 2007                     By:           /S/ JAY S. FISHMAN
                                                      **Name: Jay S. Fishman**
                                                      **Title: Chairman and Chief Executive**
                                                      **Officer**

1

12

Exhibit 32.2

**THE TRAVELERS COMPANIES, INC.**
**CERTIFICATION OF CHIEF FINANCIAL OFFICER**
**PURSUANT TO 18 U.S.C. SECTION 1350, AS ADOPTED**
**PURSUANT TO SECTION 906 OF THE SARBANES-OXLEY ACT OF 2002**

Pursuant to Rule 13a-14(b) of the Securities Exchange Act of 1934 (the "Exchange Act") and 18 U.S.C. Section 1350, the undersigned officer of The Travelers Companies, Inc. (the "Company"), hereby certifies that the Company's Annual Report on Form 10-K for the year ended December 31, 2006 (the "Report") fully complies with the requirements of Section 13(a) or 15(d) of the Exchange Act and that the information contained in the Report fairly presents, in all material respects, the financial condition and results of operations of the Company.

Date: February 23, 2007             By:          /S/ JAY S. BENET
                                                 **Name: Jay S. Benet**
                                         **Title: Vice Chairman and Chief**
                                              **Financial Officer**

1

Created by 10K Wizard    www.10KWizard.com

13

EXHIBIT "B"



# STATE OF CONNECTICUT

*INSURANCE DEPARTMENT*

```
———————————————————————————————————————————X
In the Matter of:                                   :

PROPOSED ACQUISITION OF CONTROL OF OR MERGER WITH    :
                                                    :
THE STANDARD FIRE INSURANCE COMPANY; THE AUTOMOBILE INSURANCE   :
COMPANY OF HARTFORD, CONNECTICUT; TRAVELERS PERSONAL SECURITY   :
INSURANCE COMPANY; TRAVELERS PROPERTY CASUALTY INSURANCE   :
COMPANY; THE TRAVELERS INDEMNITY COMPANY; GULF INSURANCE   :
COMPANY; GULF UNDERWRITERS INSURANCE COMPANY; THE CHARTER   :
OAK FIRE INSURANCE COMPANY; THE PHOENIX INSURANCE COMPANY;   :
THE TRAVELERS INDEMNITY COMPANY OF AMERICA; THE TRAVELERS   :
INDEMNITY COMPANY OF CONNECTICUT; THE TRAVELERS HOME AND   :
MARINE INSURANCE COMPANY; TRAVCO INSURANCE COMPANY;   :
TRAVELERS COMMERCIAL CASUALTY COMPANY; TRAVELRS CASUALTY   :
AND SURETY COMPANY; FARMINGTON CASUALTY COMPANY; TRAVELERS   :
CASUALTY AND SURETY COMPANY OF AMERICA; TRAVELERS CASUALTY   : Docket No. EX 04-20
COMPANY OF CONNECTICUT; TRAVELERS COMMERCIAL INSURANCE   :
COMPANY; TRAVELERS EXCESS AND SURPLUS LINES COMPANY; TRAVELERS   :
PERSONAL INSURANCE COMPANY; TRAVELERS PROPERTY CASUALTY   :
COMPANY OF AMERICA; and TRAVELERS CASUALTY INSURANCE   :
COMPANY OF AMERICA,                                 :
                                                    :
each an indirect, wholly owned Connecticut domiciled subsidiary of   :
                                                    :
TRAVELERS PROPERTY CASUALTY CORP., a Connecticut insurance holding   :
company                                             :
                                                    :
by                                                  :
                                                    :
THE ST. PAUL COMPANIES, INC., a corporation organized under the laws of   :
the State of Minnesota                              :
———————————————————————————————————————————X
```

## ORDER

I, Susan F. Cogswell, Insurance Commissioner of the State of Connecticut, having read the record and having been in attendance at the public hearing on February 10, 2004 related to the captioned matter, hereby adopt the findings and recommendations of Mark R. Franklin, Hearing Officer, and issue the following orders, TO WIT:

1.      The Application of The St. Paul Companies, Inc. ("St. Paul" or the "Applicant") in which it seeks approval to acquire control of certain Connecticut-domiciled indirect wholly-owned subsidiaries of Travelers Property Casualty Corp. ("Travelers"), specifically, The Standard Fire Insurance Company, the Automobile Insurance Company of Hartford, Connecticut, Travelers Personal Security Insurance

14

Company, Travelers Property Casualty Insurance Company, The Travelers Indemnity Company, Gulf Insurance Company, Gulf Underwriters Insurance Company, The Charter Oak Fire Insurance Company, The Phoenix Insurance Company, The Travelers Indemnity Company of America, The Travelers Indemnity Company of Connecticut, The Travelers Home and Marine Insurance Company, Travco Insurance Company, Travelers Commercial Casualty Company, Travelers Casualty and Surety Company, Farmington Casualty Company, Travelers Casualty and Surety Company of America, Travelers Casualty Company of Connecticut, Travelers Commercial Insurance Company, Travelers Excess and Surplus Lines Company, Travelers Personal Insurance Company, Travelers Property Casualty Company of American and Travelers Insurance Company of America (collectively, the "Domestic Insurers" or the "Travelers Companies"), is hereby approved.

2.    The Applicant shall provide the Insurance Department with written confirmation of the consummation of the acquisition of control by St. Paul of the Domestic Insurers.

3.    The Applicant and the Domestic Insurers shall comply with the commitments made to the State of Connecticut in connection with this proceeding as described in paragraphs 59 to 72 of the Proposed Final Decision dated March 2, 2004.

4.    For a period of three (3) years, the Domestic Insurers shall file semiannually with the Insurance Department, commencing six months from consummation of the transaction, a report of its business operations in Connecticut, including but not limited to, changes to the business of the Domestic Insurers and employment; as well as compliance with the commitments made to the State of

2

15

Connecticut in connection with this proceeding as described in paragraphs 59 to 72 of the Proposed Final Decision.

5.     Within fifteen (15) days following the end of the month in which the Proposed Acquisition is consummated, the Domestic Insurers shall file an amended Insurance Holding Company System Annual Registration Statement pursuant to Conn. Agencies Regs. §38a-138-10.

6.     If the proposed transaction is not consummated within three (3) months of the date of this Order and St. Paul intends to consummate the proposed transaction, St. Paul shall submit to the Commissioner a statement, which shall include (1) the reason for the inability to consummate the proposed transaction; (2) any material changes in the information contained in the Form A Statement; and (3) the current financial statements of the St. Paul and the Domestic Insurers.

7.     The Domestic Insurers shall, at all times, maintain their books and records in Connecticut, unless otherwise approved by the Commissioner.

8.     The Applicant shall pay all expenses incurred by the Department in connection with the Form A proceedings pursuant to Conn. Gen. Stat. §38a-132(c).

Dated at Hartford, Connecticut, this 3rd day of March, 2004.

Susan F. Cogswell
Insurance Commissioner

3

16

share ("Travelers Class B Common Stock" and, together with the Travelers Class A Common Stock, the "Travelers Common Stock"), together with associated preferred stock purchase rights, will be converted into the right to receive 0.4334 share of St. Paul common stock, no designated par value ("St. Paul Common Stock"). Based on (1) the closing price of St Paul Common Stock on the New York Stock Exchange of $36.77 on November 14, 2003, the last trading day before the announcement of the Merger Agreement, and (2) an aggregate of 1,004,889,793 shares of Travelers Common Stock issued and outstanding as of October 31, 2003, the total value of the consideration for the Proposed Transaction would be approximately $16 billion.

4.    No cash consideration will be paid in connection with the Proposed Transaction, except that holders of Travelers Common Stock that are to receive fractional shares of St. Paul Common Stock will instead receive cash for those shares.

5.    No borrowings or debt will be a source of any of the consideration to effect the Proposed Transaction.

6.    As a result of the Proposed Transaction, Travelers will become a direct, wholly owned subsidiary of St. Paul and all of the current subsidiaries of Travelers, including the Domestic Insurers, will become indirect wholly owned subsidiaries of St. Paul. St. Paul will simultaneously change its name to The St. Paul Travelers Companies, Inc. ("St. Paul Travelers"), which will remain a Minnesota corporation with its corporate headquarters in St. Paul, Minnesota.

7.    The nature and amount of the consideration to be paid in connection with the Proposed Transaction were determined through arm's-length negotiations among the parties to the Merger Agreement.

17

The Applicant will not change the boards of directors of the Domestic Insurers immediately following the Proposed Transaction. A number of current Travelers executives will lead the combined operations following the Proposed Transaction.

Accordingly, the competence, experience and integrity of those persons who would control the operations of the Domestic Insurers after the proposed acquisition of control is such that it would reflect in favor of policyholders of the insurance companies, and in the public interest.

**F.      The effect of the proposed Acquisition of Control of the Domestic Insurers on those buying insurance.**

Financially, the record as described at length above, indicates that the combined company will be financially strong.

Mr. Fishman testified that there will be no disruption in the marketplace in the availability of surety products to small contractors. He also testified that the post-merger company will continue to offer conventional contract surety bonds. Mr. Fishman also testified that there are no plans by the combined company to withdraw from any personal lines business, and gave assurances that there will be no disruption in the personal lines marketplace. While St. Paul exited the medical malpractice market in 2001, he testified that there are no plans to withdraw from any other line of insurance.

Based on the foregoing, it is reasonable to conclude that the proposed acquisition of control of the Domestic Insurers is not likely to be hazardous to those buying insurance.

18

# PROOF OF SERVICE

STATE OF CALIFORNIA, COUNTY OF LOS ANGELES

I am employed by BALL & ROBERTS in the County of Los Angeles, State of California. I am over the age of 18 and not a party to the within action; my business address is 20 North Raymond Avenue, Pasadena, California 91103

On May 2, 2008, I served the foregoing document(s) described as DECLARATION OF JOHN A. ROBERTS IN SUPPORT OF PLAINTIFFS' OPPOSITION TO MOTION TO DISMISS on the interested parties in this action as stated on the attached service list as follows:

☑     By placing true copies thereof enclosed in sealed envelope(s) addressed as stated on the attached service list.

☑     BY MAIL (CCP §1013(a)&(b)):

I am "readily familiar" with the firm's practice of collection and processing correspondence for mailing. Under that practice such envelope(s) would be deposited with the U.S. postal service on that same day with postage thereon fully prepaid at 20 North Raymond Avenue, Pasadena, California, in the ordinary course of business. I am aware that on motion of the party served, service is presumed invalid if postal cancellation date or postage meter date is more than one day after date of deposit for mailing in affidavit.

☑     BY ELECTRONIC SUBMISSION: I caused such documents to be submitted electronically to the United State District Court-Northern District to be posted to the website with notice given to all parties that the document was served.

Executed on May 2, 2008 at Pasadena, California.

☐     **(STATE)** I declare under penalty of perjury under the laws of the State of California that the above is true and correct.

☑     **(FEDERAL)** I declare that I am employed in the office of a member of the Bar of this Court at whose direction the service was made. I declare under penalty of perjury under the laws of the United States of America that the above is true and correct.

_____
Maria Blanco

DECLARATION OF JOHN A. ROBERTS IN SUPPORT OF PLAINTIFFS' OPPOSITION
MOTIONS TO DISMISS

## ATTACHED SERVICE LIST

Kevin G. McCurdy
Elisabeth H. Baum
McCurdy & Fuller, LLP
4300 Bohannon Drive
Suite 240
Menlo Park, CA 94025
Tel: (650) 618-3500
Fax: (650) 618-3599
Email: kevin.mccurdy@mccurdylawyers.com
Email: elisabeth.baum@mccurdylawyers.com
ATTORNEY FOR DEFENDANT
LEXINGTON INSURANCE COMPANY

David T. Dibiase
David J. Billings
Anderson, McPharlin & Conners, LLP
Thirty-First Floor
444 South Flower Street
Los Angeles, CA 90071
Tel: (213) 688-0080
Fax: (213) 622-7594
Email: dtd@amclaw.com
Email: djb@amclaw.com
ATTORNEY FOR DEFENDANTS
GULF UNDERWIRTERS INSURANCE
COMPANY and THE TRAVELERS
INDEMNITY COMPANY, successor in
interest by merger to Gulf Insurance
Company

DECLARATION OF JOHN A. ROBERTS IN SUPPORT OF PLAINTIFFS' OPPOSITION
MOTIONS TO DISMISS