

KEVIN G. McCURDY (SBN 115083)
McCURDY & FULLER LLP
4300 Bohannon Drive, Suite 240
Menlo Park, California 94025
Phone: (650) 618-3500
Fax: (650) 618-3599
E-mail: kevin.mccurdy@mccurdylawyers.com

Attorneys for Defendant
LEXINGTON INSURANCE COMPANY

McCURDY & FULLER LLP
4300 Bohannon Drive, Suite 240
Menlo Park, CA 94025
(650) 618-3500

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA, SAN JOSE DIVISION

| | |
|---|---|
| ELWYN PATOC, ERIC PATOC, ELVY PATOC, EDWARD PATOC,<br><br>Plaintiffs,<br><br>vs.<br><br>LEXINGTON INSURANCE COMPANY, GULF UNDERWRITERS INSURANCE COMPANY, GULF INSURANCE COMPANY, THE TRAVELER'S COMPANY, INC., THE TRAVELER'S INDEMNITY COMPANY; and DOES 1-100,<br><br>Defendants. | Case No.: C08 01893 RMW<br><br>**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF LEXINGTON INSURANCE COMPANY'S REPLY TO OPPOSITION TO MOTION TO DISMISS**<br><br>**Date: May 23, 2008**<br>**Time: 9:00 a.m.**<br>**Ctrm: 6, 4th Floor**<br>**Judge: Ronald M. Whyte** |

## I.

## INTRODUCTION

Plaintiffs' claims against defendant Lexington Insurance Company ("Lexington") must fail as they are contrary to fundamental insurance principles governing excess policies. Plaintiffs concede Lexington's excess policy does not attach until the underlying policy limits of $1,000,000 have been exhausted. Plaintiffs contend the policies underlying Lexington's policy provide coverage for the underlying wrongful death action. Finally, plaintiffs acknowledge the stipulated settlement of the wrongful death action was in the amount of $1,000,000. Plaintiffs can never assert a claim against Lexington under these facts because Lexington never had any duty to defend

the wrongful action and the settlement of the wrongful action is within the policy limits of the underlying policies.

Plaintiffs do not cite a single California case that supports their misguided claim against Lexington. They ignore the numerous cases supporting Lexington's position. The only case on which plaintiffs rely has nothing to do with the situation before this Court.

As an excess insurer, Lexington has no obligation to defend its insured until the underlying limits have been exhausted, even if the primary insurer refuses to provide a defense. Further, as an excess insurer, Lexington has no obligation to indemnify for a judgment or settlement unless that judgment or settlement exceeds the underlying policy limits. Since plaintiffs allege the underlying policies are not exhausted and the underlying settlement is within the underlying policy limits, Lexington has no obligation. Lexington's motion to dismiss should be granted without leave to amend.

McCURDY & FULLER LLP
4300 Bohannon Drive, Suite 240
Menlo Park, CA 94025
(650) 618-3500

## II.

## LEXINGTON HAS NO OBLIGATION BECAUSE PLAINTIFFS DO NOT ALLEGE EXHAUSTION OF THE UNDLERYING POLICIES AND THE STIPULATED JUDGMENT IS WITHIN THE LIMITS OF THE UNDERLYING POLICIES

Plaintiffs seek coverage for a stipulated judgment between plaintiffs and Lexington's insured, Pro Transportation, in the amount of $1,000,000. (Request for Judicial Notice "RJN", Ex. A, ¶ 44.) Plaintiffs allege defendants Gulf Insurance Company and Gulf Underwriters Insurance Company issued primary and excess automobile liability insurance to Pro Transportation, with each policy containing a $500,000 limit of liability. (*Id.*, ¶ 14, 23.) Plaintiffs then allege Lexington issued an excess follow form policy to Pro Transportation in which Lexington promised to pay sums Pro Transportation "became legally obligated to pay for liability in excess of $1,000,000…" (*Id.*, ¶ 27.) Plaintiffs do not allege that the underlying Gulf policies are exhausted by payments in settlement of the wrongful death action and they do not allege a liability in excess of $1,000,000. Indeed, plaintiffs contend Gulf did not exhaust its policies and Gulf owes $1,000,000 for the wrongful death action. (Plaintiffs' Opposition to Gulf's Motion to Dismiss

28317

- 2 -

Memorandum of Points and Authorities in Support of Lexington Insurance Company's Reply to Opposition to Motion To Dismiss
CV08 01893 RMW

"Gulf Opp." at 3:7-6:2.) These allegations confirm plaintiffs can never state a claim against Lexington.

Plaintiffs falsely claim an excess insurer cannot require exhaustion of underlying insurance when the primary insurer has refused to defend. In fact, as numerous California cases confirm, this is precisely what an excess insurer may do. A contrary result would turn an excess insurer into a primary insurer. The primary insurer owes the exclusive duty to defend even if the underlying claims might exceed the primary limits of coverage. *Signal Insurance Companies v. Harbor Insurance Company* (1980) 27 Cal.3d 359, 368. It is well settled under California law that an excess policy does not cover a loss, nor does any duty to defend the insured arise, until all the primary insurance has been exhausted. *Community Redevelopment Agency v. Aetna Casualty & Surety Company* (1996) 50 Cal.App.4th 329, 339; *Padilla Construction Company, Inc. v. Transportation Insurance Company* (2007) 150 Cal.App.4th 989, 986.

The court in *American Casualty Company of Reading v. General Star Indemnity Company* (2005) 125 Cal.App.4th 1510, recently confirmed the fact that an excess insurer is not obligated to participate in defense or indemnity of an underlying action that is within the underlying policy limits:

> "In short, excess insurance is insurance that is expressly understood by both the insurer and insured to be secondary to specific underlying coverage which will not begin until *after* that underlying coverage is exhausted and which does not broaden that underlying coverage. [Citation.]" (Citations omitted.) As we have indicated, General Star's umbrella policy was such excess insurance.
>
> These authorities establish that General Star could have no liability to contribute to the defense or indemnity of Carolco, in any event, unless and until the primary coverage provided to Carolco had been exhausted. It is undisputed that, in this case, the defense of Carolco and discharge of the Martishius judgment was within the primary coverage of TIG and American. These were the primary insurers. General Star's umbrella policy expressly provides excess coverage. Since the primary coverage had not been exhausted, General Star's duty to drop down and provide any coverage never arose and, as a result, it had no obligation to contribute to the defense or indemnity expenses incurred by American in the resolution of the Martishius action. *Id.* at 1521.

28317 - 3 -

**Memorandum of Points and Authorities in Support of Lexington Insurance Company's Reply to Opposition to Motion To Dismiss**
**CV08 01893 RMW**

McCURDY & FULLER LLP
4300 Bohannon Drive, Suite 240
Menlo Park, CA 94025
(650) 618-3500

A primary insurer's refusal to defend, whether correct or not, has no impact on the excess insurer's obligations. The excess insurer has no obligation to defend simply because a primary insurer refuses to defend. *Ticor Title Insurance Company v. Employers Insurance of Wausau* (1995) 40 Cal.App.4th 1699, 1708-1709; *Republic Western Insurance Company v. Fireman's Fund Insurance Company* (N.D.Cal. 2003) 241 F.Supp.2d 1090, 1096. As the *Republic Western* Court noted:

> However, an excess insurer has no duty to defend where the primary insurer refused the tender of defense. The duty to defend by the primary carrier, in this case Fireman's Fund, arose when there was a claim for damages for an occurrence under the policy and no defense coverage was provided. So long as defense obligations were payable, regardless of whether they were actually paid by the primary carrier, there was no duty to defend under Republic Western's excess policy. *Id.*

Here, plaintiffs allege the underlying Gulf primary and excess policies provide coverage for the wrongful death action. Gulf's alleged refusal to defend the underlying action has no relevance to Lexington's obligations. As the case law makes clear, plaintiffs cannot convert the Lexington policy from an excess policy to a primary policy by simply arguing that the primary insurers improperly refused to defend. The Lexington policy remains an excess policy under which exhaustion of all underlying insurance is required before Lexington has an obligation to defend or indemnify. Thus, plaintiffs can never state a claim against Lexington.

Plaintiffs rely on a single case, *Fuller-Austin Insulation Company v. Highlands Insurance Company* (2006) 135 Cal.App.4th 958, to support their misguided position regarding exhaustion. *Fuller-Austin* has nothing to do with the claims before this Court, which is why plaintiffs do not bother to explain the issues before the *Fuller-Austin* Court. In *Fuller-Austin*, the Court examined the "effect of an insured's bankruptcy...on an excess insurer's obligations." *Id.* at 966. In particular, the primary issue before the Court was the trial court's ruling that the insured's confirmed bankruptcy plan was an adjudication that established the insured's liability with respect to thousands of asbestos claims or, alternatively, that the confirmed plan constituted a settlement

McCURDY & FULLER LLP
4300 Bohannon Drive, Suite 240
Menlo Park, CA 94025
(650) 618-3500

28317

- 4 -

Memorandum of Points and Authorities in Support of Lexington Insurance Company's Reply to Opposition to Motion To Dismiss
CV08 01893 RMW

for which the excess insurers' consent was not necessary. The jury concluded the value of the present and future asbestos claims against the insured exceeded $850 million. *Id.* at 974.

The Court of Appeal rejected the contention that the confirmed plan represented an adjudication of the insured's liability. However, the Court agreed that the confirmed plan constituted a settlement. The Court then addressed the excess insurers' contentions that they had no obligation to cover the settlement because they did not consent to it. *Id.* at 985-987. It is this portion of the opinion that plaintiffs cite.

*Fuller-Austin* is irrelevant here for a number of reasons. Lexington has not raised the issue of consent to settlement in its motion to dismiss.[1] This motion is based on the fact that plaintiffs allege the underlying policies are not exhausted with respect to the underlying wrongful death action. The *Fuller-Austin* Court did not address exhaustion issues. In addition, the underlying claims in *Fuller-Austin* implicated the insurers' umbrella and excess coverage. *Id.* at 989. In contrast, here, the underlying wrongful death action settled for an amount within the primary limits. *Fuller-Austin* does not alter the well established rule requiring exhaustion of underlying insurance before an excess insurer has an obligation. Indeed, the Court confirmed that "excess insurance provides coverage after other identified insurance is no longer on the risk." *Id.* at 967, n. 1. Here, plaintiffs expressly allege the underlying insurance is on the risk.

Plaintiffs also suggest the issue before this Court is whether Lexington is "presumptively bound" by the underlying settlement. (Opposition "Opp." at 9.) Plaintiffs are wrong. This motion does not raise the issue of whether Lexington is bound by the underlying settlement, it raises the threshold issue of whether Lexington could ever have a duty to indemnify the underlying settlement when it was for an amount within the underlying policy limits, plaintiffs do not allege exhaustion of underlying limits, and plaintiffs allege the underlying policies cover the settlement. Plaintiffs make no attempt to explain why an excess policy that attaches in excess of $1,000,000 would be required to fund a settlement of $1,000,000.

California law is clear. Lexington had no duty to defend the wrongful death action because

[1] If this action proceeds, consent issues may arise, but they are not at issue in this motion.

28317 - 5 -

**Memorandum of Points and Authorities in Support of Lexington Insurance Company's Reply to Opposition to Motion To Dismiss CV08 01893 RMW**

McCURDY & FULLER LLP
4300 Bohannon Drive, Suite 240
Menlo Park, CA 94025
(650) 618-3500

the underlying policy limits were never exhausted. Lexington had no duty to indemnify the stipulated judgment in the wrongful death action because it is for an amount within the underlying policy limits. Plaintiffs' opposition to Gulf's motion to dismiss confirms Lexington's position, as plaintiffs now contend the underlying claims against Pro Transportation involved two separate accidents, each of which required the underlying insurers to pay a separate policy limit. (Gulf Opp. at 4:6 – 6:2.)

**III.**

**PLAINTIFFS ALLEGE LEXINGTON PAID ITS POLICY LIMIT SO LEXINGTON HAS NO FURTHER OBLIGATION**

Plaintiffs' failure, and inability, to allege exhaustion of underlying coverage requires that Lexington's motion be granted. In addition, there is a second, independent basis to grant this motion. Plaintiffs allege that Lexington paid its policy limit to settle the underlying personal injury action.[2] Plaintiffs do not dispute that an insurer has no further obligation to its insured once it has paid the full limit of its policy in settlement of claims against the insured. *See Safeco Insurance Company of America v. Fireman's Fund Insurance Company* (2007) 148 Cal.App.4th 620, 638.

Plaintiffs' response to Lexington's position on this issue is convoluted and does not squarely address the allegations of plaintiffs' complaint. Plaintiffs complain that Lexington "now asserts its policy has 'occurrence' limits" and "Lexington then attempts to bootstrap these 'occurrence' limits into an exhaustion argument." (Opp. at 6:1-2.) Lexington did not assert that its policy has "occurrence" limits. Lexington cannot make that assertion in this motion. Lexington's motion is based solely on the allegations of plaintiffs' complaint. Plaintiffs do not allege any specific policy language regarding the nature of Lexington's limit of liability other than the amount of $1,000,000, and they do not attach Lexington's policy to their complaint. The

---

[2] Specifically, plaintiffs allege "the lawsuit settled in December 2005 for the policy limits of each of Pro Transportation's insurers as follows: Gulf Ins. Co. Commercial Auto - $500,000 limit; Gulf Underwriters Ins. Co. Excess Business Auto Policy - $500,000 limit; Lexington Ins. Co. Excess Liability Policy - $1,000,000 limit." (RJN, Ex. A, ¶ 36.)

28317 - 6 -

Memorandum of Points and Authorities in Support of Lexington Insurance Company's Reply to Opposition to Motion To Dismiss
CV08 01893 RMW

McCURDY & FULLER LLP
4300 Bohannon Drive, Suite 240
Menlo Park, CA 94025
(650) 618-3500

"occurrence" language is not currently before the Court because Lexington's policy is not before the Court. Thus, plaintiffs' discussion of the purported difference between accident limits and occurrence limits is irrelevant at this point because plaintiffs do not allege that the Lexington policy has either accident limits or occurrence limits.[3]

Lexington's position on this issue is simple. Plaintiffs concede the Lexington policy has a limit of liability and Lexington paid that limit of liability to settle the underlying personal injury action. (RJN, Ex. A, ¶ 36.) Although plaintiffs allege the Lexington policy does not have "per accident" limits of liability, they do not allege what type of limit the Lexington policy has. They simply allege the Lexington policy has a $1,000,000 limit that was paid. They do not allege the Lexington policy contains a "per person" or "occurrence" limit of liability.

Certainly, plaintiffs must believe the alleged Lexington limit of liability has some meaning, otherwise there would be no need to mention it and plaintiffs would allege the Lexington policy has an unlimited amount of money available for automobile claims. However, even plaintiffs do not take this absurd position. Having alleged the Lexington policy contains a $1,000,000 limit of liability and having alleged Lexington paid that limit of liability for the underlying personal injury action, plaintiffs do not allege facts to support their apparent contention that Lexington must pay something beyond it limit of liability.

Plaintiffs seek to avoid this problem by now contending that the wrongful death complaint alleged two separate "accidents" and therefore, Lexington and Gulf are required to pay an additional limit of liability even though they already paid a limit of liability to settle the personal injury action. (Opp. at 7:15-24.) There are obvious problems with this argument. First, plaintiffs do not allege the wrongful death action involved two separate accidents. They allege Mercedes Patoc sustained a head injury while riding in Pro Transportation's van and she ultimately died "due to the injury sustained in the March 16, 2005 *accident*." (RJN, Ex. A, ¶¶ 35, 37.) (Emphasis

---

[3] Not only do plaintiffs fail to allege the type of limit the Lexington policy contains, they do not allege the policy definition of occurrence, although they apparently believe the policy has an "occurrence" limit. Had plaintiffs alleged policy language or attached to the complaint the portions of the Lexington policy that lead plaintiffs to conclude the policy has occurrence limits, the parties could address specific policy language.

28317

- 7 -

**Memorandum of Points and Authorities in Support of Lexington Insurance Company's Reply to Opposition to Motion To Dismiss**
**CV08 01893 RMW**

McCURDY & FULLER LLP
4300 Bohannon Drive, Suite 240
Menlo Park, CA 94025
(650) 618-3500

added.) Second, plaintiffs specifically allege the Lexington policy does not have "per accident" limits so it is unclear why the new allegation of multiple accidents impacts Lexington's liability. Finally, and most important, Lexington can never be liable for the wrongful death action when plaintiffs allege that it involved two accidents and that the underlying Gulf policies provide coverage for that action. As set forth above, plaintiffs contend the underlying policies were not exhausted and the settlement was within the limits of those policies. Therefore, Lexington never had any obligation with respect to the wrongful death action under its excess policy.

## IV.

## CONCLUSION

Despite their efforts at creative lawyering, plaintiffs cannot state a claim against Lexington that would allow them to recover on the stipulated judgment. Lexington already paid its $1,000,000 policy limit to settle claims arising out of the March 16, 2005 accident that allegedly caused the death of Mercedes Patoc. In addition, the $1,000,000 stipulated judgment in the wrongful death action does not reach the attachment point of the Lexington policy and therefore, Lexington has no obligation with respect to the judgment. Lexington requests that the Court grant this motion to dismiss without leave to amend.

Dated: May 8, 2008

McCURDY & FULLER, LLP

KEVIN G. McCURDY
Attorneys for Defendant
LEXINGTON INSURANCE COMPANY

McCURDY & FULLER LLP
4300 Bohannon Drive, Suite 240
Menlo Park, CA 94025
(650) 618-3500

28317

- 8 -

Memorandum of Points and Authorities in Support of Lexington Insurance Company's Reply to Opposition to Motion To Dismiss
CV08 01893 RMW