**E-FILED on** 08/05/08

IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| ELWYN PATOC, ERIC PATOC, ELVY PATOC, EDWARD PATOC,<br><br>Plaintiffs,<br><br>v.<br><br>LEXINGTON INSURANCE COMPANY, GULF UNDERWRITERS INSURANCE COMPANY, THE TRAVELERS'S COMPANY, INC., THE TRAVELER'S INDEMNITY COMPANY, and DOES 1-100<br><br>Defendant. | Case No. 08-01893 RMW (PVT)<br><br>ORDER GRANTING MOTIONS TO DISMISS WITHOUT LEAVE TO AMEND<br><br>[re: docket nos. 10, 14] |

Defendants Gulf Underwriters Insurance Company ("Gulf Underwriters"), the Travelers Indemnity Company, on behalf of itself and as successor in interest by merger to Gulf Insurance Company ("Gulf Insurance Company"), and The Travelers Companies Inc. ("Travelers Companies"), erroneously named as The Traveler's Company, Inc.,[1] move to dismiss the complaint filed by Plaintiffs Elwyn Patoc, Eric Patoc, Elvy Patoc, and Edward Patoc (collectively, "Plaintiffs"). Separately, Defendant Lexington Insurance Company ("Lexington") moves to dismiss Plaintiffs' complaint as to it. For the reasons discussed below, the motions will be granted without leave to amend.

---

[1] These parties will collectively be referred to as "Gulf."

ORDER GRANTING MOTIONS TO DISMISS WITHOUT LEAVE TO AMEND No. C-09-01893 RMW (PVT)
JSS

# I. BACKGROUND

On March 16, 2005, Plaintiffs' mother, Mercedes Patoc ("Patoc"), was a passenger in a medical transport van owned and operated by Pro Transportation. The driver of the van was Delia Rodriguez ("Rodriguez"). Rodriguez was a full time employee of Pro Transportation. Rodriguez failed to properly secure Patoc's wheelchair in the van and while the van was in motion, Patoc fell backwards and struck her head. As a result of the fall, Patoc was hospitalized with serious injuries.[2]

On August 17, 2005, Patoc, through her son, filed a lawsuit in Monterey County Superior Court against Pro Transportation and Rodriguez. This lawsuit settled in December, 2005 for the policy limits of each of Pro Transportation's insurance carriers' policies as follows: Gulf Insurance Company Commercial Auto Policy–$500,000 per accident limit; Gulf Underwriters Excess Business Auto Policy–$500,000 per accident limit; Lexington Excess Liability Policy–$1,000,000 limit. Pursuant to the settlement, Patoc's case was dismissed with prejudice.

In March 2006, Patoc died as a result of the injuries she sustained in the March 16, 2005 accident. On June 30, 2006, Patoc's heirs, Plaintiffs, filed a wrongful death lawsuit against Pro Transportation, Rodriguez, and MV Transportation Services, who was the successor in interest to Pro Transportation.

After being served with the wrongful death lawsuit, Pro Transportation gave notice to Defendants Gulf Insurance Company, Gulf Underwriters, and Lexington of the claim and requested indemnity and defense for the loss. Each denied the claim. Pro Transportation subsequently entered into a settlement with Plaintiffs. Pro Transportation then assigned to Plaintiffs its action against its insurers for breach of their investigation, indemnity and defense duties. In September 2007, the parties entered into a written settlement agreement that included a covenant not to execute, and an assignment of rights. The parties stipulated to a judgment in the amount of $1,000,000.00 plus interest from the date of entry of judgment. The court entered judgment on stipulation on November

---

[2] Although not alleged in the complaint filed against the Defendants, Plaintiffs allege in their papers that following the accident, Rodriguez did not seek medical attention for Patoc. Rather, Rodriguez transported her back to her home. These facts are alleged in the wrongful death complaint filed against Pro Transportation, of which Gulf seeks judicial notice.

1  20, 2007.  On February 8, 2008, Plaintiffs filed the instant action in Monterey County Superior

2  Court.  On April 8, 2008, Defendants removed the case to this Court on the basis of diversity.[3]

3          According to the complaint, Pro Transportation was the named insured under the Gulf

4  Insurance Company's primary business automobile policy, which had a "per accident" policy limit

5  of $500,000 and was the named insured under an excess follow-form automobile policy issued by

6  Gulf Underwriters with a "per accident" policy limit of $500,000.  The complaint further alleges Pro

7  Transportation was the named insured under an excess follow-form policy issued by Lexington with

8  no "per accident" limits.  This policy included both excess automobile liability coverage as well as

9  excess general liability coverage.  The Plaintiffs allege that the automobile liability coverage part

10  was triggered by an accident resulting from the use of a covered automobile and that the auto-

11  liability coverage had no "per accident" limits.  Lexington's automobile liability coverage was

12  excess over the Gulf Insurance Company's primary policy $500,000 limit and the Gulf Underwriters

13  excess automobile policy $500,000 limit.   Finally, the complaint alleges that as a consequence of

14  Defendants' allegedly wrongful failure to defend the wrongful death action, Pro Transportation was

15  left without a defense.  As a result, Pro Transportation entered into a settlement agreement with the

16  Plaintiffs.  Plaintiffs now seek to recover the amount of the stipulated judgment from Defendants.

## II. ANALYSIS

18          For purposes of a motion to dismiss, the plaintiff's allegations are taken as true, and the

19  Court must construe the complaint in the light most favorable to the plaintiff.  *Jenkins v. McKeithen*,

20  395 U.S. 411, 421 (1969).  "A court may dismiss a complaint only if it is clear that no relief could be

21  granted under any set of facts that could be proved consistent with the allegations."  *Hishon v. King*

22  *& Spaulding*, 467 U.S. 69, 73 (1984).  Furthermore, leave to amend must be granted unless it is clear

23  that the complaint's deficiencies cannot be cured by amendment.  *Lucas v. Department of*

24  *Corrections*, 66 F.3d 245, 248 (9th Cir. 1995).  When amendment would be futile, however,

25  dismissal may be ordered with prejudice.  *Dumas v. Kipp*, 90 F.3d 386, 393 (9th Cir. 1996).

---

[3] Lexington asks the Court to take notice pursuant to Federal Rule of Evidence 201of Plaintiffs' Complaint for Direct Action under Insurance Code § 11580, Bad Faith and Breach of Contract, filed on February 8, 2006 in Monterey County Superior Court, Case No. M89054 and removed to this Court April 9, 2008.  Because this complaint is already before the Court as an exhibit to the Notice of Removal, the Court does not need to take judicial notice of this complaint.

*United States District Court*
*For the Northern District of California*

**A. Gulf's Motion to Dismiss**

    **1.    Judicial Notice**

In support of its motion to dismiss, Gulf asks the Court to take notice pursuant to Federal Rule of Evidence 201 of the following documents: (1) Gulf Insurance Company's Commercial Auto Policy to Pro Transportation, Policy No. BA0340375-00, bearing a per accident liability limit of $500,000; (2) Gulf Underwriters Insurance Company Excess Liability Policy, Policy No. GU0340523, bearing a per accident liability amount of $500,000; (3) Plaintiffs' Complaint filed August 17, 2005, against Pro Transportation Services, Inc. and Delia Rodriguez in Monterey County, Case No. M75716 ("the first case"); (4) Plaintiffs' Complaint for Wrongful Death, Negligent Hiring, Training, Monitoring, Products Liability, Common Carrier Liability, filed on June 30, 2006, in Monterey County Superior Court, Case No. M79820.

Under the "incorporation by reference" doctrine, the Court may consider documents that are referenced in the complaint and that are accepted by all parties as authentic, even if the documents are not physically attached to the complaint. *In re Silicon Graphics, Inc.*, 183 F.3d 970, 986 (9th Cir. 2003). Plaintiffs' complaint specifically refers to both of the insurance policies and the cases. In addition, Plaintiffs do not object to the Court taking judicial notice to these documents. Accordingly, Gulf's request to take judicial notice of these documents will be granted.

    **2.    Gulf's Motion**

Gulf argues that Plaintiffs' complaint must be dismissed because the policies are exhausted. Gulf alleges that Pro Transportation was insured under three policies. The primary policy was the Commercial automobile policy issued by Gulf Insurance Company, Policy No. BA0340375-00, bearing a liability limit of $500,000 per accident. Gulf Underwriters wrote the excess liability policy, Policy No. GU0340523, which provided an additional $500,000 of coverage per accident. Finally, Lexington provided an excess follow-form policy over the Gulf policies that had a limit liability of $1,000,000. As alleged in the complaint, the first case settled in December 2005, with the payment of the policy limit of $500,000 for the primary policy, $500,000 from the first excess policy, and $1,000,000 from the second excess policy. (Compl. ¶ 36.) Thus, according to Gulf, as demonstrated by the factual allegations of the complaint, the policy limits of the primary policy and

the first excess policy were paid to settle the first case and any duty to defend or settle ended when those policy limits were exhausted. Accordingly, Plaintiffs' complaint must be dismissed.

Plaintiffs submit that Gulf's exhaustion argument is without merit because decedent was involved in two accidents and that the payments by the carriers only exhausted their limits for one of those accidents. Specifically, Plaintiffs claim that the first accident occurred when Patoc's wheelchair, which had not been secured, fell backwards while Rodriguez drove the van causing Patoc to strike her head and that the second accident occurred when Rodriguez drove Patoc home in the van after the fall rather than seeking necessary medical treatment. Therefore, argue Plaintiffs, Gulf has an unexhausted limit of $500,000 per accident on its automobile policy and another $500,000 on its excess policy that should be available to the Plaintiffs.

In *United Services Auto. Ass'n v. Baggett*, 209 Cal. App. 3d 1387 (1989)[4], the court analyzed the question of whether there were one or two accidents under the "per accident " limitation in an automobile insurance contract under circumstances similar to those here. In *Baggett*, a vehicle insured by United Services Automobile Association ("USAA") struck another vehicle from the rear. The drivers then drove a little further and stopped their vehicles to talk about the accident. The driver of the USAA insured vehicle allegedly stopped without displaying any hazard lights or other warning to oncoming traffic and guided the other driver to an unsafe location. A third vehicle then collided with the USAA insured vehicle knocking it into the other driver killing her. The court of appeal affirmed the trial court's summary determination that the two collisions constituted one accident within the meaning of the USAA automobile policy. It pointed out that a single, uninterrupted course of conduct which gives rise to injuries is one accident. In other words, the first impact was the "predominant, active and continuing cause" of one accident involving two collisions. *Id.* at 1394 (quoting *Welter v. Singer*, 376 N.W. 2d 84, 87 (1985)). The court in *Baggett* observed "[i]f each negligent act or omission were regarded as a separate accident, there arguably would be numerous accidents based on heirs' characterization of insured's negligence." *Id.*; *see also Bish v. Guaranty Nat. Ins. Co.*, 109 Nev. 133 (1993).

---

[4] Surprisingly, neither party cited *Baggett.*

ORDER GRANTING MOTIONS TO DISMISS WITHOUT LEAVE TO AMEND No. C-09-01893 RMW (PVT)
JSS                               5

Here, Rodriguez's driving of the van without properly securing Patoc in her wheelchair in the van was the predominant, active and continuing cause of the accident. Rodriguez's failure to seek medical attention, instead driving Patoc home, was merely another negligent act occurring in the uninterrupted course of conduct. Therefore, there was only one accident and the policy limits of the subject policies have been exhausted.[5]

Plaintiffs cite *Flintkote Co. v. General Acc. Assur. Co.*, 410 F. Supp. 2d 875 (N.D. Cal. 2006) as supporting their argument that there were two accidents because there were two events separated in time contributing to Patoc's injuries and ultimate death. *Flintkote*, however, is inapposite. It involved a different issue. The issue in *Flintkote* was whether the term "occurrence" in a liability policy in the context of asbestos related injuries referred to the overall distribution of asbestos or to the exposure to asbestos that caused and immediately preceded an injury. *Id.* at 880. This district court held that the occurrence was the exposure to the asbestos that caused and immediately preceded the injury. *Id.* at 892. This holding says nothing about, for example, whether an injured individual would have been in two accidents if a company dangerously exposed that person to asbestos on a particular day and then failed to immediately obtain medical attention.

Because the instant case involved only one accident, Gulf's motion is granted.

---

[5] Although the Court agrees with Gulf's position that there was only one accident, Gulf's points and authorities are misleading. It asserts that "[t]he argument that there was another accident when the driver failed to seek medical attention has been rejected by California courts" (Reply, 4:20-22) and cites only *Gilmer v. State Farm Mut. Auto Ins. Co.*, 110 Cal. App. 4th 416 (2003) for support. In *Gilmer,* the plaintiff suffered a spinal cord injury when he fell in a moterhome that was being driving by another individual. After the plaintiff's fall, the passenger of the car exchanged places with the driver and drove the moterhome back to the plaintiff's house rather than seek medical attention. The subsequent movement of the moterhome during the drive back to the plaintiff's home caused movement in plaintiff's already fractured spinal column. This caused additional damage and resulted in the plaintiff being paralyzed. The trial court found that the actions of the first driver causing the fall and the second driver driving plaintiff home were together one accident, not two. On appeal, the court of appeal determined that driver who drove the plaintiff home was not insured under the insurance policy at issue and thus plaintiff could not establish merits of the claim. However, the court of appeal specifically noted that "[s]ince we agree that [the second driver] was not an insured, we do not reach the issue of whether two accidents occurred." *Id.* at 419. Thus, Gulf's papers in essence cite only an unpublished trial court decision for the proposition that "[t]he argument that there was another accident when the driver failed to seek medical attention has been rejected by California courts," and they further fail to point out that the court reviewing that decision expressly did not reach the issue of the number of accidents.

The court is also surprised that neither Plaintiffs nor Gulf mention *Baggett* which appears to be the California case most relevant to the motion to dismiss.

### B. Lexington's Motion To Dismiss

Lexington asserts that Plaintiffs' complaint must be dismissed as to it because Lexington paid its policy limit for the accident that injured and ultimately resulted in Patoc's death. In addition, because the stipulated judgment of $1,000,000 would be covered by Gulf's policies if it were to be determined to be two accidents, Lexington's excess policy would not be triggered. Plaintiffs admit that Lexington has paid the full amount of its policy in the first case. However, Plaintiffs argue that the automobile coverage of Lexington's policy contained no "per accident" limits, and that two accidents occurred here.

Plaintiffs state in their opposition: "in an automobile policy, there are 'per person' and 'per accident' limits. The per person and per accident limits are based on the statutory scheme providing for financial responsibility for accidents. (See, e.g. Vehicle Code 16056.)" (Opp. 6:25-27.) Plaintiffs argue that the complaint alleges that the automobile coverage part of Lexington's policy contained no "per accident" limits. (Comp. ¶ 26.) Although not clear in Plaintiffs' Opposition, it appears that Plaintiffs then jump to an argument that Lexington's policy may contain a "per occurrence" limit. However, Lexington has already paid its policy limit for the accident that injured and ultimately killed Patoc. Under this limitation, Lexington has paid the full amount of the settlement of the claims and has no further obligation to its insured. *See Safeco Ins. Co. of Am. v. Fireman's Fund Ins. Co.*, 148 Cal. App. 4th 620, 638 (2007). The Court fails to follow Plaintiffs' argument as to why an "occurrence limit" would make a difference. If Plaintiffs are arguing that no limit applies, that is nonsensical.

Plaintiffs additionally argue that the complaint alleges two separate accidents. However, as discussed above, this is incorrect. Additionally, even if there were two accidents, Lexington's coverage would not be reached because the underlying Gulf policies would cover the $1,000,000 stipulated judgment. Accordingly, Lexington's motion to dismiss will be granted.

**III. ORDER**

Good cause therefor appearing, IT IS HEREBY ORDERED that Gulf's Request for Judicial Notice is GRANTED; Gulf's Motion to Dismiss is GRANTED; Lexington's Request for Judicial Notice is DENIED as moot; and Lexington's Motion to Dismiss is GRANTED. Because the Court concludes that there is no reasonable possibility that Plaintiffs could cure the defects in their claims if leave to amend were granted, leave to amend will be denied. The Clerk shall close the file.

DATED: August 5, 2008

/s/ Ronald M. Whyte
RONALD M. WHYTE
United States District Judge

**Notice of this document has been electronically sent to:**

**Counsel for Plaintiff:**

Stephen C. Ball          sball@pasadenalaw.com

Denise Jarman           jarmandenny@yahoo.com

**Counsel for Defendants:**

David T. Dibiase        djb@amclaw.com

Kevin McCurdy          kevin.mccurdy@mccurdylawyers.com

Counsel are responsible for distributing copies of this document to co-counsel that have not registered for e-filing under the court's CM/ECF program.

**Dated:** _____08/05/08_____                         _____/s/ JSS_____
                                                                    **Chambers of Judge Whyte**